**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

05-11152 RCL

ANTHONY NATALE, JR., on behalf of himself and all others similarly situated,

Plaintiff,

v.

GENERAL MOTORS CORPORATION,

Defendant.

MAGISTRATE JUDGE Dein

RECEIPT # 64706
AMOUNT $ 250
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 6/3/05

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1446, defendant General Motors Corporation ("GM") hereby notices the removal to this Court of Case No. ESCV-2005-00245-C from the Superior Court for Essex County, Commonwealth of Massachusetts. In support of this Notice, General Motors states:

**INTRODUCTION**

1. Plaintiff filed this case (but did not serve it) on February 11, 2005, one week before enactment of the Class Action Fairness Act, in an (unsuccessful) effort to avoid litigating this case in federal court with a series of similar cases that have been transferred by the Judicial Panel on Multidistrict Litigation to the Southern District of Illinois for consolidated and coordinated pretrial proceedings. Indeed, his haste to file this case to avoid removal is evidenced by:

- The decision to file the case seven days before the passage of the Class Action Fairness Act;
- The complete failure to serve the complaint upon GM.

In any event, plaintiff's efforts cannot avoid the proper removal of this case, as set forth below:

**RELEVANT STATE COURT PROCEEDINGS**

2. On February 18, 2005, the Class Action Fairness Act of 2005 ("Act") was enacted. The Act grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which "any member of a class of plaintiffs is a citizen of a State different from any defendant" and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d).

3. As set forth above, plaintiff initiated this action on February 11, 2005, by filing a purported Class Action Complaint ("Feb. 11 Complaint") in the Superior Court for Essex County, Commonwealth of Massachusetts, on behalf of one named plaintiff: Anthony Natale, Jr. (A copy of the Feb. 11 Complaint is attached hereto as Exhibit A.)

4. Plaintiff has never served GM with a copy of the Feb. 11 Complaint.

5. On May 6, 2005, GM was served with a summons and plaintiffs' "First Amended Class Action Complaint," which alleges identical claims as the Feb. 11 Complaint but adds a second named plaintiff, John Burns ("May 6 Complaint"). The service copy of the May 6 Complaint was incomplete, missing page twelve which apparently contained two causes of action and paragraphs 40-47. (A copy of the May 6 Complaint as served is attached hereto as Exhibit B.)

6. According to the docket for this matter and the Clerk of the Essex County Superior Court, as of this date plaintiffs have never actually filed the May 6 Complaint.

7. In the amended complaint, plaintiffs Natale and Burns purport to bring this action on behalf of themselves and all Massachusetts residents who purchased for non-commercial and/or personal use General Motors vehicles, model years 1994 to 2003, that were

factory equipped with DEX-COOL engine coolant. (Am. Compl. ¶ 1.) Plaintiffs allege claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et. seq.*, as well as common law claims for breach of warranty and unjust enrichment. (*Id.* ¶¶ 39, 56, 60.)

8. Plaintiffs principally allege that GM "gave a written warranty" regarding DEX-COOL coolant, and that it breached this alleged warranty to plaintiffs "because DEX-COOL is not maintenance free and has not protected the engines and engine cooling systems of Plaintiff's [sic] and Class members' vehicles from rust and corrosion." (*Id.* ¶ 3.) Further, plaintiffs allege that GM "intentionally withheld from the consumers and the public the defective nature of DEX-COOL." (*Id.* ¶ 23.)

9. The amended complaint seeks wide-ranging forms of relief on behalf of the named plaintiffs and purported class, including certain injunctive relief, compensatory damages (defined to include all statutory, consequential, and incidental damages), treble damages, attorneys' fees and costs, restitution and/or rescission, an award of pre- and post-judgment interest, and "such other relief as the Court deems just and equitable." (*Id.* at 15-16.) Notably, the request for relief also asks the Court to certify a "nationwide class action" though the proposed class is defined only as Massachusetts residents. (*Compare* Am. Compl. ¶ 1 *with id.* at 15.)

10. General Motors was purportedly first served in this case on May 6, 2005, when plaintiffs delivered a summons and an incomplete copy of the unfiled May 6 Complaint to GM's registered agent in Massachusetts. General Motors therefore has timely removed this

action to this Court under 28 U.S.C. § 1446(b).[1] (*See* Summons, dated May 6, 2005, attached hereto as Exhibit C.)

11. A copy of the February 15 Complaint and the May 6 Complaint (and Summons) are attached to this Notice. No other process, pleadings, or orders have been served on General Motors in this matter. General Motors has never agreed to waive the service requirements of Mass. R. Civ. Pro. 4.

12. A multi-district litigation, *In re General Motors Corp. DEX-COOL Prods. Liab. Litig.*, Civil No. MDL-03-1562-GPM, pending in the Southern District of Illinois, involves a nationwide class of purchasers of vehicles equipped with DEX-COOL, asserting the same Magnuson-Moss Act allegations here. A number of "tag-along" DEX-COOL class actions from other jurisdictions were transferred and, as a result, nearly all DEX-COOL class actions in federal court are consolidated for adjudication. With the Massachusetts action now having been removed to federal court, it should be subject to transfer and consolidation of proceedings in the Southern District of Illinois as part of the MDL.

13. Removal is based on the original jurisdiction of this Court as follows:

---

[1] In particular, 28 U.S.C. § 1446(b) provides: "[A] notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable … ." *See also Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (time for notice of removal calculated from date of service).

**FEDERAL JURISDICTION EXISTS UNDER THE PROVISIONS OF THE FEDERAL CLASS ACTION FAIRNESS ACT**

14. Under the newly-passed Class Action Fairness Act, 28 U.S.C. § 1332 was amended as follows:

> The district courts shall have original jurisdiction of any civil action, in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

15. Exceptions to this new rule are contained in 28 U.S.C. § 1332(d)(3)-(5), none of which are applicable here.

16. This case is removable under the Class Action Fairness Act because the named plaintiffs and all putative class members are citizens of the Commonwealth of Massachusetts while the sole defendant, General Motors, is a Delaware corporation with its principal place of business in the State of Michigan.

17. Section 9 of the Act provides, "The amendments made by this Act shall apply to any civil action commenced on or after the date of the enactment of this Act." 28 U.S.C. § 1332 Note.

18. Mass. R. Civ. Pro. 4(j) requires service of summons and complaint upon a defendant within 90 days of the filing of the complaint. Absent "good cause why such service was not made within that period, the action ***shall*** be dismissed without prejudice." *Id.* (emphasis added). The Feb. 11 Complaint has never been served upon GM. The summons referencing the amended complaint and the incomplete copy of the May 6 Complaint were not filed with the Essex County Superior Court within 90 days from filing of the Feb. 11 Complaint. Accordingly, the Class Action Fairness Act plainly applies and this Court has jurisdiction over plaintiffs'

lawsuit because the only complaint still operative as a matter of law – the May 6 Complaint – was filed (or will be filed) after the Act's effective date.

