## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANTHONY NATALE, JR.**, on behalf of himself and all others similarly situated,<br><br>**Plaintiff**,<br><br>v.<br><br>**GENERAL MOTORS CORPORATION,**<br><br>**Defendant**. | CIVIL ACTION<br>NO. 05-11152-RCL |

### AFFIDAVIT OF LAWRENCE S. BUONOMO

Lawrence S. Buonomo deposes and says:

1.  My name is Lawrence S. Buonomo. I am an attorney employed by General Motors Corporation.

2.  Attached hereto as Exhibit A is a true and accurate copy of an amended complaint, captioned *Anthony Natale, Jr. and John Burns on behalf of himself and all others similarly situated v. General Motors Corporation* ("Amended Complaint"), served on General Motors on May 6, 2005 through CT Corporation, General Motors Corporation's registered agent to accept service of process in the Commonwealth of Massachusetts, and received by General Motors from CT Corporation.

3.  To date, this Amended Complaint is the only complaint served upon General Motors in Civil Action 2005-0245, filed in the Superior Court of Essex County in the Commonwealth of Massachusetts.

4.  Accompanying the Amended Complaint was a summons captioned, *Anthony Natale, Jr. et als., on behalf of themselves and all others similarly situated v. General*

LITDOCS/604599.1

*Motors Corporation*.  A true and accurate copy of that summons, as received by GM from CT Corporation, is attached hereto as Exhibit B.

      5.    At no time did General Motors agree to waive the service requirements of Mass. R. Civ. P. 4(j) in Civil Action 2005-0245, filed in the Superior Court of Essex County in the Commonwealth of Massachusetts.

Signed under the penalties of perjury this 8th day of June, 2005

      /s/ Lawrence S. Buonomo
      Lawrence S. Buonomo

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| ESSEX, ss | SUPERIOR COURT<br>DEPARTMENT OF THE TRIAL COURT |
| ANTHONY NATALE, JR. and JOHN BURNS<br>on behalf of himself and all others<br>similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>GENERAL MOTORS CORPORATION,<br><br>          Defendant. | Civil Action No. ESCV-2005-00245-C<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, by his undersigned counsel, upon personal knowledge with respect to his own acts, and upon information and belief with respect to all other matters, avers as follows:

### INTRODUCTION

1. This is a class action on behalf of the following persons:

All persons who are residents of the Commonwealth of Massachusetts who purchased for non-commercial and/or personal use General Motors vehicles, model years 1994 through 2003, that were factory equipped with DEX-COOL engine coolant.

2. The Class consists of thousands of persons who are residents of the Commonwealth of Massachusetts. Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with General Motors Corporation ("GM" or the "Defendant"); (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

00004688.WPD ; 1

3.  As alleged below, Defendant manufactured and sold tens of thousands of GM vehicles factory equipped with GM's extended life coolant known as "DEX-COOL." Defendant gave a written warranty that the DEX-COOL coolant is maintenance free and protects engines and engine cooling systems for 5 years or 150,000 miles (or 100,000), whichever came first. The written warranty, *inter alia*, guaranteed that DEX-COOL coolant would "protect against rust and corrosion." Defendant breached its warranty to Plaintiff and the Class because DEX-COOL is not maintenance free and has not protected the engines and engine cooling systems of Plaintiff's and Class members' vehicles from rust and corrosion as warranted. Plaintiff alleges that, as a result of DEX-COOL, the value of the GM vehicles when the vehicles were purchased is substantially less than what members of the Class actually paid for those vehicles.

## PARTIES

4.  Plaintiff Anthony Natale, Jr. is a resident of the Commonwealth of Massachusetts. Plaintiff Natale purchased and owns a GM vehicle, a Chevy Blazer, with factory equipped DEX-COOL coolant. Plaintiff Natale has suffered diminution in the value of his GM vehicle as a result of GM's conduct as alleged herein, including but not limited to, requiring the use of DEX-COOL coolant in his vehicle and the breach of GM's express and implied warranties concerning DEX-COOL coolant.

