# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

ANTHONY NATALE, JR., on behalf of himself    )
and all others similarly situated,    )
   )    CIVIL ACTION
          Plaintiff    )    NO. 05-11152-RCL
   )
v.    )
   )
GENERAL MOTORS CORPORATION,    )
   )
          Defendant.    )
_____)

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Kenneth G. Gilman, BBO #192760
David Pastor, BBO #391000
Douglas J. Hoffman, BBO #640472
GILMAN AND PASTOR, LLP
60 State Street, 37th Floor
Boston, MA 02109
Telephone: (617) 742-9700

**ATTORNEYS FOR PLAINTIFF**

CASE 1:05-cv-11152-RCL     Document 21     Filed 08/18/2005     Page 2 of 28

## Table of Contents

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      THIS COURT DOES NOT HAVE JURISDICTION TO DECIDE GM'S
        MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      There is No Federal Jurisdiction Over This Case . . . . . . . . . . . . . . . . . . 4

        B.      Subject Matter Jurisdiction Is A Threshold Issue That Must Be Decided
                Before The Court Takes Any Other Action In This Case . . . . . . . . . . . . 6

II.     EVEN IF THIS COURT HAD JURISDICTION, THE MOTION TO DISMISS
        SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      The Relevant Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      The Case Cannot Be Dismissed For Failure to Serve Because The
                Amended Complaint Was Timely Served On GM . . . . . . . . . . . . . . . . . 9

        C.      Plaintiffs' Breach of Warranty Claims (Counts I, II, IV) Are Properly
                Stated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                1.      GM Promised a Specified Level of Performance by Warranting
                        DEX-COOL's Future Ability to Protect Its Engines. . . . . . . . . . 11

                2.      GM Warranted DEX-COOL's Future Performance for a Definite
                        Period of Time Measured in Years or Miles. . . . . . . . . . . . . . . . 12

                3.      Documents that Accompany a Product Are Part of the "Basis of
                        the Bargain" Regardless of Whether They Are Read by the
                        Consumer Before the Transaction Is Completed. . . . . . . . . . . . 14

                4.      Consumer Maintenance Instructions in the Owner's Manual Do
                        Not Establish a Condition Precedent to Enforcing
                        GM's Warranty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                5.      GM 's Damages Argument Assumes Facts Beyond Those Pled in
                        the Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        D.      Plaintiff Has Stated A Claim For Reformation of Warranty (Count III)

Under M.G.L. Ch. 106, § 2-302. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

E.     Plaintiff Has Stated A Claim For Unjust Enrichment (Count V). . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Table of Authorities**

<u>Cases</u>

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*American Nat'l Ins. Co. v. Travelers Cas. & Sur. Co.*,
    8 F. Supp. 2d 938 (S. D. Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Arnold v. Ford Motor Co.*,
    566 P.2d 98 (N.M. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Auerbach v. General Motors Corporation*,
    No. 01-11723-RCL (D. Mass. July, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bell Sports, Inc. v. Yarusso*,
    759 A.2d 582 (Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Berner v. Delahanty*,
    129 F. 3d 20 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Boston Reed Co. v. Pitney Bowes, Inc.*,
    2002 U.S. Dist. LEXIS 11683 (N.D. Cal. June 20, 2002) . . . . . . . . . . . . . . . . . . . . . . 6

*Brandt v. Wand Partners*,
    242 F.3d 6 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Caboni v. Gen. Motors Corp.*,
    278 F.3d 448 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Carlson v. General Motors Corp.*,
    883 F.2d 287 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Chille v. United Airlines*,
    304 F. Supp. 2d 466 (W.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cipollone v. Liggett Group, Inc.*,
    893 F.2d 541 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Custom Automated Mach. v. Penda Corp.*,
    537 F. Supp. 77 (N.D. Ill. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Danca v. Private Health Care Systems, Inc.*,

185 F. 3d 1 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Daugherty v. Ashe*,
 413 S.E.2d 336 (Va. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Dickens-Berry v. Greenery Rehabilitation and Skilled Nursing Center*,
 1993 Mass. Super. LEXIS 57 (Mass. Sup. Oct. 29, 1993)  . . . . . . . . . . . . . . . . . . . . 19

*Edwards-Warren Tire Co. v. J.J. Blazer Constr. Co.*,
 565 F.2d 401 (6th Cir. 1977)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fahey v. Reynolds Tobacco Company*,
 1995 Mass. Super. LEXIS 464 (Mass. Sup. June 12, 1995)  . . . . . . . . . . . . . . . . . . . . 15

*Finkel v. Natale Rosa, Inc.*,
 19 Mass. App. Ct. 55 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Garden Homes v. Mason*,
 238 F.2d 651 (1st Cir. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Glyptal Inc. v. Engelhard Corp.*,
 801 F. Supp. 887 (D. Mass 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Goodman v. Perlstein*,
 1989 U.S. Dist. LEXIS 8420 (E.D. Pa. July 21, 1989) . . . . . . . . . . . . . . . . . . . . . . . 10

*Hannon v. Original Gunite Acquatech Pools, Inc.*,
 385 Mass. 813 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Hobbs v. Gen. Motors Corp.*,
 134 F. Supp. 2d 1277 (M.D. Ala. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hutchinson Utilities Commission v. Curtiss-Wright Corporation*,
 775 F.2d 231 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*In re Bear River Drainage Dist.*,
 267 F.2d 849 (10th Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jones v. Walter Kidde Portable Equipment, Inc.*,
 183 F.3d 67 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14

*Koulajian v. Trek Bicycle Corp.*,

1992 U.S. Dist. LEXIS 1490 (S.D.N.Y. Feb. 10, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Linnen v. A.H. Robbins Co.*,
1999 WL 1441933 (Mass. Super. Ct. Dec. 20, 1999) . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Marston v. E.I., duPont de Nemours & Co., Inc.*,
448 F. Supp. 172 (W.D. Va. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Murphy v. Mallard Coach Co.*,
582 N.Y.S.2d 528 (N.Y. App. Div. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nasco v. Public Storage, Inc.*,
1995 U.S. Dist. LEXIS 7815 (D. Mass. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Natale v. Pfizer Inc.*,
2005 U.S. Dist. LEXIS 15350 (D. Mass. July 28, 2005) . . . . . . . . . . . . . . . . . . . . . . . 3

*Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts*,
83 F. Supp. 2d 204 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Penta v. Covino*,
1994 WL 14858 (Mass. App. Ct. Jan. 12, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pfizer v. Lott*,
2005 U.S. App. LEXIS 16036 (7th Cir. Aug. 4, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 3

*Prou v. United States*,
199 F. 3d 37 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Roeder v. Alpha Industries, Inc.*,
814 F.2d 22 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18