19. Even if the Feb. 11 Complaint survives, under Massachusetts authority, a case is not commenced until formal service of process is made on the defendant, which here did not occur at the earliest until May 6, 2005, nearly three months after the effective date of the Act, by service of an unfiled, incomplete document. *See, e.g., Hardy v. Green*, 277 F. Supp. 958, 962 (D. Mass. 1967) ("For more than a century, however, the Massachusetts law has been that an action is deemed to have commenced on the date a writ of summons is issued and delivered . . . .") (citing cases); *Bird Mach. Co. v. Day*, 303 F. Supp. 834, 836 (D. Mass. 1969); *see also Nett v. Bellucci*, 774 N.E. 2d 130, 143 (Mass. 2002) (holding that the operative date for commencement of an action for purposes of Massachusetts' statutes of repose is the date of filing of a motion for leave to amend a complaint to add a party, not the date of the original complaint).[2] Further, plaintiffs' attempt to obviate the mandatory jurisdiction provided by the Act should not be countenanced by encouraging a race to courthouse.

---

2 A number of courts have held that the term "commenced" means the date of removal, not the date the case was initially filed in state court. *See, e.g., Lorraine Motors, Inc. v. Aetna Casualty and Surety Co.*, 166 F. Supp. 319, (E.D.N.Y. 1958) (term "commenced" referred to date of removal, noting that "it is not at all unusual for the Congress to use the term 'commenced' to describe the institution in federal court of a case which has been removed from State court") and other authority.); *see also Sayers v. Sears, Roebuck and Co.*, 732 F. Supp. 654 (W.D. Va. 1990) (same); *Hunt v. Transport Indem. Ins. Co.*, No. 90-00041, 1990 WL 192483, at *2-3 (D. Hawaii July 30, 1990) (holding that "sounder view" was to construe the term "commenced" in the context of 1988 amendment to 28 U.S.C. § 1332, which raised jurisdictional minimum from $10,000 to $50,000, to mean the date of removal, not the date of filing in state court).

20. Although GM denies that plaintiffs are entitled to any of the relief sought, the fact remains that, if recovered, the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Plaintiffs conservatively estimate that "the Class consists of thousands of persons who are residents of the Commonwealth of Massachusetts." (Am. Compl. ¶ 2.) The damages plaintiffs seek on behalf of the class include compensatory damages, treble damages, attorneys' fees and costs, and restitution or rescission. (*Id.*) The sum value of these remedies exceeds $5,000,000.

21. Accordingly, this action is removable under the Class Action Fairness Act.

**FEDERAL JURISDICTION EXISTS UNDER THE PROVISIONS OF THE MAGNUSON-MOSS ACT**

22. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiffs' Magnuson-Moss Act claims are civil actions "arising under the . . .laws . . of the United States." 28 U.S.C. § 1331 (2002). This action is removable under 28 U.S.C. § 1441(b) because this Court has original jurisdiction over this case, which is "founded on a claim or right arising under the Constitution, treaties or laws of the United States . . ." 28 U.S.C. § 1441(b) (2002).

23. Plaintiffs allege claims under the Magnuson-Moss Act, 15 U.S.C. § 2301 *et seq*., both individually and on behalf of a purported class. (Am. Compl. ¶¶ 48-56.) Under the Magnuson-Moss Act, an individual claim is removable to federal court where (i) each plaintiff's individual claim is valued at or in excess of $25 and (ii) the aggregate of all plaintiffs' individual claims exceeds $50,000. *See* 15 U.S.C. 2310(d). For purposes of removal, the Court's jurisdiction must be analyzed both with respect to plaintiffs' individual claims and their class

claims. *See Lieb v. American Motors Corp.*, 538 F. Supp. 127, 132-135 (S.D.N.Y. 1982); *Schwiesow v. Winston Furniture Co., Inc.*, 74 F. Supp. 2d 544, 546 (M.D.N.C. 1999).

24. This case is removable under the Magnuson-Moss Act because plaintiffs' individual claims are easily in excess of $25 and the remedies requested by plaintiffs would in aggregate exceed $50,000 if recovered. As discussed above, plaintiffs request injunctive relief including a cease and desist order, compensatory and punitive damages, and that GM pay restitution/rescission to all class plaintiffs. The cost of rescission, when combined with the other remedies sought, could well exceed $50,000. *See, e.g., Saval v. BL, Ltd.*, 710 F.2d 1027 (4th Cir. 1983) (Magnuson-Moss $50,000 amount in controversy requirement may be met by aggregation of claims).

25. Plaintiffs' contentions also necessarily encompass a challenge to the terms of the limited warranties issued in connection with the sale of General Motors vehicles, at least with respect to DEX-COOL coolant implicated in this action. If plaintiffs' claims are sustained, those warranties – and the limitations contained in those warranties – potentially could no longer be fully enforceable against either putative class members or against millions of vehicle owners not within the putative class. Thus, the monetary consequences to General Motors of the issues in controversy far exceed $50,000 exclusive of interests and costs. *See, e.g., Trujillo v. Bridgstone-Firestone, Inc.*, No. 00 C 5407, 2000 WL 1690308, at *3 (N.D. Ill. Nov. 1, 2000).

26. The Seventh Circuit holds that the amount in controversy is properly valued from the perspective of either the plaintiff or the consequences to the defendant. *Uhl v. Thoroughbred Tech. & Telecomm.*, 309 F.3d 978, 983-84 (7th Cir. 2002); *Gottlieb v. Westin*

*Hotel Co.*, 990 F.2d 323 (7th Cir. 1993). This case law would be controlling authority in the Circuit in which General Motors seeks to have this action consolidated before the MDL Panel.[3] *See, e.g., In re Bridgestone/Firestone, Inc.*, 129 F. Supp. 2d 1202, 1205 & n.2 (S.D. Ind. 2001) ("The law of the circuit where the transferee court sits governs questions of federal law in MDL proceedings.") (citing *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1996 WL 257570, at *1-2 (E.D.La. May 16, 1996) (applying law of circuit of transferee court to procedural question of remand and removal in diversity case)).

27. In addition, plaintiffs' claims for attorneys' fees satisfy the amount in controversy requirement. When attorneys' fees are requested pursuant to a statute, as they are here, the fees are included in determining the amount-in-controversy. *See Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534 (5th Cir. 1990). The court should attribute the total amount of attorneys' fees requested for the class action to the named plaintiffs, which given the complexity of this matter will easily exceed $50,000. *See In re Abbott Labs.*, 51 F.3d 524, 526-27 (5th Cir. 1995); *see also Howard v. Globe Life Ins. Co.*, 973 F. Supp. 1412, 1419-21 (N.D.

---

3 GM acknowledges the Court's ruling in *Corkery et al v. General Motors Corp.* Civ. Action No. 03-11980-RGS, granting plaintiff's motion to remand (entered after initially denying the motion to remand pending a ruling from the Multi-District Litigation panel). GM notes, however, that while the Court of Appeals for the First Circuit has yet to decide this issue, other Courts and commentators have recognized a "'clear trend' to sanction jurisdiction where the amount in controversy requirement is satisfied from the defendant's viewpoint." *Grotzke v. Kurz*, 887 F. Supp. 53, 55-56 (D.R.I. 1995) (citing 1 James W. Moore, et al., *Moore's Federal Practice*, ¶ 0.91[1], at 820 (2d ed. 1995)). Further, another district court has acknowledged that the First Circuit has on several occasions indicated that it is likely to adopt a rule that permits the amount in controversy to be measured from the defendant's viewpoint. *Frietas v. First New Hampshire Mortgage Corp.*, No. 98-211ML, 1998 WL 657606, at *4 (D.R.I. 1998) ("[t]his court agrees that the First Circuit might be inclined to adopt the defendant's viewpoint test if the circumstances are right").