5.  Plaintiff John Burns is a resident of Holliston, Middlesex County, Commonwealth of Massachusetts. Plaintiff purchased and owns a GM vehicle with factory equipped DEX-COOL coolant. Plaintiff Burns has suffered diminution in the value of his GM vehicle as a result of GM's conduct as alleged herein, including but not limited to, requiring the use of DEX-COOL coolant in his vehicle and the breach of GM's express and implied warranties concerning DEX-COOL coolant.

6.  Defendant General Motors Corporation is a Delaware Corporation registered to do business in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the parties because they reside or transact business within this Commonwealth.

8. Venue is proper in Essex County because at all material times, the Defendant directly and/or indirectly, has transacted business in Essex County, Massachusetts. The Defendant sold and distributed vehicles equipped with DEX-COOL to and from this Commonwealth to Plaintiff and Class members. The Defendant has, at all times material to this Complaint, conducted business in this Commonwealth related to the events and omissions giving rise to the claims asserted in this Complaint and is registered to do business in the Commonwealth of Massachusetts. The Defendant has received substantial compensation and profits from the sale of DEX-COOL and the sales of vehicles equipped with DEX-COOL in the Commonwealth of Massachusetts.

## CLASS ACTION ALLEGATIONS

9. This action is brought as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all members of the following class:

> all persons who are residents of the Commonwealth of Massachusetts who purchased for non-commercial and/or personal use General Motors vehicles, model years 1994 through 2003, that were factory equipped with DEX-COOL engine coolant.

10. Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with Defendant; (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury, mental anguish or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

11. This action is properly maintainable as a class action, as it meets the class certification requirements of Rule 23 of the Massachusetts Rules of Civil Procedure.

12. The unlawful conduct on the part of the Defendant alleged herein has caused similar injury to numerous other persons similarly situated to the named Plaintiff, and the named Plaintiff is bringing this action on behalf of herself and such other similarly injured and situated persons.

13. *Numerosity*. The Class is comprised of thousands of persons who are residents of the Commonwealth of Massachusetts and who purchased GM vehicles with DEX-COOL extended life coolant. Joinder of such persons in one action is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court.

14. *Typicality*. Plaintiff's claims are typical of Class members' claims because, like the Class members, Plaintiff purchased a GM vehicle factory equipped with DEX-COOL engine coolant.

15. *Adequacy*. Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has no interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained attorneys competent and experienced in class action, consumer protection and defective products law. No conflicts exist between Plaintiff and Class members because (a) the claims of the named Plaintiff are typical of absent members' claims, (b) virtually all of the questions of law and fact at the liability stage are common to the Class and overwhelmingly predominate over any individual issues, such that by prevailing on her own claims, Plaintiff necessarily will establish Defendant's liability to all Class members, (c) without the use of the class action device there is a strong likelihood of multifarious and duplicative litigation which will create undue burdens on the court system and the parties, (d) Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and (e) Plaintiff is aware of her fiduciary duties to the Class members and is determined to diligently discharge those duties.

16. *Common Questions of Law and Fact*. Virtually all of the issues of law and fact in

this class action are common to the Class. The common questions include, *inter alia*, the following:

    a.    whether Defendant's written representations about the performance of DEX-COOL, including its written representations about the performance of DEX-COOL in the owner's manuals and labels affixed to GM's vehicles, constitute a written warranty or warranties;

    b.    whether Defendant failed to comply with any obligations under its written warranty or warranties;

    c.    whether Plaintiff and Class members suffered damages because of Defendant's failure to comply with any obligations under its written warranty or warranties;

    d.    whether Defendant breached the implied warranty of merchantability in connection with the manufacture and sale of vehicles equipped with DEX-COOL;

    e.    whether Defendant has been unjustly enriched at the expense of Plaintiff and the Class;

    f.    whether Plaintiff and Class members are entitled to legal or equitable relief, including but not limited to an injunction, a declaration or rights, restitution or rescission; and

    g.    whether Defendant concealed from Plaintiff and Class members critical information about the existence, nature and affects of DEX-COOL.

These common questions of law and fact predominate over any individual issues. The only individual issue is each Class members's damages, which does not preclude class certification. There are no material variations in the representations made by the Defendant or their agents to the individual Class members and thus all Class members can be uniformly treated.