*Roth v. Ray-Stel's Hair Stylists, Inc.*,
18 Mass. App. Ct. 975 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schlenz v. John Deere Co.*,
511 F. Supp. 224 (D. Mont. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schorsch v. Hewlett-Packard Co.*,
2005 U.S. App. LEXIS 1646 (7th Cir. Aug. 8, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Schroeder v. Fageol Motors, Inc.*,
    528 P.2d 992 (Wash. Ct. App. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*SCO Group, Inc. v. Novell, Inc.*,
    2004 U.S. Dist. LEXIS 12267 (D. Utah June 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Shreve v. Sears, Roebuck & Co.*,
    166 F. Supp. 2d 378 (D. Md. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Steel Company v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Stuto v. Corning Glass Works*,
    1990 U.S. Dist. LEXIS 9320 (D. Mass. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Swierkiewicz v. Sorema, NA*,
    534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Vartanian v. Monsanto Co.*,
    14 F.3d 697 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

*Velez v. Crown Life Ins Co.*,
    599 F. 2d 471 (1st Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Walcott & Steele, Inc. v. Carpenter*,
    436 S.W.2d 820 (Ark. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Warner v. Atkinson Freight Lines Corp.*,
    350 F. Supp. 2d 108 (D. Me. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Westport Ins. Corp. v. Crum & Forster Ins. Co.*,
    2001 WL 274328 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*White v. White*,
    190 N.E.2d 102 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Winston Indus. Inc. v. Stuyvesant Ins. Co.*,
    317 So. 2d 493 (Ala. Civ. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Statutes</u>

15 U.S.C. § 2301(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

M.G.L. Ch. 106, § 2-302. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

M.G.L. ch. 106, § 2-313(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

M.G.L. ch. 106, § 2-313(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Mass. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mass. R. Civ. P. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Mass. R. Civ. P. 4(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>**INTRODUCTION**</u>

Plaintiffs, Anthony Natale, Jr. and John Burns ("Plaintiffs"), submit this Memorandum of Law in Opposition to Defendant General Motors Corporation's ("GM") Motion to Dismiss (the "Motion"). This action was initiated in the Essex County Superior Court on February 11, 2005. GM filed a Notice of Removal with this Court on June 3, 2005. (Dkt. No. 1) (the "Notice"). Only one week later, on June 10, 2005, GM filed the Motion and supporting documents (Dkt. Nos. 2-5). Plaintiffs subsequently moved to remand this action to state court on July 26, 2005 based on a lack of subject matter jurisdiction. (Dkt. Nos. 9-10).

GM has moved to dismiss this action before this Court even has a chance to determine whether jurisdiction is proper, which it is clearly not. As explained below, given the fact that jurisdiction is in dispute, it would be improper for this Court to consider GM's motion to dismiss prior to resolving the pending motion to remand. Subject matter jurisdiction is a "threshold issue" that this court must determine as soon as possible, before taking any other action in the case.

Even if the Court were to consider the motion to dismiss at this time, it must be denied. GM argues that a prior DEX-COOL based case brought by Plaintiffs' counsel was dismissed, and assumes that it is therefore mandatory that this case also be dismissed, accusing Plaintiffs' counsel of "forum shopping." GM's mud-slinging is curious given the fact that in the very case it references, *Corkery v. General Motors*, GM removed that case to federal court using the same arguments offered here, and the case was remanded for lack of federal jurisdiction. (Remand Mem., Ex. B).

As explained below, GM's remaining arguments for dismissal are either incorrect as a

matter of law, or rely on the assumption of facts outside the Amended Complaint, which is impermissible on this motion to dismiss.  In addition, GM complains that the Amended Complaint lacks facts that "may be extremely important for issues related to class certification." (GM Mem. at 3, n.3).  However, a plaintiff need not plead every fact relevant to class certification in the complaint, and GM will be able to obtain this information through discovery prior to class certification briefing.

## ARGUMENT

### I.    THIS COURT DOES NOT HAVE JURISDICTION TO DECIDE GM'S MOTION TO DISMISS

#### A.    There is No Federal Jurisdiction Over This Case

As Plaintiffs established in their Memorandum of Law in Support of Motion to Remand (Dkt. No. 10) ("Remand Mem."), there is no federal jurisdiction over this case.  GM's Notice repeatedly misstates federal and state law in an effort to prove otherwise.  For example, GM claims that this Court has federal question jurisdiction pursuant to the Magnuson-Moss Warranty Act (hereafter "Warranty Act") (Notice ¶¶ 22-28).  However, GM intentionally omits the explicit limitation of the Warranty Act that federal jurisdiction cannot exist if an action is brought as a *class action* and the number of *named plaintiffs is less than one hundred*. 15 U.S.C. § 2310(d)(3)(C) (emphasis added).

GM also asserts jurisdiction pursuant to the Class Action Fairness Act ("CAFA").  CAFA applies only to cases commenced on or after February 18, 2005.  Nevertheless, GM argues that CAFA applies to this matter, even though it was filed in state court before that date, because it was not *served* until after CAFA's effective date.  GM claims that a case is not "commenced" in Massachusetts until it is served on the defendant.  (Notice ¶ 19).  The only case cited by GM on

this point pre-dates the Massachusetts Rules of Civil Procedure, which state that a case is

commenced when it is *filed* in state court.  Mass. R. Civ. P. 3.  (Remand Mem. at 4-5).  In

addition, the case GM cites actually rejects GM's argument.  *Id.* at 5-6.

GM also argues that a case is not "commenced" for CAFA's purposes until it is removed

to federal court.  (Notice ¶ 19, n.2).  However, this argument has been rejected by every federal

court to consider it, including the U.S. Courts of Appeal for the Seventh and Tenth Circuits.

(Remand Mem. at 6-8) (citing cases).  Since Plaintiffs' Memorandum of Law was submitted, two

additional decisions by the Seventh Circuit and one in this very District have confirmed this

same result.[1]  GM's argument is so far off the mark that recent decisions on this issue have

indicated that a defendant removing on this basis could be forced to pay the plaintiff's costs on

remand.  *Schorsch*, 2005 U.S. App. LEXIS 16465, at *9 (inviting plaintiff to request

reimbursement of the additional legal expenses necessitated by the defendant's improper

removal); *Natale*, 2005 U.S. Dist. LEXIS 15350, at *53 and n.26 ("[defendant's] argument has

been repeatedly, this being at least the fourth time, rejected by the federal courts . . . Should

other courts similarly interpret the "commence" statutory language, [defendant's] latitude to seek

judicial interpretation without being held responsible for attorney's fees and costs may narrow in

the future.").