Fla. 1996) (finding amount-in-controversy satisfied, concluding that "the possible award of attorney's fees in this case should be considered in the aggregate").

28. Accordingly, this action is removable under the Magnuson-Moss Act.

**THE COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION**

29. Alternatively, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of the citizenship between plaintiffs and defendant General Motors, and the amount in controversy exceeds the sum or value of $75,000.

30. For all the reasons discussed above, the amount in controversy also exceeds $75,000, exclusive of interest and costs, necessary to support diversity jurisdiction under 28 U.S.C. 1332.

**THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THIS ACTION**

31. Further, this Court should exercise supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 because the Class Action Fairness Act confers mandatory federal jurisdiction over the claims by plaintiff John Burns, commenced on May 6, 2005, which "form part of the same case or controversy" as the claims of plaintiff Anthony Natale, Jr. Indeed, supplemental jurisdiction under 28 U.S.C. § 1367 includes "claims that involve the joinder or intervention of additional parties."

32. Similarly, the Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the Massachusetts common law claims, which "form part of the same case or controversy" as the Magnuson-Moss Act claims.

33. This Court, therefore, has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), and removal of the action to this Court is proper pursuant to 28 U.S.C. § 1441(a).

34. Pursuant to 28 U.S.C. § 1446(d), General Motors states that it shall promptly file a copy of this Notice with the Clerk of the Superior Court for Essex County, Commonwealth of Massachusetts.

Dated: June 3, 2005

Respectfully submitted,

John R. Skelton BBO #552606
Carol E. Head BBO #652170
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, MA 02110
617-951-8789 Telephone
617-345-5041 Facsimile

Robert B. Ellis, P.C.
Scott F. Hessell
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000 Telephone
(312) 861-2200 Facsimile

Of Counsel:
Lawrence S. Buonomo
Office of the General Counsel
General Motors Corporation
400 Renaissance Center
P.O. Box 400, MC 482-026-601
Detroit, MI 48265-4000

Attorneys for Defendant General Motors Corporation

CERTIFICATE OF SERVICE

I, Carol E. Head, counsel for the defendant, General Motors Corporation, do hereby certify that on June 3, 2005, a true and accurate copy of the above document was served by mail on counsel of record for the plaintiff and on the Clerk of the Courts for Essex County.

Carol E. Head

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

ANTHONY NATALE, JR., on behalf of himself and all others similarly situated

**DEFENDANTS**

GENERAL MOTORS CORPORATION

**(b)** County of Residence of First Listed Plaintiff ______
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ______
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David Pastor; Kenneth G. Gilman (617) 742-9700
Gilman & Pastor LLP, 60 State St., 37th Floor, Boston, MA 02109

Attorneys (If Known)

John R. Skelton; Carol E. Head (617) 951-8000
Bingham McCutchen LLP, 150 Federal St., Boston, MA 02110

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☒ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
28 USC 1332 Class Action Fairness Act

Brief description of cause:
Consumer class action under Magnuson-Moss and state law

**VII. REQUESTED IN COMPLAINT:**

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE: June 3, 2005

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Anthony Natale, Jr. v. General Motors Corporation

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

☐ I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

☑ II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

☐ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

☐ IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

☐ V. 150, 152, 153.

05-11152 RCL

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐ NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES ☐ NO ☑

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐ NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐ NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☐ NO ☑

A. If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☐ Central Division ☐ Western Division ☐

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☑ Central Division ☐ Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES ☐ NO ☑

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME John R. Skelton; Carol E. Head

ADDRESS Bingham McCutchen LLP, 150 Federal Street, Boston, MA 02110

TELEPHONE NO. (617) 951-8000

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

5 0245

ANTHONY NATALE, JR. on behalf of himself and all others similarly situated,

Plaintiff,

v.

GENERAL MOTORS CORPORATION,

Defendant.

Civil Action No.

JURY TRIAL DEMANDED

CLASS ACTION COMPLAINT

Plaintiff, by his undersigned counsel, upon personal knowledge with respect to his own acts, and upon information and belief with respect to all other matters, avers as follows:

INTRODUCTION

1. This is a class action on behalf of the following persons:

All persons who are residents of the Commonwealth of Massachusetts who purchased for non-commercial and/or personal use General Motors vehicles, model years 1994 through 2003, that were factory equipped with DEX-COOL engine coolant.

2. The Class consists of thousands of persons who are residents of the Commonwealth of Massachusetts. Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with General Motors Corporation ("GM" or the "Defendant"); (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

3. As alleged below, Defendant manufactured and sold tens of thousands of GM vehicles factory equipped with GM's extended life coolant known as "DEX-COOL." Defendant gave a written warranty that the DEX-COOL coolant is maintenance free and protects engines and engine cooling systems for 5 years or 150,000 miles (or 100,000), whichever came first. The written warranty, *inter alia*, guaranteed that DEX-COOL coolant would "protect against rust and corrosion." Defendant breached its warranty to Plaintiff and the Class because DEX-COOL is not maintenance free and has not protected the engines and engine cooling systems of Plaintiff's and Class members' vehicles from rust and corrosion as warranted. Plaintiff alleges that, as a result of DEX-COOL, the value of the GM vehicles when the vehicles were purchased is substantially less than what members of the Class actually paid for those vehicles.

## PARTIES

4. Plaintiff Anthony Natale, Jr. is a resident of the Commonwealth of Massachusetts. Plaintiff Natale purchased and owns a GM vehicle, a Chevy Blazer, with factory equipped DEX-COOL coolant. Plaintiff Natale has suffered diminution in the value of his GM vehicle as a result of GM's conduct as alleged herein, including but not limited to, requiring the use of DEX-COOL coolant in his vehicle and the breach of GM's express and implied warranties concerning DEX-COOL coolant.

5. Defendant General Motors Corporation is a Delaware Corporation registered to do business in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties because they reside or transact business within this Commonwealth.

7. Venue is proper in Essex County because at all material times, the Defendant directly and/or indirectly, has transacted business in Essex County, Massachusetts.. The Defendant sold and distributed vehicles equipped with DEX-COOL to and from this Commonwealth to Plaintiff and Class members. The Defendant has, at all times material to this

Complaint, conducted business in this Commonwealth related to the events and omissions giving rise to the claims asserted in this Complaint and is registered to do business in the Commonwealth of Massachusetts. The Defendant has received substantial compensation and profits from the sale of DEX-COOL and the sales of vehicles equipped with DEX-COOL in the Commonwealth of Massachusetts.

## CLASS ACTION ALLEGATIONS

8. This action is brought as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all members of the following class:

> all persons who are residents of the Commonwealth of Massachusetts who purchased for non-commercial and/or personal use General Motors vehicles, model years 1994 through 2003, that were factory equipped with DEX-COOL engine coolant.

9. Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with Defendant; (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury, mental anguish or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

10. This action is properly maintainable as a class action, as it meets the class certification requirements of Rule 23 of the Massachusetts Rules of Civil Procedure.