00004688.WPD ; 1              5

17. *Superiority*. A class action is superior to any other available method for the fair and efficient adjudication of this controversy, given that

(a) Common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a classwide basis instead of a repetitive individual basis;

(b) A statewide class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of the class is impracticable;

(c) Even if some Class members could afford individual litigation, the court system could not. Individual litigation magnifies the delay and expense to all parties. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court;

(d) Concentrating this litigation in one forum would promote judicial economy and efficiency and promote parity among the claims of individual Class members as well as judicial consistency;

(e) Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members; and

(f) No unusual difficulties are likely to be encountered in the management of this class action.

18. This action can also be certified because:

(a) The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications, thus establishing incompatible standards of conduct for Defendant;

(b) The prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests; and

(c) This action can also be certified because Defendant has acted or refused to act on grounds generally applicable to the Class.

## STATEMENT OF FACTS

19. When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in the vehicles' owner's manual provided with the vehicles and on at least one label affixed to the vehicles. A GM owner's manual represents DEX-COOL as follows:

The cooling system in your engine is filled with DEX-COOL engine coolant. This coolant is designed to *remain* in your vehicle for 5 years or 150,000 miles (240,000 km), whichever comes first, if you add only DEX-COOL extended life coolant . . . A 50/50 mixture of clean, drinkable water and DEX-COOL coolant will:

- Give freezing protection down to - 34F (-37C).
- Give boiling protection up to 265 F (129 C).
- Protect against rust and corrosion.
- Help keep the proper engine temperature
- Let the warning lights and gaps work as they should.

Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system. Specifically, the GM owner's manual states: "Damage caused by the use of coolant other than DEX-COOL is not covered by your new vehicle warranty."

20. While GM represents and warrants that DEX-COOL is "designed" to "remain" in the vehicle "for 5 years or 150,000 miles . . .," the GM owner's manual warns that use of coolant other than DEX-COOL could cause premature corrosion and would therefore need to be replaced sooner than would DEX-COOL. Specifically, the GM owner's manual provides: "If coolant other than DEX-COOL is added to the system, premature engine, heater core or radiator corrosion may result. In addition, the engine coolant will require change sooner – at 30,000 miles . . . or 24 months, whichever occurs first."

21. The above-referenced statements contained in GM's owner's manual as set forth in paragraph 19 constitute an express written warranty or warranties by the Defendant. Defendant's written express warranty regarding the performance of DEX-COOL was given to Plaintiff and Class members at the time of sale, and became part of the basis of the bargain.

22. Defendant breached its written warranties regarding the performance of DEX-COOL with respect to Plaintiff's and Class members' vehicles. DEX-COOL failed to protect GM engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members paying for such replacements, repairs, or inspections. Moreover, Plaintiff has suffered diminution in value with respect to their GM vehicle with factory installed DEX-COOL.

23. In 1999, Defendant issued technical bulletin (#99-06-02-012D), to its service personnel, admitting that vehicles equipped with DEX-COOL may be susceptible to the formation of a rust-like material in the cooling system. However, Defendant intentionally withheld from the consumers and the public the defective nature of DEX-COOL and

misrepresented that improper owner maintenance - maintaining low coolant levels for extended periods of time - was the cause of cooling system corrosion.

### EQUITABLE TOLLING OF STATUTE OF LIMITATIONS

24. The Defendant has refused to make full disclosure to the public, in a manner reasonably calculated to reach <u>all</u> vehicle owners such as the Plaintiff and Class members, of the full extent of the attendant damages of having DEX-COOL in their vehicles.

25. The inherent defects of DEX-COOL are latent and self-concealing. Even in the exercise of reasonable care, the Plaintiff and Class members simply cannot discover that such inherent defects exist. By suppressing the dissemination of information regarding the attendant risks of having DEX-COOL in their vehicles, the Defendant has intentionally foreclosed Plaintiff and Class members from learning of DEX-COOL's latent defects.

26. It is critical that a detailed court-approved notice be sent to <u>all</u> Class members in a manner calculated to reach and notify them of the full extent of the attendant damages of having DEX-COOL equipped in their vehicles. All Class members should be given an opportunity to inspect and remove DEX-COOL from their vehicles. A classwide notice is necessary to accomplish the aforementioned goals and to allow all Class members to take appropriate steps to protect their legal rights.