GM also alleged that the $75,000 pre-CAFA jurisdictional amount is met because the

---

[1]  *Natale v. Pfizer Inc.*, Nos. 05-10590, 05-10591, 2005 U.S. Dist. LEXIS 15350, at *39-40 (D. Mass. July 28, 2005) (Young, C.J.) ("a case is 'commenced' for purposes of the Class Action Fairness Act when it is filed with the state court," even if removed later); *Pfizer v. Lott*, No. 05-8013, 2005 U.S. App. LEXIS 16036 (7th Cir. Aug. 4, 2005) (holding, under circumstances identical to those present here, that cases filed in state court prior to CAFA's effective date are not subject to the Act, even if removed thereafter); *Schorsch v. Hewlett-Packard Co.*, No. 05-8017, 2005 U.S. App. LEXIS 16465, at *9 (7th Cir. Aug. 8, 2005) ("[W]e reiterate, that creative lawyering will not be allowed to smudge the line drawn by the 2005 Act: class actions 'commenced' in state court on or before February 18, 2005, remain in state court.").

cost of complying with the request for injunctive relief will exceed $75,000, and because Plaintiffs' class wide claims for attorney fees should be attributed to the named plaintiffs only. (Notice ¶¶ 27, 29-30). GM, however, incorrectly applies the law of the Seventh Circuit to this analysis. The law in this Circuit holds that: (1) injunctive relief should be valued only from the plaintiff's viewpoint; and (2) class members' claims, and attorneys' fees may not be aggregated to meet the jurisdictional minimum. (Remand Mem. at 12-16) (citing cases). GM also offers ***no facts*** to prove that the $75,000 threshold is met.

GM has twice before attempted to remove similar DEXCOOL-based cases to this Court, raising the same arguments, and both cases were remanded. Judge Lindsay rejected GM's diversity arguments in *Auerbach v. General Motors Corporation*, No. 01-11723-RCL (D. Mass. July, 2003) (Remand Mem. Ex. A). Judge Stearns denied GM's very same arguments for federal jurisdiction under the Warranty Act in *Corkery v. General Motors Corporation*, No. 03-11890, Order dated November 12, 2003 (D. Mass.) (Remand Mem., Ex. B).

### B.    Subject Matter Jurisdiction Is A Threshold Issue That Must Be Decided Before The Court Takes Any Other Action In This Case

As set forth in Plaintiffs' Motion to Remand and supporting memorandum, there are, to put it mildly, serious questions as to whether or not this Court has subject matter jurisdiction over this action, and, accordingly, whether or not this action properly belongs in this Court. As discussed in greater detail in Plaintiffs' remand papers, there is overwhelming precedent favoring remand of this action. It would, therefore, best serve the Constitutional principles upon which this Court's jurisdiction is founded, and it would be in the interests of judicial economy and efficiency for this Court to defer any action on the motion to dismiss until this Court determines whether or not it has jurisdiction to hear this matter.

This Court must first make this jurisdictional determination, because, "[w]ithout jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact..." *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (internal quotation marks and citations omitted).  It is axiomatic that jurisdiction is a threshold issue which must be resolved before the court entertains any discussion, much less resolution, of the merits of the case before it.  *Danca v. Private Health Care Systems, Inc.,* 185 F. 3d 1, 4 (1st Cir. 1999) ("[a] threshold issue in this case, as in every case, is subject matter jurisdiction."); *Prou v. United States,* 199 F. 3d 37, 45 (1st Cir. 1999); *Berner v. Delahanty,* 129 F. 3d 20, 23(1st Cir. 1997) ("a court should first confirm the existence of rudiments such as jurisdiction and standing before tackling the merits of a controverted case."); *Velez v. Crown Life Ins Co.,* 599 F. 2d 471, 472 (1st Cir. 1979) ("jurisdiction is a threshold determination which cannot be waived.").

In *Steel Company,* the Supreme Court admonished the lower federal courts to refrain from exercising what it called "hypothetical jurisdiction," where a court assumes it has jurisdiction and proceeds to decide substantive questions.  *Id.*, 523 U.S. at 94.  Accordingly, federal courts confronted simultaneously with multiple issues on a matter, some relating to jurisdiction and some relating to the underlying merits, address the jurisdictional questions first.  Particularly instructive on this point is *American Nat'l Ins. Co. v. Travelers Cas. & Sur. Co.*, 8 F. Supp. 2d 938 (S. D. Tex. 1998).  In *American Nat'l*, just as in the instant matter, the defendant removed a case from state court to federal, and soon thereafter moved to dismiss the case for failure to state a claim, and to transfer venue.  *Id.* at 938.  The plaintiff filed a motion to remand the matter to state court, claiming a lack of subject matter jurisdiction, and argued the court

lacked the power to grant the motion to dismiss.  *Id.*  The court agreed with the plaintiff:

> If subject matter jurisdiction is lacking, the Court never reaches the merits of the controversy to determine whether a cognizable claim is stated; indeed, it lacks the power to do so.  As in this case, if the lawsuit has come before the Court via removal, upon determining that subject matter jurisdiction is lacking, the Court's only recourse is remand.

*Id.* at 939 (citing 28 U.S.C. § 1447).  Other decisions, including those in this Circuit,

overwhelmingly reach the same conclusion.[2]  Consequently, this Court must first decide the

motion to remand prior to even reaching GM's motion to dismiss.[3]

## II.     EVEN IF THIS COURT HAD JURISDICTION, THE MOTION TO DISMISS SHOULD BE DENIED

### A.     The Relevant Legal Standards

On a motion to dismiss, the court "must accept the allegations of the complaint as true,"

*Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir. 1994), and "draw all reasonable

---

[2]  *Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), *affirmed*, 248 F.3d 1127 (2000); *Warner v. Atkinson Freight Lines Corp.*, 350 F. Supp. 2d 108, 114 (D. Me. 2004) ("Subject matter jurisdiction is a threshold issue where removal from state court is contested . . . . Hence, the Court must first address Plaintiffs' Motion to Remand.") (citing *Danca*, 185 F.3d at 4); *SCO Group, Inc. v. Novell, Inc.*, No. 2:04CV139DAK, 2004 U.S. Dist. LEXIS 12267, at *5 (D. Utah June 9, 2004) ("When a district court is faced with a motion to remand and a motion to dismiss, the court should 'rule first on the motion to remand,' and, if granted, send 'the motion to dismiss back to state court.'") (quoting *In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir. 1959)); *Chille v. United Airlines*, 304 F. Supp. 2d 466, 468 (W.D.N.Y. 2004) (deciding pending motion to remand prior to deciding pending motion to dismiss, stating: "[T]he threshold issue here is whether the . . . action should be remanded to state court."); *Boston Reed Co. v. Pitney Bowes, Inc.*, No. 02-01106 SC, 2002 U.S. Dist. LEXIS 11683, at *1 (N.D. Cal. June 20, 2002) (granting motion to remand before reaching motion to dismiss); *Westport Ins. Corp. v. Crum & Forster Ins. Co.*, 2001 WL 274328 (D.N.J. 2001) (dismissing case on jurisdictional grounds before addressing the defendant's summary judgment motion, which raised substantive issues).