11. The unlawful conduct on the part of the Defendant alleged herein has caused similar injury to numerous other persons similarly situated to the named Plaintiff, and the named Plaintiff is bringing this action on behalf of herself and such other similarly injured and situated persons.

12. *Numerosity*. The Class is comprised of thousands of persons who are residents of the Commonwealth of Massachusetts and who purchased GM vehicles with DEX-COOL extended life coolant. Joinder of such persons in one action is impracticable, and the disposition

of their claims in a class action will provide substantial benefits to both the parties and the Court.

13. *Typicality*. Plaintiff's claims are typical of Class members' claims because, like the Class members, Plaintiff purchased a GM vehicle factory equipped with DEX-COOL engine coolant.

14. *Adequacy*. Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has no interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained attorneys competent and experienced in class action, consumer protection and defective products law. No conflicts exist between Plaintiff and Class members because (a) the claims of the named Plaintiff are typical of absent members' claims, (b) virtually all of the questions of law and fact at the liability stage are common to the Class and overwhelmingly predominate over any individual issues, such that by prevailing on her own claims, Plaintiff necessarily will establish Defendant's liability to all Class members, (c) without the use of the class action device there is a strong likelihood of multifarious and duplicative litigation which will create undue burdens on the court system and the parties, (d) Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and (e) Plaintiff is aware of her fiduciary duties to the Class members and is determined to diligently discharge those duties.

15. *Common Questions of Law and Fact*. Virtually all of the issues of law and fact in this class action are common to the Class. The common questions include, *inter alia*, the following:

a. whether Defendant's written representations about the performance of DEX-COOL, including its written representations about the performance of DEX-COOL in the owner's manuals and labels affixed to GM's vehicles, constitute a written warranty or warranties;

b. whether Defendant failed to comply with any obligations under its written warranty or warranties;

c. whether Plaintiff and Class members suffered damages because of Defendant's failure to comply with any obligations under its written warranty or warranties;

d. whether Defendant breached the implied warranty of merchantability in connection with the manufacture and sale of vehicles equipped with DEX-COOL;

e. whether Defendant has been unjustly enriched at the expense of Plaintiff and the Class;

f. whether Plaintiff and Class members are entitled to legal or equitable relief, including but not limited to an injunction, a declaration or rights, restitution or rescission; and

g. whether Defendant concealed from Plaintiff and Class members critical information about the existence, nature and affects of DEX-COOL.

These common questions of law and fact predominate over any individual issues. The only individual issue is each Class members's damages, which does not preclude class certification. There are no material variations in the representations made by the Defendant or their agents to the individual Class members and thus all Class members can be uniformly treated.

16. *Superiority*. A class action is superior to any other available method for the fair and efficient adjudication of this controversy, given that

(a) Common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a classwide basis instead of a repetitive individual basis;

(b) A statewide class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of the class is impracticable;

(c) Even if some Class members could afford individual litigation, the court system could not. Individual litigation magnifies the delay and expense to all parties. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court;

(d) Concentrating this litigation in one forum would promote judicial economy and efficiency and promote parity among the claims of individual Class members as well as judicial consistency;

(e) Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members; and

(f) No unusual difficulties are likely to be encountered in the management of this class action.

17. This action can also be certified because:

(a) The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications, thus establishing incompatible standards of conduct for Defendant;

(b) The prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests; and

(c) This action can also be certified because Defendant has acted or refused to act on grounds generally applicable to the Class.

**STATEMENT OF FACTS**

18. When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in the vehicles' owner's manual provided with the vehicles and on at least one label affixed to the vehicles. A GM owner's manual represents DEX-COOL as follows:

The cooling system in your engine is filled with DEX-COOL engine coolant. This coolant is designed to ***remain*** in your vehicle for 5 years or 150,000 miles (240,000 km), whichever comes first, if you add only DEX-COOL extended life coolant . . . A 50/50 mixture of clean, drinkable water and DEX-COOL coolant will:

- Give freezing protection down to - 34F (-37C).
- Give boiling protection up to 265 F (129 C).
- Protect against rust and corrosion.
- Help keep the proper engine temperature
- Let the warning lights and gaps work as they should.

Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system. Specifically, the GM owner's manual states: "Damage caused by the use of coolant other than DEX-COOL is not covered by your new vehicle warranty."

19. While GM represents and warrants that DEX-COOL is "designed" to "remain" in the vehicle "for 5 years or 150,000 miles . . .," the GM owner's manual warns that use of coolant other than DEX-COOL could cause premature corrosion and would therefore need to be replaced sooner than would DEX-COOL. Specifically, the GM owner's manual provides: "If coolant other than DEX-COOL is added to the system, premature engine, heater core or radiator corrosion may result. In addition, the engine coolant will require change sooner – at 30,000 miles . . . or 24 months, whichever occurs first."

20. The above-referenced statements contained in GM's owner's manual as set forth in paragraph 19 constitute an express written warranty or warranties by the Defendant. Defendant's written express warranty regarding the performance of DEX-COOL was given to Plaintiff and Class members at the time of sale, and became part of the basis of the bargain.

21. Defendant breached its written warranties regarding the performance of DEX-COOL with respect to Plaintiff's and Class members' vehicles. DEX-COOL failed to protect GM engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members paying for such replacements, repairs, or inspections. Moreover, Plaintiff has suffered diminution in value with respect to their GM vehicle with factory installed DEX-COOL.

22. In 1999, Defendant issued technical bulletin (#99-06-02-012D), to its service personnel, admitting that vehicles equipped with DEX-COOL may be susceptible to the formation of a rust-like material in the cooling system. However, Defendant intentionally withheld from the consumers and the public the defective nature of DEX-COOL and misrepresented that improper owner maintenance - maintaining low coolant levels for extended periods of time - was the cause of cooling system corrosion.

## EQUITABLE TOLLING OF STATUTE OF LIMITATIONS

23. The Defendant has refused to make full disclosure to the public, in a manner reasonably calculated to reach all vehicle owners such as the Plaintiff and Class members, of the full extent of the attendant damages of having DEX-COOL in their vehicles.

24. The inherent defects of DEX-COOL are latent and self-concealing. Even in the exercise of reasonable care, the Plaintiff and Class members simply cannot discover that such

inherent defects exist. By suppressing the dissemination of information regarding the attendant risks of having DEX-COOL in their vehicles, the Defendant has intentionally foreclosed Plaintiff and Class members from learning of DEX-COOL's latent defects.

25. It is critical that a detailed court-approved notice be sent to all Class members in a manner calculated to reach and notify them of the full extent of the attendant damages of having DEX-COOL equipped in their vehicles. All Class members should be given an opportunity to inspect and remove DEX-COOL from their vehicles. A classwide notice is necessary to accomplish the aforementioned goals and to allow all Class members to take appropriate steps to protect their legal rights.