27. Any applicable statutes of limitations have been tolled by the Defendant's acts of fraudulent concealment and denial of the facts as alleged above. Such acts of fraudulent concealment include: intentionally covering up and refusing to disclose internal documents; failing to disclose that DEX-COOL is inherently defective; misrepresenting the character, quality and nature of DEX-COOL in order to deceive consumers, including releasing reports which purport to conclude that DEX-COOL is reliable and maintenance free. Through such acts of fraudulent concealment, the Defendant has been able to conceal from the public the truth about DEX-COOL's defects, thereby tolling the running of any applicable statutes of limitations. The Plaintiff and the members of the Class could not reasonably have discovered the true facts of

DEX-COOL's defective nature, the truth having been fraudulently and knowingly concealed by Defendant from at least 1996 through the present date.

28. Furthermore, the Defendant is estopped from relying on any statutes of limitations because of its fraudulent concealment of the true character, quality and nature of DEX-COOL. The Defendant was under a duty to disclose the true character, quality and nature of DEX-COOL because this is non-public information over which the Defendant has exclusive control, and because the Defendant knew that this information was not available to the Plaintiff or to Class members. In addition, the Defendant is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

29. Until a date within the applicable statute of limitations, the Plaintiff and Class had no knowledge that the Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent and active concealment of the wrongdoing by the Defendant, the Plaintiff and Class members could not reasonably have discovered the wrongdoing at any time prior to this time.

30. Because of the self-concealing nature of the Defendant's actions and its intentional concealment of its wrongdoing, Plaintiff asserts the tolling of any applicable statute of limitations affecting the claims by Plaintiff and the members of the Class.

## FIRST CAUSE OF ACTION
### (Breach of Express Warranty)

31. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

32. Between calendar years 1994 and 2003 (the "relevant period"), Defendant manufactured and/or sold vehicles factory equipped with DEX-COOL engine coolant.

33. Defendant provided a written warranty to Plaintiff and Class members that related to the future performance of its vehicles and various operative essential components, including its vehicles' coolant systems and the future performance of DEX-COOL engine coolant.

34. Defendant expressly warranted that DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles whichever comes first. Further, Defendant represented and warranted that DEX-COOL coolant protects against rust and corrosion and will not damage aluminum parts.

35. DEX-COOL coolant is defective, is not properly designed to remain in vehicles 5 years or 150,000 (or 100,000) miles (whichever comes first), and does lead to premature engine, heater core or radiator corrosion.

36. Defendant knew, or should have known, that DEX-COOL was defective and not properly designed when placed into the marketplace and that Defendant's express representations concerning DEX-COOL were false, incomplete, and/or misleading at the time they were made to Plaintiff and Class members.

37. As a direct and proximate result of the foregoing, Plaintiff and other members of the Class have suffered damages in that they own vehicles equipped with DEX-COOL coolant.

38. Defendant's attempts to exclude or modify its express warranties, or limit the remedies of the Plaintiff and the Class members by, *inter alia*, requiring Plaintiff and Class members to check their DEX-COOL engine coolant levels at every fuel fill are overly onerous and void and unenforceable.

39. Because Defendant's warranty fails of its essential purpose and is otherwise unconscionable as set forth above, Plaintiff and Class members are entitled to all damages available under M.G.L. Ch. 106, including the necessary labor to replace DEX-COOL engine coolant from their vehicles, and all consequential damages incurred as a result of the failures of DEX-COOL.

or their remaining terms, except that in view of the reformation of the warranty or warranties, Plaintiff requests that this Court issue a mandatory injunction pursuant to its equitable powers requiring Defendant to reform the warranty or warranties in a manner deemed to be appropriate by the Court, and to notify all Class members that such warranty or warranties has been reformed and further directing the Defendant to recalculate its warranty liabilities to any Class members who previously resolved warranty claims with Defendant in accordance with the reformed warranty or warranties.

### FOURTH CAUSE OF ACTION
#### (Breach of Written Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.)

48. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

49. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

50. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(4)-(5).

51. The vehicles at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(1).

52. When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in each vehicle's owner's manual provided with the vehicles and on at least one label affixed to the vehicles, stating, among other things, that the GM-provided DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles, whichever comes

first. Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system.