[3]  GM claims that a court may decide a Rule 12(b)(5) motion to dismiss prior to a ruling on remand, citing a First Circuit case decided almost 50 years ago, stating that "[o]therwise . . . it would be forced to "litigate the issue of removal in a case that, were it remanded, will be dismissed in state court."  (Motion at 8, n. 7, citing *Garden Homes v. Mason*, 238 F.2d 651, 654 (1st Cir. 1956)).  It is somewhat disingenuous of GM to complain about being forced to litigate removal, as it was GM's decision to remove this case to federal court on frivolous grounds.  Moreover, *Garden Homes* is useless as precedent, because contrary to GM's representation, the First Circuit did not decide the question of whether it was proper to rule on the motion to dismiss before ruling on remand.  The Court stated that this determination was unnecessary, "for it is clear in this case that removal to the federal court was authorized."  *Garden Homes*, 238 F. 2d at 654.

inferences from the particular allegations in the plaintiff's favor." *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 78 (1st Cir. 2002). The Supreme Court has held that "[a] complaint should be dismissed under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema, NA*, 534 U.S. 506, 514 (2002); *see also id.* at 511 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (internal quotation marks omitted)). *See also Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir. 1987) (a court may grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

### B.    The Case Cannot Be Dismissed For Failure to Serve Because The Amended Complaint Was Timely Served On GM

GM argues that the case should be dismissed for failure to serve the original complaint. (GM Mem. at 8). The original complaint was filed on February 11, 2005, and plaintiff therefore had 90 days for service. Mass. R. Civ. P. 4(j). A plaintiff may amend a complaint once as of right at any time prior to service of a responsive pleading. Mass R. Civ. P. 15(a). No responsive pleading had been served, so Plaintiffs exercised this right and served the Amended Complaint on GM on May 6, 2005, as GM concedes (GM Mem. at 3), within 90 days of February 11, 2005.

The Amended Complaint, while served on GM, was evidently not received by the Essex Superior Court. Once the case was removed to this Court on June 3, 2005, Plaintiffs were unable to correct this problem by filing the Amended Complaint with the state court, as the case was no longer pending there. Plaintiffs do not feel it would be appropriate to file the Amended Complaint in this Court, because it is their position that there is no federal jurisdiction and no

doubt GM would -- incorrectly -- attempt to argue that such filing constituted an admission of federal jurisdiction.  That the Amended Complaint has not yet been filed in state court, however, should not affect this Court's decision on the instant motion, for, as GM concedes, a complaint may be served before filing.  (GM Mem. at 8-9, n. 8) (citing *Finkel v. Natale Rosa, Inc.*, 19 Mass. App. Ct. 55, 58 (1984)).  GM continually harps on the fact that the ***original*** complaint was not served, and complains that this decision was made for "strategic reasons."  (GM Mem. at 8-9).  However, the fact remains that the Amended Complaint was served on GM within the 90-day limit, and GM does not, and cannot, explain why such service is not effective.

## C.    Plaintiffs' Breach of Warranty Claims (Counts I, II, IV) Are Properly Stated

GM argues that no warranty actually existed under Massachusetts law or the Magnuson-Moss Warranty Act.  (GM Mem. at 13).  A warranty, as defined in the Magnuson-Moss Warranty Act (the "Act" or "MMWA"), is a "written affirmation of fact" that a consumer product will "meet a specified level of performance over a specified period of time."  15 U.S.C. § 2301(6)(A).  Similarly, under Massachusetts law, "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  M.G.L. ch. 106, § 2-313(1)(a) (2003).  To create an express warranty, it is not necessary that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty.  Because the Complaint alleges that GM made an affirmation of fact and a promise that became part of the basis of the bargain between Plaintiff and GM, Plaintiff has properly stated a claim under both the Warranty Act and M.G.L., ch. 106, § 2-313.

### 1.    GM Promised a Specified Level of Performance by Warranting DEX-COOL's Future Ability to Protect Its Engines.

A warranty of future performance is not merely a description of a product's characteristics or virtues; it is an affirmation that the product will perform according to objective or measurable standards.[4]  For instance, in *Roth v. Ray-Stel's Hair Stylists, Inc.*, 18 Mass. App. Ct. 975, 470 N.E.2d 137 (1984), a manufacturer of hair bleach represented on the box containing the bleach that it would "not run . . ., swell or puff."  *Id.* at 976.  The Court held that the representation was an express warranty and further affirmed the jury's conclusion that the warranty was breached when the bleach did swell rapidly, causing damage to plaintiff's hair.  *Id.* Similarly, where an industrial equipment manufacturer promised to deliver thermoforming machinery capable of operating at 120 cycles per hour, but delivered a product that consistently failed to perform at that speed, the court concluded that an express warranty was given, and breached.  *Custom Automated Mach. v. Penda Corp.*, 537 F. Supp. 77, 79-80 (N.D. Ill. 1982).

Here, the Owner's Manual specifically provides that DEX-COOL "is designed to *remain in [the] vehicle for 5 years or 150,000 miles* . . . whichever comes first" and, *inter alia,* that DEX-COOL "*will* . . . protect against rust and corrosion . . . ."  (Amd. Compl. ¶ 19).  The Amended Complaint specifically alleges that "Dex-Cool failed to protect GM engines against corrosion, which . . . has caused a rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of [GM] radiator[s], heater core[s], gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems."  (Amd. Compl. ¶ 22).  These allegations – setting forth explicit affirmations of future performance and a specific failure to meet those objective performance standards – fall squarely in line with case law addressing warranties of future performance.

---

[4]  A promise that the product will perform to objective or measurable standards is sufficient to form the basis of an express warranty under both the MMWA and M.G.L. 106, § 2-313.

The cases cited by GM are readily distinguishable, because they involve mere product descriptions and operating instructions.  (GM Mem. at 14-15).  In *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378 (D. Md. 2001), an injured plaintiff asserted an express warranty claim premised on the operating instructions in the owner's manual for his snow blower.  The court concluded that the instructions did not create an express warranty of safety, stating: "This description of how to operate the snow thrower does not constitute an express warranty . . ." *Shreve*, 166 F. Supp. 2d at 420-421 (emphasis added).[5]  In contrast, the language at issue here is neither an instruction for handling DEX-COOL, nor merely a product description.  Rather, it warrants a specified level of performance: that DEX-COOL would, among other things, protect against rust and corrosion during the specified period of use.