26. Any applicable statutes of limitations have been tolled by the Defendant's acts of fraudulent concealment and denial of the facts as alleged above. Such acts of fraudulent concealment include: intentionally covering up and refusing to disclose internal documents; failing to disclose that DEX-COOL is inherently defective; misrepresenting the character, quality and nature of DEX-COOL in order to deceive consumers, including releasing reports which purport to conclude that DEX-COOL is reliable and maintenance free. Through such acts of fraudulent concealment, the Defendant has been able to conceal from the public the truth about DEX-COOL's defects, thereby tolling the running of any applicable statutes of limitations. The Plaintiff and the members of the Class could not reasonably have discovered the true facts of DEX-COOL's defective nature, the truth having been fraudulently and knowingly concealed by Defendant from at least 1996 through the present date.

27. Furthermore, the Defendant is estopped from relying on any statutes of limitations because of its fraudulent concealment of the true character, quality and nature of DEX-COOL. The Defendant was under a duty to disclose the true character, quality and nature of DEX-COOL because this is non-public information over which the Defendant has exclusive control, and because the Defendant knew that this information was not available to the Plaintiff or to Class

members. In addition, the Defendant is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

28. Until a date within the applicable statute of limitations, the Plaintiff and Class had no knowledge that the Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent and active concealment of the wrongdoing by the Defendant, the Plaintiff and Class members could not reasonably have discovered the wrongdoing at any time prior to this time.

29. Because of the self-concealing nature of the Defendant's actions and its intentional concealment of its wrongdoing, Plaintiff asserts the tolling of any applicable statute of limitations affecting the claims by Plaintiff and the members of the Class.

**FIRST CAUSE OF ACTION**

**(Breach of Express Warranty)**

30. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

31. Between calendar years 1994 and 2003 (the "relevant period"), Defendant manufactured and/or sold vehicles factory equipped with DEX-COOL engine coolant.

32. Defendant provided a written warranty to Plaintiff and Class members that related to the future performance of its vehicles and various operative essential components, including its vehicles' coolant systems and the future performance of DEX-COOL engine coolant.

33. Defendant expressly warranted that DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles whichever comes first. Further, Defendant represented and warranted that DEX-COOL coolant protects against rust and corrosion and will not damage aluminum parts.

34. DEX-COOL coolant is defective, is not properly designed to remain in vehicles 5 years or 150,000 (or 100,000) miles (whichever comes first), and does lead to premature engine, heater core or radiator corrosion.

35. Defendant knew, or should have known, that DEX-COOL was defective and not properly designed when placed into the marketplace and that Defendant's express representations concerning DEX-COOL were false, incomplete, and/or misleading at the time they were made to Plaintiff and Class members.

36. As a direct and proximate result of the foregoing, Plaintiff and other members of the Class have suffered damages in that they own vehicles equipped with DEX-COOL coolant.

37. Defendant's attempts to exclude or modify its express warranties, or limit the remedies of the Plaintiff and the Class members by, *inter alia*, requiring Plaintiff and Class members to check their DEX-COOL engine coolant levels at every fuel fill are overly onerous and void and unenforceable.

38. Because Defendant's warranty fails of its essential purpose and is otherwise unconscionable as set forth above, Plaintiff and Class members are entitled to all damages available under M.G.L. Ch. 106, including the necessary labor to replace DEX-COOL engine coolant from their vehicles, and all consequential damages incurred as a result of the failures of DEX-COOL.

**SECOND CAUSE OF ACTION**

**(Breach of Implied Warranties)**

39. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

40. Defendant has breached its implied warranty of merchantability in that DEX-COOL is defective, not properly designed and not fit for the ordinary purposes for which it is used; that is, to provide safe, long-lasting protection of vehicle engines and cooling systems.

41. The Defendant's attempt to exclude or modify the implied warranties of fitness and merchantability, or to limit the remedies of the Plaintiff and Class members under the implied warranty of fitness and merchantability are void and unenforceable under the provisions

of M.G.L. Ch. 106, §2-316A.

42. As a direct and proximate result of the foregoing, Plaintiff and the other members of the Class have suffered actual damages in that they purchased vehicles factory equipped with DEX-COOL coolant.

**THIRD CAUSE OF ACTION**

**(Reformation of Warranty Pursuant to M.G.L. Ch. 106, §2-302)**

43. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

44. Defendant issued a standard form warranty or warranties with its vehicles to Plaintiff and Class members purporting to limit the liability of Defendant.

45. The limitations on the remedy allowed the Class under Defendant's warranty or warranties is impermissibly one-sided, substantively unfair and unreasonably favorable to the Defendant.

46. Plaintiff requests that the Court enforce the warranty or warranties according to its or their remaining terms, except that in view of the reformation of the warranty or warranties, Plaintiff requests that this Court issue a mandatory injunction pursuant to its equitable powers requiring Defendant to reform the warranty or warranties in a manner deemed to be appropriate by the Court, and to notify all Class members that such warranty or warranties has been reformed and further directing the Defendant to recalculate its warranty liabilities to any Class members who previously resolved warranty claims with Defendant in accordance with the reformed warranty or warranties.

## FOURTH CAUSE OF ACTION

**(Breach of Written Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.)**

47. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

48. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

49. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(4)-(5).

50. The vehicles at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(1).

51. When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in each vehicle's owner's manual provided with the vehicles and on at least one label affixed to the vehicles, stating, among other things, that the GM-provided DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles, whichever comes first. Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system.

52. DEX-COOL fails to protect Defendant's engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken place or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members

paying for such replacements, repairs, or inspections. Moreover, Plaintiff and the Class have suffered diminution in value with respect to their vehicles with factory installed DEX-COOL.

53. Defendant affirmed the fact, promised and/or described in writing that the DEX-COOL in Plaintiff's and Class members vehicles would meet a specified level of performance over a specified period of time, namely, that DEX-COOL would perform maintenance free for 5 years or 150,000 (or 100,000) miles, whichever came first. Defendant's written affirmation of fact, promises or descriptions relate to the nature of the DEX-COOL in Plaintiff's and Class members' vehicles and became part of the basis of the bargain between Defendant and Plaintiff and Class members. Defendant's written affirmations of fact, promises and/or descriptions, as alleged herein, are each a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

54. Defendant breached its written warranties when Plaintiff's and Class members vehicles did not perform as represented by Defendant and thereby caused damages to Plaintiff and other members of the Class.

55. Resort to any informal dispute settlement procedure and/or affording Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is unnecessary and/or futile. At the time of sale to Plaintiff, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations concerning the inability of DEX-COOL to perform as warranted by nevertheless failed to rectify the situation and/or disclose it to Plaintiff. Moreover, the remedies available by resort to any informal dispute settlement procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the Magnuson-Moss Act or otherwise that Plaintiff resorts to any informal dispute settlement procedure and/or afford Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is excused and, thereby, deemed satisfied.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

56. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference and realleges each of the proceeding allegations of this Complaint as though fully set forth herein, and further alleges, in the alternative, as follows:

57. As a result of GM's unlawful conduct, as alleged herein, Plaintiff and the other members of the Class were deceived concerning the true nature and value of their vehicles equipped with DEX-COOL coolant. In reality, due to the defective nature of DEX-COOL, the value of the Plaintiff's and the Class members' vehicles was less than they paid for them, and GM accordingly derived and obtained a benefit in the form of a higher sales price at the expense of Plaintiff and the Class members. GM has been unjustly enriched by its receipt and retention of this benefit.