53. DEX-COOL fails to protect Defendant's engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken place or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members paying for such replacements, repairs, or inspections. Moreover, Plaintiff and the Class have suffered diminution in value with respect to their vehicles with factory installed DEX-COOL.

54. Defendant affirmed the fact, promised and/or described in writing that the DEX-COOL in Plaintiff's and Class members vehicles would meet a specified level of performance over a specified period of time, namely, that DEX-COOL would perform maintenance free for 5 years or 150,000 (or 100,000) miles, whichever came first. Defendant's written affirmation of fact, promises or descriptions relate to the nature of the DEX-COOL in Plaintiff's and Class members' vehicles and became part of the basis of the bargain between Defendant and Plaintiff and Class members. Defendant's written affirmations of fact, promises and/or descriptions, as alleged herein, are each a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

55. Defendant breached its written warranties when Plaintiff's and Class members vehicles did not perform as represented by Defendant and thereby caused damages to Plaintiff and other members of the Class.

56. Resort to any informal dispute settlement procedure and/or affording Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is unnecessary and/or futile. At the time of sale to Plaintiff, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations concerning the inability of DEX-COOL to perform as

warranted by nevertheless failed to rectify the situation and/or disclose it to Plaintiff. Moreover, the remedies available by resort to any informal dispute settlement procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the Magnuson-Moss Act or otherwise that Plaintiff resorts to any informal dispute settlement procedure and/or afford Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is excused and, thereby, deemed satisfied.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

57.  Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference and realleges each of the proceeding allegations of this Complaint as though fully set forth herein, and further alleges, in the alternative, as follows:

58.  As a result of GM's unlawful conduct, as alleged herein, Plaintiff and the other members of the Class were deceived concerning the true nature and value of their vehicles equipped with DEX-COOL coolant. In reality, due to the defective nature of DEX-COOL, the value of the Plaintiff's and the Class members' vehicles was less than they paid for them, and GM accordingly derived and obtained a benefit in the form of a higher sales price at the expense of Plaintiff and the Class members. GM has been unjustly enriched by its receipt and retention of this benefit.

59.  GM has been enriched at the expense of unwitting consumers and it would be inequitable for GM to retain this ill-gotten benefit.

60.  Plaintiff and other members of the Class are entitled to damages as a result of the unjust enrichment of GM.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class, requests judgment and relief of all causes of action as follows:

A.  An order certifying that this action is properly brought and may be maintained as a

nationwide class action under Rule 23 of the Massachusetts Rules of Civil Procedure;

    B.    An order declaring and confirming that GM's conduct is unlawful under the causes of action alleged herein;

    C.    An order requiring GM to cease and desist all unlawful practices described herein;

    D.    Compensatory damages in an amount to be proven at trial, including all damages provided for by statute and all consequential and incidental damages, including damages for diminution in value of Class members' vehicles, and costs suffered by Plaintiff and the other Class members due to GM's unlawful conduct;

    E.    Treble damages (if and where appropriate);

    F.    An award of reasonable attorneys' fees and costs of this suit, including fees of experts;

    G.    Restitution and/or rescission;

    H.    An award of pre- and post-judgment interest; and

    I.    Such other and further relief as the Court may deem necessary or appropriate.

### **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues which may be so tried.

May 6, 2005

Respectfully,

*[signature]*

David Pastor (BBO #391000)
Kenneth G. Gilman (BBO #192760)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* - TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No. 0245

ANTHONY NATALE, JR., et als., on behalf of themselves and all others similarly situated

........................................................................, Plaintiff(s)

v.

GENERAL MOTORS CORPORATION ........................................................., Defendant(s)

## SUMMONS

To the above named Defendant: CT Corporation System, 101 Federal Street, Boston MA 02110, resident agent for General Motors Corporation

You are hereby summoned and required to serve upon **Kenneth Gilman**, plaintiff's attorney, whose address is **60 State Street, Boston, MA 02109**, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at _____ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, **Barbara J. Rouse**, Esquire, at Salem, the ____ day of _____, in the year of our Lord two thousand ____

A TRUE ATTEST COPY
BY *Barbara L. Bedugnis*
Constable of Boston
5-6-05

*Thomas H. Driscoll*
Clerk

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein *and* also file the original in the Clerk's Office.

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.