       **2.**       **GM Warranted DEX-COOL's Future Performance for a Definite Period of Time Measured in Years or Miles**.

The owners' manual states: "this coolant is designed to remain in your vehicle for 5 years or 150,000 miles (240,000 km), whichever comes first . . ." and that "Dex-Cool coolant will . . . protect against rust and corrosion . . ." (Amd. Compl. ¶ 19).  This type of fixed period promise or affirmation of fact – stated in terms of time and, in the alternative, miles – is routinely found to create a warranty of future performance.  *See, e.g., Edwards-Warren Tire Co. v. J.J. Blazer Constr. Co.,* 565 F.2d 401, 402 (6th Cir. 1977) (tires warranted for 2,500 hour service life);

---

[5] Equally unavailing is GM's reliance on *Goodman v. Perlstein*, Civ. A. No,. 86-2144, 1989 U.S. Dist. LEXIS 8420 at *7(E.D. Pa. July 21, 1989).  In that case, a consumer sought to enforce language in an appraisal which he argued constituted a warranty that a product would meet a specified level of performance over a specified period of time, as explicitly required under the Magnuson-Moss Warranty Act.  The Court rejected plaintiff's claim, finding that the "purely pecuniary" diamond appraisal "pertaining neither to absence of defect nor level of performance" could not support a written warranty claim under the Magnuson-Moss Warranty Act.  The court noted that had the appraisal "promised that the stone was rock-solid, impervious to chipping, but when lightly tapped . . . shattered, that would [have] constitute[d] a breach of the Magnuson-Moss] definition of 'written warranty'." *Goodman*, 1989 U.S. Dist. LEXIS 8420, at *6.

*Arnold v. Ford Motor Co.*, 566 P.2d 98, 99 (N.M. 1977) (vehicle warranted for 12 months or

12,000 miles); *Schroeder v. Fageol Motors, Inc.*, 528 P.2d 992, 993 (Wash. Ct. App. 1974)

(freightliner truck warranted for 100,000 miles).

GM, nevertheless, urges this Court to find no warranty here, relying on *Hannon v.*

*Original Gunite Acquatech Pools, Inc.*, 385 Mass. 813, 822 (1982); *Linnen v. A.H. Robbins Co.*,

1999 WL 1441933 (Mass. Super. Ct. Dec. 20, 1999); and *Jones v. Walter Kidde Portable*

*Equipment, Inc.*, 183 F.3d 67, 70 (1st Cir. 1999).  (GM Mem. at 13-14).  GM's reliance on these

cases is misplaced.  The claim for breach of express warranty in *Hannon* was *not* based on

language like that at issue here.  The language at issue in *Hannon*, which was contained in an

advertising brochure,[6] stated as follows: "[b]efore the pool qualifies as a full-fledged 'Acquatech

Pool', however, it must be designed and constructed ***to the highest quality specifications***."

*Hannon*, 385 Mass. at 822 (emphasis added).  Characterizing the statement as mere "seller's

talk" or "puffing" the court held that it did not rise to the level of an express warranty because it

was, "at most, 'an affirmation merely of the value of the goods,'" and thus, expressly excluded

from being characterized as an express warranty.  *Hannon*, 385 Mass. at 823, *citing* M.G.L., ch.

106, § 2-313(2).  Since the language at issue here expressly warrants that DEX-COOL will

"prevent rust" for a stated period of time; a promise well beyond the seller's opinion of the

product's value, *Hannon* is readily distinguishable.[7]

In *Jones*, a case involving a medical tourniquet device, the plaintiff alleged that the

---

[6] The *Hannon* Court rightly held that express warranties can be created under Massachusetts law even when contained in written materials extraneous to the sales contract.  *Hannon*, 385 Mass. at 822-23.

[7] *Linnen* is distinguishable because in that case the defendant drugstore's standard patient information distributed with all prescriptions did *not* warrant that plaintiff would suffer no side effects; but rather merely asserted that "*most* patients experience little or no problems while taking their medication."  (emphasis added).

following statement in an owner's manual constituted an express warranty: "[tourniquet] [p]ressure will *remain* at the selected setting during the entire [medical] procedure unless manually changed." *Jones,* 183 F.3d at 70. (emphasis added). Notably, the court agreed that "standing alone" the statement could be construed as an "affirmation of fact or promise" within the meaning of M.G.L. ch. 106, § 2-313(1)(a) because that statement, like GM's statements here, concerned the *design* of the tourniquet and a *promised result*; namely, maintaining tourniquet pressure at a selected setting.[8] However, in *Jones*, unlike here, the language of the purported express warranty was immediately followed by language expressly *negating* the promised result. The Court held that the two statements, in "combination cannot be read as a warranty that the [pressure would remain at the selected setting]." Since no language negating GM's promise accompanies GM's promise concerning DEX-COOL, *Jones* is not controlling here.

> **3.**     **Documents that Accompany a Product Are Part of the "Basis of the Bargain" Regardless of Whether They Are Read by the Consumer Before the Transaction Is Completed.**

GM argues that the warranty claims fail because neither Natale or Burns allege they actually saw or read the statement or relied on it in their purchase, and that they were therefore not part of the "bargain." (GM Mem. at 16). Contrary to GM's assertion, neither the Act nor M.G.L. ch. 106, § 2-313 requires a showing of reliance. *Id.* Rather, the Act defines a written warranty as a "written affirmation, promise or undertaking [that] becomes *part of the basis of the bargain* between a [warrantor] and buyer." 15 U.S.C. § 2301(6). (emphasis added). *See also,*

---

[8] The language employed by GM here constitutes an "affirmation or promise" because it concerns the design of DEX-COOL (namely, that it was made to remain in the vehicle for a stated period of time or a stated mileage), and a promised result; namely, that it would, *inter alia*, prevent rust and corrosion.