58. GM has been enriched at the expense of unwitting consumers and it would be inequitable for GM to retain this ill-gotten benefit.

59. Plaintiff and other members of the Class are entitled to damages as a result of the unjust enrichment of GM.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class, requests judgment and relief of all causes of action as follows:

A. An order certifying that this action is properly brought and may be maintained as a nationwide class action under Rule 23 of the Massachusetts Rules of Civil Procedure;

B. An order declaring and confirming that GM's conduct is unlawful under the causes of action alleged herein;

C. An order requiring GM to cease and desist all unlawful practices described herein;

D. Compensatory damages in an amount to be proven at trial, including all damages

provided for by statute and all consequential and incidental damages, including damages for diminution in value of Class members' vehicles, and costs suffered by Plaintiff and the other Class members due to GM's unlawful conduct;

E. Treble damages (if and where appropriate);

F. An award of reasonable attorneys' fees and costs of this suit, including fees of experts;

G. Restitution and/or rescission;

H. An award of pre- and post-judgment interest; and

I. Such other and further relief as the Court may deem necessary or appropriate.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues which may be so tried.

February 11, 2005

Respectfully,

David Pastor (BBO #391000)
Kenneth G. Gilman (BBO #192760)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* - TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No. 0245

ANTHONY NATALE, JR., et als., on behalf of themselves and all others similarly situated

........................................................................, Plaintiff(s)

v.

GENERAL MOTORS CORPORATION ........................................, Defendant(s)

## SUMMONS

To the above named Defendant: CT Corporation System, 101 Federal Street, Boston MA 02110, resident agent for General Motors Corporation

You are hereby summoned and required to serve upon Kenneth Gilman, plaintiff's attorney, whose address is 60 State Street, Boston, MA 02109, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at ______________ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Barbara J. Rouse

WITNESS, [redacted], Esquire, at Salem, the day of , in the year of our Lord two thousand

A TRUE ATTEST COPY
BY Barbara L. Bedugnis
Constable of Boston
5-6-05

Thomas H. Driscoll Jr.
Clerk

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein *and* also file the original in the Clerk's Office.

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

**COMMONWEALTH OF MASSACHUSETTS**

ESSEX, ss

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT

ANTHONY NATALE, JR. and JOHN BURNS on behalf of himself and all others similarly situated,

Plaintiff,

v.

GENERAL MOTORS CORPORATION,

Defendant.

:Civil Action No. ESCV-2005-00245-C

**JURY TRIAL DEMANDED**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, by his undersigned counsel, upon personal knowledge with respect to his own acts, and upon information and belief with respect to all other matters, avers as follows:

**INTRODUCTION**

1. This is a class action on behalf of the following persons:

All persons who are residents of the Commonwealth of Massachusetts who purchased for non-commercial and/or personal use General Motors vehicles, model years 1994 through 2003, that were factory equipped with DEX-COOL engine coolant.

2. The Class consists of thousands of persons who are residents of the Commonwealth of Massachusetts. Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with General Motors Corporation ("GM" or the "Defendant"); (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

3. As alleged below, Defendant manufactured and sold tens of thousands of GM vehicles factory equipped with GM's extended life coolant known as "DEX-COOL." Defendant gave a written warranty that the DEX-COOL coolant is maintenance free and protects engines and engine cooling systems for 5 years or 150,000 miles (or 100,000), whichever came first. The written warranty, *inter alia*, guaranteed that DEX-COOL coolant would "protect against rust and corrosion." Defendant breached its warranty to Plaintiff and the Class because DEX-COOL is not maintenance free and has not protected the engines and engine cooling systems of Plaintiff's and Class members' vehicles from rust and corrosion as warranted. Plaintiff alleges that, as a result of DEX-COOL, the value of the GM vehicles when the vehicles were purchased is substantially less than what members of the Class actually paid for those vehicles.

**PARTIES**

4. Plaintiff Anthony Natale, Jr. is a resident of the Commonwealth of Massachusetts. Plaintiff Natale purchased and owns a GM vehicle, a Chevy Blazer, with factory equipped DEX-COOL coolant. Plaintiff Natale has suffered diminution in the value of his GM vehicle as a result of GM's conduct as alleged herein, including but not limited to, requiring the use of DEX-COOL coolant in his vehicle and the breach of GM's express and implied warranties concerning DEX-COOL coolant.

5. Plaintiff John Burns is a resident of Holliston, Middlesex County, Commonwealth of Massachusetts. Plaintiff purchased and owns a GM vehicle with factory equipped DEX-COOL coolant. Plaintiff Burns has suffered diminution in the value of his GM vehicle as a result of GM's conduct as alleged herein, including but not limited to, requiring the use of DEX-COOL coolant in his vehicle and the breach of GM's express and implied warranties concerning DEX-COOL coolant.

6. Defendant General Motors Corporation is a Delaware Corporation registered to do business in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the parties because they reside or transact business within this Commonwealth.

8. Venue is proper in Essex County because at all material times, the Defendant directly and/or indirectly, has transacted business in Essex County, Massachusetts. The Defendant sold and distributed vehicles equipped with DEX-COOL to and from this Commonwealth to Plaintiff and Class members. The Defendant has, at all times material to this Complaint, conducted business in this Commonwealth related to the events and omissions giving rise to the claims asserted in this Complaint and is registered to do business in the Commonwealth of Massachusetts. The Defendant has received substantial compensation and profits from the sale of DEX-COOL and the sales of vehicles equipped with DEX-COOL in the Commonwealth of Massachusetts.

## CLASS ACTION ALLEGATIONS

9. This action is brought as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all members of the following class:

> all persons who are residents of the Commonwealth of Massachusetts who purchased for non-commercial and/or personal use General Motors vehicles, model years 1994 through 2003, that were factory equipped with DEX-COOL engine coolant.

10. Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with Defendant; (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury, mental anguish or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

11. This action is properly maintainable as a class action, as it meets the class certification requirements of Rule 23 of the Massachusetts Rules of Civil Procedure.

12. The unlawful conduct on the part of the Defendant alleged herein has caused similar injury to numerous other persons similarly situated to the named Plaintiff, and the named Plaintiff is bringing this action on behalf of herself and such other similarly injured and situated persons.

13. *Numerosity*. The Class is comprised of thousands of persons who are residents of the Commonwealth of Massachusetts and who purchased GM vehicles with DEX-COOL extended life coolant. Joinder of such persons in one action is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court.

14. *Typicality*. Plaintiff's claims are typical of Class members' claims because, like the Class members, Plaintiff purchased a GM vehicle factory equipped with DEX-COOL engine coolant.

15. *Adequacy*. Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has no interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained attorneys competent and experienced in class action, consumer protection and defective products law. No conflicts exist between Plaintiff and Class members because (a) the claims of the named Plaintiff are typical of absent members' claims, (b) virtually all of the questions of law and fact at the liability stage are common to the Class and overwhelmingly predominate over any individual issues, such that by prevailing on her own claims, Plaintiff necessarily will establish Defendant's liability to all Class members, (c) without the use of the class action device there is a strong likelihood of multifarious and duplicative litigation which will create undue burdens on the court system and the parties, (d) Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and (e) Plaintiff is aware of her fiduciary duties to the Class members and is determined to diligently discharge those duties.