M.G.L. ch. 106, § 2-313 (employing nearly identical "basis of the bargain" language).[9]

Numerous courts faced with this precise issue have overwhelmingly held that sales documents presented to a consumer at or after the time of sale are "part of the basis of the bargain." *Murphy v. Mallard Coach Co.*, 582 N.Y.S.2d 528, 531 (N.Y. App. Div. 1992) (concluding that warranty handed over after consumers had paid for motor home formed basis of bargain and could give rise to Magnuson-Moss warranty action) (emphasis added); *Bridgestone/Firestone, Inc.*, 205 F.R.D. at 527 (promises or affirmations contained in an owner's manual constituted an express warranty "[w]hether the consumer was aware of the written warranty before the purchase or not, [because] it was certainly *part of the bargain*, in that the warranty was part of what the seller sold to the buyer." . . . "[N]o case . . has ruled that an express warranty provided to a consumer upon purchase of a product was unenforceable by the consumer because it was not *part of the basis of the bargain*."); *Marston v. E.I., duPont de Nemours & Co., Inc.*, 448 F. Supp. 172, 173-74 (W.D. Va. 1978) (finding that labeling accompanying pesticide at delivery created express warranty); *Winston Indus. Inc. v. Stuyvesant Ins. Co.*, 317 So. 2d 493, 496-97 (Ala. Civ. App. 1975) (finding that written warranty was part of basis of bargain even where consumer was wholly unaware of warranty's existence at time of sale); *Daugherty*, 413 S.E.2d at 337-39 (finding that appraisal delivered with jewelry created express warranty, even though consumer was not aware of appraisal until after purchase and delivery); 1 Hawkland U.C.C. Series 2-313:5 (2002 Supp.) (collecting cases); *Jones*, 183 F.3d at

---

[9] This phrase, "basis of the bargain," is taken from the Uniform Commercial Code provision covering express warranties; the Official Comment accompanying this section of the U.C.C. makes clear that no particular showing of reliance is required and that the key inquiry– regardless of when the affirmation giving rise to a warranty claim is made – is whether the disputed language can be fairly regarded as part of the transaction. U.C.C. 2-313, cmts. 3, 7. *See also,* M.G.L., ch. 106, § 2-313, cmts. 3, 7.

70 (promise contained in owner's manual could have constituted express warranty).  In addition,

the Fifth Circuit recently found that a jury could reasonably conclude that a description of an

airbag in the owner's manual created an express warranty of a specified level of performance.

*Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452-53 (5th Cir. 2002) (finding description of

automatic airbag deployment at threshold of 14-19 mph crash speeds could give rise to breach of

warranty claim where airbag failed to deploy in moderate-to-severe crash).[10]

GM cites two Massachusetts cases, neither of which expressly holds that "reliance" is an

element of a claim for breach of warranty.[11]  Moreover, GM relies principally upon cases in

which the alleged express warranties were contained in advertisements.  Such cases differ from

the instant case because the former raise the possibility that the plaintiff never heard or saw the

advertisements, thus making it impossible for them to become "part of the basis of the bargain."

In contrast here, all purchasers receive an Owner's Manual and the Owner's Manual warranties

are therefore part of the basis of the bargain between Class Members and GM.  *See In Re*

*Bridgestone/Firestone, Inc.*, 205 F.R.D.at 527-28 (distinguishing warranties made in

---

[10]  *See also Hobbs v. Gen. Motors Corp*., 134 F. Supp. 2d 1277, 1281 (M.D. Ala. 2001) (finding that
diagram and instructions regarding spare tire in owner's manual could constitute express warranty); *Schlenz v. John
Deere Co.*, 511 F. Supp. 224, 229 (D. Mont. 1981) (affirmations relating to safety in operator's manual created
express warranty, despite disclaimer appearing in accompanying warranty document); *Walcott & Steele, Inc. v.
Carpenter*, 436 S.W. 2d 820, 821-23 (Ark. 1969) (finding that tags on cotton seed, not seen until after sale was
made, constituted warranty); *Bell Sports, Inc. v. Yarusso,* 759 A.2d 582, 592-93 (Del. 2000) (finding that express
warranty could arise from textual representations in owner's manual, even where not labeled as such); *Daugherty v.
Ashe*, 413 S.E.2d 336, 338 (Va. 1992) (finding that appraisal statement of diamond grade established basis for
express warranty claim); *cf. Koulajian v. Trek Bicycle Corp.*, 90-CIV-3156, 1992 U.S. Dist. LEXIS 1490 at ** 3-6
(S.D.N.Y. Feb. 10, 1992) (permitting express warranty claim premised on language presented in owner's manual).

[11]  GM cites *Stuto v. Corning Glass Works*, 1990 U.S. Dist. LEXIS 9320 (D. Mass. 1990) (reliance
discussion held to be dictum).  *See, infra*, n.21; and *Penta v. Covino*, 1994 WL 14858 (Mass. App. Ct. Jan. 12,
1994), which, in any case, are distinguishable.  In addition, GM mischaracterizes two other cases which are likewise
distinguishable.  *See* GM Memo at 16, n. 15, *citing Cipollone v. Liggett Group, Inc.*, 893 F.2d 541 (3d Cir. 1990),
*rev'd in part, aff'd. in part*, 505 U.S. 504 (1992) (referenced *infra*) and *Shreve v. Sears, Roebuck & Co.*, 166 F.
Supp. 2d 378, 420 (D. Md. 2001), discussed *supra* (holding that descriptive statement in owner's manual explaining
merely how to operate snow thrower could not be characterized as affirmation or promise sufficient to support claim
for breach of express warranty).

advertisements which might not have been part of the basis of the bargain, from those furnished

in owner's manuals which are presumed to be part of the basis of the bargain).

Another Massachusetts case is highly instructive on this issue. *Fahey v. Reynolds*

*Tobacco Company,* C.A. No. 92-7221, 4 Mass. L. Rep. 21, 1995 Mass. Super. LEXIS 464

(Mass. Sup. June 12, 1995). In *Fahey*, a case at the summary judgment stage of litigation, the

Court acknowledged that a claim for breach of express warranty was sufficient where the

plaintiff merely alleged that representations made by defendants became "part of the basis of the

bargain." The Court observed that because "the leading Massachusetts cases on express

warranties [were ones in which] plaintiffs testified that they relied on the seller's representations

*. . . the courts have not addressed what evidence, other than that of actual reliance, supports a*

*finding that a representation was part of the basis of the bargain." Fahey, supra,* at *8, n.8.[12]

The *Fahey* Court properly observed that a clear understanding of the "basis of the bargain"

terminology employed by the Commercial Code eliminates "reliance" as an element of a breach

of express warranty claim. GM's efforts to impose a reliance requirement here is inconsistent

with the text of the Massachusetts Uniform Commercial Code and the MMWA, as well as

considerable case law interpreting both. Moreover, the fact that Plaintiffs may have viewed the

express warranty for the first time after delivery of the vehicle is irrelevant to a claim for breach

of express warranty. *See Glyptal Inc. v. Engelhard Corp.*, 801 F. Supp. 887, 897 n.8 (D. Mass

---

[12] The Court properly characterized as "dictum" the statement in *Stuto v. Corning Glass Works*, 1990 U.S. Dist. LEXIS at *15, relied on by GM here, "that some minimum of reliance is a required element of a breach of express warranty claim . . ." *Fahey, supra*, at *12-13.