16. *Common Questions of Law and Fact*. Virtually all of the issues of law and fact in

this class action are common to the Class. The common questions include, *inter alia*, the following:

a. whether Defendant's written representations about the performance of DEX-COOL, including its written representations about the performance of DEX-COOL in the owner's manuals and labels affixed to GM's vehicles, constitute a written warranty or warranties;

b. whether Defendant failed to comply with any obligations under its written warranty or warranties;

c. whether Plaintiff and Class members suffered damages because of Defendant's failure to comply with any obligations under its written warranty or warranties;

d. whether Defendant breached the implied warranty of merchantability in connection with the manufacture and sale of vehicles equipped with DEX-COOL;

e. whether Defendant has been unjustly enriched at the expense of Plaintiff and the Class;

f. whether Plaintiff and Class members are entitled to legal or equitable relief, including but not limited to an injunction, a declaration or rights, restitution or rescission; and

g. whether Defendant concealed from Plaintiff and Class members critical information about the existence, nature and affects of DEX-COOL.

These common questions of law and fact predominate over any individual issues. The only individual issue is each Class members's damages, which does not preclude class certification. There are no material variations in the representations made by the Defendant or their agents to the individual Class members and thus all Class members can be uniformly treated.

17. *Superiority*. A class action is superior to any other available method for the fair and efficient adjudication of this controversy, given that

(a) Common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a classwide basis instead of a repetitive individual basis;

(b) A statewide class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of the class is impracticable;

(c) Even if some Class members could afford individual litigation, the court system could not. Individual litigation magnifies the delay and expense to all parties. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court;

(d) Concentrating this litigation in one forum would promote judicial economy and efficiency and promote parity among the claims of individual Class members as well as judicial consistency;

(e) Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members; and

(f) No unusual difficulties are likely to be encountered in the management of this class action.

18. This action can also be certified because:

(a) The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications, thus establishing incompatible standards of conduct for Defendant;

(b) The prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests; and

(c) This action can also be certified because Defendant has acted or refused to act on grounds generally applicable to the Class.

**STATEMENT OF FACTS**

19. When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in the vehicles' owner's manual provided with the vehicles and on at least one label affixed to the vehicles. A GM owner's manual represents DEX-COOL as follows:

The cooling system in your engine is filled with DEX-COOL engine coolant. This coolant is designed to ***remain*** in your vehicle for 5 years or 150,000 miles (240,000 km), whichever comes first, if you add only DEX-COOL extended life coolant . . . A 50/50 mixture of clean, drinkable water and DEX-COOL coolant will:

- Give freezing protection down to - 34F (-37C).
- Give boiling protection up to 265 F (129 C).
- Protect against rust and corrosion.
- Help keep the proper engine temperature
- Let the warning lights and gaps work as they should.

Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system. Specifically, the GM owner's manual states: "Damage caused by the use of coolant other than DEX-COOL is not covered by your new vehicle warranty."

20. While GM represents and warrants that DEX-COOL is "designed" to "remain" in the vehicle "for 5 years or 150,000 miles . . .," the GM owner's manual warns that use of coolant other than DEX-COOL could cause premature corrosion and would therefore need to be replaced sooner than would DEX-COOL. Specifically, the GM owner's manual provides: "If coolant other than DEX-COOL is added to the system, premature engine, heater core or radiator corrosion may result. In addition, the engine coolant will require change sooner – at 30,000 miles . . . or 24 months, whichever occurs first."

21. The above-referenced statements contained in GM's owner's manual as set forth in paragraph 19 constitute an express written warranty or warranties by the Defendant. Defendant's written express warranty regarding the performance of DEX-COOL was given to Plaintiff and Class members at the time of sale, and became part of the basis of the bargain.

22. Defendant breached its written warranties regarding the performance of DEX-COOL with respect to Plaintiff's and Class members' vehicles. DEX-COOL failed to protect GM engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members paying for such replacements, repairs, or inspections. Moreover, Plaintiff has suffered diminution in value with respect to their GM vehicle with factory installed DEX-COOL.

23. In 1999, Defendant issued technical bulletin (#99-06-02-012D), to its service personnel, admitting that vehicles equipped with DEX-COOL may be susceptible to the formation of a rust-like material in the cooling system. However, Defendant intentionally withheld from the consumers and the public the defective nature of DEX-COOL and

misrepresented that improper owner maintenance - maintaining low coolant levels for extended periods of time - was the cause of cooling system corrosion.

**EQUITABLE TOLLING OF STATUTE OF LIMITATIONS**

24. The Defendant has refused to make full disclosure to the public, in a manner reasonably calculated to reach all vehicle owners such as the Plaintiff and Class members, of the full extent of the attendant damages of having DEX-COOL in their vehicles.

25. The inherent defects of DEX-COOL are latent and self-concealing. Even in the exercise of reasonable care, the Plaintiff and Class members simply cannot discover that such inherent defects exist. By suppressing the dissemination of information regarding the attendant risks of having DEX-COOL in their vehicles, the Defendant has intentionally foreclosed Plaintiff and Class members from learning of DEX-COOL's latent defects.

26. It is critical that a detailed court-approved notice be sent to all Class members in a manner calculated to reach and notify them of the full extent of the attendant damages of having DEX-COOL equipped in their vehicles. All Class members should be given an opportunity to inspect and remove DEX-COOL from their vehicles. A classwide notice is necessary to accomplish the aforementioned goals and to allow all Class members to take appropriate steps to protect their legal rights.

27. Any applicable statutes of limitations have been tolled by the Defendant's acts of fraudulent concealment and denial of the facts as alleged above. Such acts of fraudulent concealment include: intentionally covering up and refusing to disclose internal documents; failing to disclose that DEX-COOL is inherently defective; misrepresenting the character, quality and nature of DEX-COOL in order to deceive consumers, including releasing reports which purport to conclude that DEX-COOL is reliable and maintenance free. Through such acts of fraudulent concealment, the Defendant has been able to conceal from the public the truth about DEX-COOL's defects, thereby tolling the running of any applicable statutes of limitations. The Plaintiff and the members of the Class could not reasonably have discovered the true facts of

DEX-COOL's defective nature, the truth having been fraudulently and knowingly concealed by Defendant from at least 1996 through the present date.

28. Furthermore, the Defendant is estopped from relying on any statutes of limitations because of its fraudulent concealment of the true character, quality and nature of DEX-COOL. The Defendant was under a duty to disclose the true character, quality and nature of DEX-COOL because this is non-public information over which the Defendant has exclusive control, and because the Defendant knew that this information was not available to the Plaintiff or to Class members. In addition, the Defendant is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

29. Until a date within the applicable statute of limitations, the Plaintiff and Class had no knowledge that the Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent and active concealment of the wrongdoing by the Defendant, the Plaintiff and Class members could not reasonably have discovered the wrongdoing at any time prior to this time.

30. Because of the self-concealing nature of the Defendant's actions and its intentional concealment of its wrongdoing, Plaintiff asserts the tolling of any applicable statute of limitations affecting the claims by Plaintiff and the members of the Class.