1992).[13]

### 4.    Consumer Maintenance Instructions in the Owner's Manual Do Not Establish a Condition Precedent to Enforcing GM's Warranty

GM maintains that Plaintiffs must allege compliance with the Maintenance Instructions contained in the Owner's Manual in order to state a warranty claim.  (GM Mem. at 17-18).  This precise argument, made by GM in another DEX-COOL case, has already been rejected:

> Plaintiffs are not required to allege that they checked and filled their radiators as suggested by the Owner's Manual.  The court cannot conclude at the demurrer state that strict compliance with the suggestions in the Owner's Manual is a condition to the enforcement of any warranties in the Owner's Manual.

*Sanute v. General Motors Corporation*, C.A. No. HG03093843 (Cal. Sup. Ct. Jan. 27, 2004) (copy attached hereto as Exhibit A).  In *Hutchinson Utilities Comm. v. Curtiss-Wright Corp.*, 775 F.2d 231 (8th Cir. 1985), the Eighth Circuit considered maintenance requirements in a warranty context and concluded that such requirements ***only*** establish conditions precedent to the enforcement of a warranty ***under particular circumstances***, and only after evidence is introduced to establish those circumstances.  At the motion to dismiss stage of litigation, such circumstances cannot be presumed to exist and, in any event, those circumstances are not present here.

In *Hutchinson,* the product was warranted for 100,000 operating hours, but had only been in use for 700 hours before breaking down.  *Hutchinson*, 775 F.2d at 234-35.  Defendant argued that the utility company had failed to inspect the unit after every 250 operating hours as required in the operating and maintenance manual, and thus had failed to satisfy a "condition precedent"

---

[13] The official comments to U.C.C. § 2-313 support this position.  Official Comment 7 provides: "The precise time when words of description or affirmation are made . . . is not material.  The sole question is whether the language . . . [is] fairly to be regarded as part of the contract."

to enforcing the product warranty. *Id.* at 235. The Eighth Circuit disagreed, stating that "the sales contract between [the parties] did not provide that Hutchinson's compliance with the operating and maintenance manual was a *condition precedent* to the existence of the express warranty." *Id.* at 236.[14] In short, the language that GM seeks to enforce as a condition precedent cannot be evaluated at this stage of the litigation and, in any event, is deficient under the analysis set forth in *Hutchinson*.[15]

## 5. GM 's Damages Argument Assumes Facts Beyond Those Pled in the Amended Complaint

GM also attacks Plaintiffs' warranty claims, arguing that Plaintiffs have not suffered the requisite damages, and that, if Plaintiffs had, in fact, suffered the requisite damages, they would have been alleged in the Amended Complaint. In making this latter assumption, GM is clearly attempting to ask the Court to make assumptions of fact beyond the Complaint itself in favor of the defendant, which is impermissible on this Motion to Dismiss.[16] *Vartanian*, 14 F.3d at 700 (stating that the court "must accept the allegations of the complaint as true," and "draw all

---

[14] *Hutchinson Utilities Commission* was decided after a trial. As shown by the appellate opinion, numerous factual issues were presented and resolved by evidence presented at trial. Thus, even if, *arguendo*, a condition precedent were relevant to the enforcement of the written warranty presented here, that fact-intensive analysis could not be resolved on a motion to dismiss.

[15] GM also argues that Plaintiffs failed to allege that the owners' manual statement regarding DEX-COOL was untrue. (GM Mem. at 17). However, this assertion appears throughout the Amended Complaint. (*See, e.g* Amd. Compl. ¶ 22) (alleging, contrary to the warranty: "DEX-COOL failed to protect GM engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system . . .").

[16] This assertion is also disingenuous since GM is already in receipt of a Ch. 93A demand letter expressly stating that Mr. Burns' GM automobile has been damaged by DEX-COOL coolant, and is no longer driveable. On June 24, 2005, Plaintiffs' counsel sent a demand letter pursuant to ch. 93A, to G. Richard Wagoner, Jr., President and CEO of General Motors Corporation. In this letter, it was explained to GM that Plaintiff John Burns purchased a General Motors vehicle with factory equipped DEX-COOL coolant, specifically, a four door Saturn SL1, at a price of approximately $15,000. *Id.* at 2. The letter further states that Burns used DEX-COOL coolant in his vehicle as instructed, and that as a result, his car was damaged and is no longer driveable. *Id.* GM's counsel responded to this letter on July 27, 2005. Consequently, all of GM's comparisons to the *Corkery* matter, and resulting accusations of forum-shopping, are irrelevant.

reasonable inferences from the particular allegations in the plaintiff's favor."); *Roeder*, 814 F.2d at 25 (a court may grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").  Consequently, it would be improper for this Court to dismiss Plaintiffs' warranty claims on this basis.

>       **D.      Plaintiff Has Stated A Claim For Reformation of Warranty (Count III) Under M.G.L. Ch. 106, § 2-302.**

GM argues that Plaintiffs' claim for reformation of warranty fails because they do "not identify *any* particular [warranty] limitation that . . . is unconscionable . . . [and] [b]ecause none of [GM's warranty] limitations are oppressive or create unfair surprise."  (GM Memo at 19). GM's argument is meritless.  First, while it is true that the issue of "unconscionability" generally is one of law for the court to decide, the express language of the statute prohibits that determination from being made on the complaint alone.  M.G.L. ch. 106, § 2-302(2).  *See also, Carlson v. General Motors Corp.*, 883 F.2d 287, 293 (4th Cir. 1989) ("Courts . . . have strictly adhered to the UCC's express requirement that 'when it is claimed or appears . . . that [a] contract or any clause thereof may be unconscionable[,] the parties shall be afforded a reasonable opportunity to present *evidence* . . . to aid the court in making the determination.") (emphasis added); *Nasco v. Public Storage, Inc.*, C.A. No. 92-12731-RCL, 1995 U.S. Dist. LEXIS 7815 at *14-15 (D. Mass. 1995) (enumerated factors to be considered in determining "unconscionability" necessarily contemplate that evidence be presented to the court).

Even if it were proper to determine the issue of "unconscionability" at this stage of the litigation, an attempt by GM to limit its liability for breach of express warranty would be unenforceable because GM knew about DEX-COOL's latent design defect, but failed to disclose it to consumers.  (Amd. Compl. ¶ 23).  *Carlson v. GM*, 883 F.2d at 296 ("When a manufacturer

is aware that its product is inherently defective . . . the presumption is that the buyer's acceptance of limitations on his contractual remedies . . . was neither 'knowing' nor 'voluntary,' thereby rendering such limitations unconscionable and ineffective.") (citation omitted).[17]  Since Plaintiffs have alleged that GM concealed DEX-COOL's latent design defect, the Amended Complaint states a claim for reformation of warranty.