**FIRST CAUSE OF ACTION**

**(Breach of Express Warranty)**

31. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

32. Between calendar years 1994 and 2003 (the "relevant period"), Defendant manufactured and/or sold vehicles factory equipped with DEX-COOL engine coolant.

33. Defendant provided a written warranty to Plaintiff and Class members that related to the future performance of its vehicles and various operative essential components, including its vehicles' coolant systems and the future performance of DEX-COOL engine coolant.

34.    Defendant expressly warranted that DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles whichever comes first. Further, Defendant represented and warranted that DEX-COOL coolant protects against rust and corrosion and will not damage aluminum parts.

35.    DEX-COOL coolant is defective, is not properly designed to remain in vehicles 5 years or 150,000 (or 100,000) miles (whichever comes first), and does lead to premature engine, heater core or radiator corrosion.

36.    Defendant knew, or should have known, that DEX-COOL was defective and not properly designed when placed into the marketplace and that Defendant's express representations concerning DEX-COOL were false, incomplete, and/or misleading at the time they were made to Plaintiff and Class members.

37.    As a direct and proximate result of the foregoing, Plaintiff and other members of the Class have suffered damages in that they own vehicles equipped with DEX-COOL coolant.

38.    Defendant's attempts to exclude or modify its express warranties, or limit the remedies of the Plaintiff and the Class members by, *inter alia*, requiring Plaintiff and Class members to check their DEX-COOL engine coolant levels at every fuel fill are overly onerous and void and unenforceable.

39.    Because Defendant's warranty fails of its essential purpose and is otherwise unconscionable as set forth above, Plaintiff and Class members are entitled to all damages available under M.G.L. Ch. 106, including the necessary labor to replace DEX-COOL engine coolant from their vehicles, and all consequential damages incurred as a result of the failures of DEX-COOL.

or their remaining terms, except that in view of the reformation of the warranty or warranties, Plaintiff requests that this Court issue a mandatory injunction pursuant to its equitable powers requiring Defendant to reform the warranty or warranties in a manner deemed to be appropriate by the Court, and to notify all Class members that such warranty or warranties has been reformed and further directing the Defendant to recalculate its warranty liabilities to any Class members who previously resolved warranty claims with Defendant in accordance with the reformed warranty or warranties.

**FOURTH CAUSE OF ACTION**

**(Breach of Written Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.)**

48. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

49. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

50. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(4)-(5).

51. The vehicles at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(1).

52. When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in each vehicle's owner's manual provided with the vehicles and on at least one label affixed to the vehicles, stating, among other things, that the GM-provided DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles, whichever comes

first. Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system.

53. DEX-COOL fails to protect Defendant's engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken place or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members paying for such replacements, repairs, or inspections. Moreover, Plaintiff and the Class have suffered diminution in value with respect to their vehicles with factory installed DEX-COOL.

54. Defendant affirmed the fact, promised and/or described in writing that the DEX-COOL in Plaintiff's and Class members vehicles would meet a specified level of performance over a specified period of time, namely, that DEX-COOL would perform maintenance free for 5 years or 150,000 (or 100,000) miles, whichever came first. Defendant's written affirmation of fact, promises or descriptions relate to the nature of the DEX-COOL in Plaintiff's and Class members' vehicles and became part of the basis of the bargain between Defendant and Plaintiff and Class members. Defendant's written affirmations of fact, promises and/or descriptions, as alleged herein, are each a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

55. Defendant breached its written warranties when Plaintiff's and Class members vehicles did not perform as represented by Defendant and thereby caused damages to Plaintiff and other members of the Class.

56. Resort to any informal dispute settlement procedure and/or affording Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is unnecessary and/or futile. At the time of sale to Plaintiff, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations concerning the inability of DEX-COOL to perform as

warranted by nevertheless failed to rectify the situation and/or disclose it to Plaintiff. Moreover, the remedies available by resort to any informal dispute settlement procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the Magnuson-Moss Act or otherwise that Plaintiff resorts to any informal dispute settlement procedure and/or afford Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is excused and, thereby, deemed satisfied.

**FIFTH CAUSE OF ACTION**

**(Unjust Enrichment)**

57. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference and realleges each of the proceeding allegations of this Complaint as though fully set forth herein, and further alleges, in the alternative, as follows:

58. As a result of GM's unlawful conduct, as alleged herein, Plaintiff and the other members of the Class were deceived concerning the true nature and value of their vehicles equipped with DEX-COOL coolant. In reality, due to the defective nature of DEX-COOL, the value of the Plaintiff's and the Class members' vehicles was less than they paid for them, and GM accordingly derived and obtained a benefit in the form of a higher sales price at the expense of Plaintiff and the Class members. GM has been unjustly enriched by its receipt and retention of this benefit.

59. GM has been enriched at the expense of unwitting consumers and it would be inequitable for GM to retain this ill-gotten benefit.

60. Plaintiff and other members of the Class are entitled to damages as a result of the unjust enrichment of GM.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class, requests judgment and relief of all causes of action as follows:

A. An order certifying that this action is properly brought and may be maintained as a

nationwide class action under Rule 23 of the Massachusetts Rules of Civil Procedure;

B. An order declaring and confirming that GM's conduct is unlawful under the causes of action alleged herein;

C. An order requiring GM to cease and desist all unlawful practices described herein;

D. Compensatory damages in an amount to be proven at trial, including all damages provided for by statute and all consequential and incidental damages, including damages for diminution in value of Class members' vehicles, and costs suffered by Plaintiff and the other Class members due to GM's unlawful conduct;

E. Treble damages (if and where appropriate);

F. An award of reasonable attorneys' fees and costs of this suit, including fees of experts;

G. Restitution and/or rescission;

H. An award of pre- and post-judgment interest; and

I. Such other and further relief as the Court may deem necessary or appropriate.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues which may be so tried.

May 6, 2005

Respectfully,

David Pastor (BBO #391000)
Kenneth G. Gilman (BBO #192760)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

**ommonwealth of Massachuse**
**County of Essex**
**The Superior Court**

CIVIL DOCKET# **ESCV2005-00245-C**

RE: **Natale Jr v General Motors Corporation**

TO:David Pastor, Esquire
Gilman & Pastor
999 Broadway
Stone Hill Corp Ctr Suite 500
Saugus, MA 01906

**TRACKING ORDER - F TRACK**

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 05/12/2005 |
| Response to the complaint filed (also see MRCP 12) | 07/11/2005 |
| All motions under MRCP 12, 19, and 20 filed | 07/11/2005 |
| All motions under MRCP 15 filed | 07/11/2005 |
| All discovery requests and depositions completed | 12/08/2005 |
| All motions under MRCP 56 served and heard | 01/07/2006 |
| Final pre-trial conference held and firm trial date set | 02/06/2006 |
| Case disposed | 04/07/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session **C** sitting in **CtRm 1 (Lawrence) at Essex Superior Court.**

Dated: 02/14/2005

Thomas H. Driscoll Jr.
Clerk of the Courts

BY: Kevin Jones
Assistant Clerk

Location: CtRm 1 (Lawrence)
Telephone: (978) 687-7463

**Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130**

Check website as to status of case: http://**ma-trialcourts.org/tcic**

cvdtracf_2.wpd 526335 inidoc01 exarhose