### E.    Plaintiff Has Stated A Claim For Unjust Enrichment (Count V).

In order to state a claim for unjust enrichment, Plaintiffs must allege facts showing that (1) they conferred a benefit upon GM; (2) GM knowingly accepted the benefit; and (3) the acceptance or retention by GM of the benefit is inequitable.  *Dickens-Berry v. Greenery Rehabilitation and Skilled Nursing Center*, 1993 Mass. Super. LEXIS 57 at *10, n.6 (1993); *Brandt v. Wand Partners*, 242 F.3d 6, 24-25 (1st Cir. 2001).  Plaintiffs allege that they overpaid to purchase a GM-manufactured vehicle.  (Amd. Compl. ¶ 58).  Plaintiffs further allege that it would be inequitable for GM to retain a portion of the benefit conferred on GM because GM knew, but failed to disclose, that the vehicles were equipped with the defective DEX-COOL product.  (Amd. Compl. ¶¶ 23, 30, 58-59).  Plaintiffs' allegations state a claim for unjust enrichment.  *See, White v. White*, 346 Mass. 76, 79-80, 190 N.E.2d 102 (1963) (equity acts to avoid unjust enrichment whether or not defendant acted to commit an intentional wrong).

### CONCLUSION

For the reasons stated herein, GM's Motion to Dismiss should be DENIED.  In the alternative, Plaintiffs seek leave to replead their complaint.

---

[17] Contrary to GM's assertion, nothing in M.G.L. ch. 106, § 2-302 requires Plaintiff to identify any specific warranty provision she deems unconscionable.  Rather, it is within the *court's* purview to determine if GM's warranty is unconscionable and, if so, how it should be reformed.  M.G.L. ch. 106, § 2-302(1).

Dated: August 18, 2005                      Respectfully submitted,


                                            /s/ Kenneth G. Gilman
                                            Kenneth G. Gilman, BBO #192760
                                            David Pastor, BBO #391000
                                            Douglas J. Hoffman, BBO #640472
                                            GILMAN AND PASTOR, LLP
                                            60 State Street, 37th Floor
                                            Boston, MA 02109
                                            Tel: (617) 742-9700

                                            **ATTORNEYS FOR PLAINTIFF**

# Exhibit A

Alexander, Hawes & Audet, LLP
Attn: Audet, William M.
152 North Third St., Ste. 600
San Jose, CA  95112

Bingham McCutcheon, LLP
Attn: Manning, Susan Baker
Three Embacadeo Center
San Francisco, CA  94111-4067

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | | |
|---|---|---|
| Sanute | Plaintiff/Petitioner(s) | No. HG03093843 |
| | VS. | Order |
| | | Demurrer to the First Amended Complaint Overruled |
| General Motors Corporation | Defendant/Respondent(s) | |
| | (Abbreviated Title) | |

---

The Demurrer to the First Amended Complaint was set for hearing on 01/27/2004 at 09:00 AM in Department 22 before the Honorable Ronald M. Sabraw.  The Tentative Ruling was published and was contested.

Defendant and Moving Party General Motors Corporation did not appear.Plaintiff Michael Sanute appeared by counsel Eric H. Gibbs, Richard M. Paul, III and Andrew N. Friedman.Defendant General Motors Corporation appeared by counsel Robert Ellis.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  Demurrer of General Motors to First Amended Complaint is OVERRULED.

The First Amended Complaint states four claims: (1) Moss-Magnuson Warranty Act, (2) California Legal Remedies Act, (3) Song-Beverly Act, and (4) Unfair Competition Act.  All claims concern the performance of Dex-Cool anti-freeze and representations by General Motors concerning Dex-Cool.  Plaintiffs specifically focus on the representations in the Owners' Manuals of General Motors vehicles.  (Baker Decl., Exh B, p 6-21 and 6-22.)

Demurrer to First Cause of Action under Moss-Magnuson Warranty Act is OVERRULED.  15 USCS § 2301 defines a written warranty as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time."  The focus in this motion is on whether General Motors promised that Dex-Cool would "meet a specified level of performance over a specified period of time."

The Court holds: (1) a warranty can be made in an owner's manual, Anthony v. General Motors Corp., 33 Cal. App. 3d 699, 706; (2) the owner's manual must be read as a whole and not as series of discrete sentences; and (3) the statements in the owner's manual at p 6-21 and 6-22 could be read as a promise that Dex-Cool would "meet a specified level of performance over a specified period of time."

The Court holds that under Keith v. Buchanan (1985) 173 Cal.App.3d 13, 22-24, a consumer is not required to prove actual reliance on a warranty as a part of the bargain.  A warranty is presumed to be part of the bargain, and the defendant has the burden of demonstrating that a consumer did not rely on

---

the warranty.

The Court holds that Plaintiffs are not required to allege that they checked and filled their radiators as suggested by the Owner's Manual. The Court cannot conclude at the demurrer stage that strict compliance with the suggestions of the Owner's Manual is a condition to enforcement of any warranties in the Owner's Manual.

Demurrer to Second Cause of Action under California Legal Remedies Act is OVERRULED. The claim is sufficiently specific regarding what General Motors allegedly misrepresented.

Demurrer to Third Cause of Action under Song-Beverly Act is OVERRULED for the reasons stated regarding the claim under the Moss-Magnuson Warranty Act.

Demurrer to Fourth Cause of Action under Unfair Competition Act is OVERRULED.
Claims under the UCL must borrow from or be tethered to federal, state or municipal statute or regulation or case law. Gregory v. Albertson's, Inc. (2002) 104 Cal. App. 4th 845, 851, 854. The UCL cause of action borrows from and is tethered to the statutes in the First, Second, and Third Causes of Action, so the analysis related to those causes of action applies to the UCL cause of action. The Court notes that under its interpretation of the UCL, a claim must borrow from or be tethered to a specific legal principle and cannot be based on generalized unfairness or a lack of social utility.

Demurrer to claims for restitution under the Unfair Competition Act is OVERRULED. The Court cannot determine at this stage in the proceedings that the Court cannot order any monetary relief under the UCL. The Court has broad authority to order relief under Business and Professions Code 17203. The Court notes, however, that Defendant raises issues that may restrict, or prohibit, the award of monetary relief under the UCL even if liability is found under that statute. As noted in Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal. 4th 1134, 1144, 1150, "A UCL action is equitable in nature; damages cannot be recovered," and "an action under the UCL is not an all-purpose substitute for a tort or contract action."

Plaintiffs are given leave to file a Second Amended Complaint to allege damages under the CLRA on or before February 2, 2004. Defendant's must Answer on or before February 13, 2004.

Dated: 01/27/2004

_____
Judge Ronald M. Sabraw