IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

—————————————————————
|  |  |
|---|---|
| ANTHONY NATALE, JR., on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| GENERAL MOTORS CORPORATION, | ) ) ) |
| Defendant. | ) ) ) |

Civil Action No.   05-11152-RCL

—————————————————————

## DEFENDANT GENERAL MOTORS CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### I.     INTRODUCTION

On February 11, 2005, just days before the Class Action Fairness Act ("CAFA") became law, plaintiff Anthony Natale, Jr. ("Natale") raced to the Massachusetts Superior Court for Essex County to file a complaint alleging defects caused in vehicles manufactured by General Motors Corporation ("GM") with factory-equipped Dex-Cool coolant. *See* February 11, 2001 Complaint (the "February 11 Complaint"), attached hereto as Ex. A.  The February 11 Complaint is nearly identical to another complaint previously filed by the same plaintiff's counsel in the Massachusetts Superior Court for Middlesex County on behalf of Erin Corkery, an employee of the law firm of Gilman and Pastor, LLP.  *See* Corkery Complaint, attached hereto as Ex. B.  The Corkery Complaint was dismissed with prejudice on the merits in August 2004.  *See* Memorandum of Decision and Order on Defendant's Motion to Dismiss, *Corkery v. General Motors Corp.*, Civ. Action No. 03-3881 (Middlesex Super. Ct. Aug. 2, 2004) (Gershengorn, J.), attached hereto as Ex. C.  The timing of the February 11 Complaint is particularly important since CAFA took effect on February 18, 2005, and thus it reflects a strategic attempt by counsel who wanted a second opportunity to press a Dex-Cool class action (i) in a state court jurisdiction other than Middlesex County (where the claims had already been rejected) and (ii) outside the

Federal system where they knew full well that it would be transferred to the Southern District of Illinois and consolidated with the related multi-district litigation ("MDL") pending before Judge Murphy.

The February 11 Complaint names a single plaintiff, Natale, and purports to state claims for breach of written warranty under the Magnuson-Moss Warranty Act, among others. *See* February 11 Complaint, ¶¶ 48-56. However, plaintiff never served the February 11 Complaint upon GM. Instead, on May 6, 2005, shortly before the time for service under Massachusetts Rule of Civil Procedure 4(j) expired, plaintiff served upon GM an incomplete copy of a document that purports to be an amended complaint. *See* May 6, 2005 Amended Complaint (the "Amended Complaint"), attached hereto as Ex. D. The Amended Complaint, which adds another plaintiff, John Burns,[1] has never been filed with the Massachusetts Superior Court. No other process, pleadings or orders were served on GM.[2]

While GM maintains that there are several grounds for federal jurisdiction, at its core, plaintiff's motion to remand presents the question of whether counsel can file essentially a sham complaint just days before CAFA was to take effect in the name of a plaintiff with no conceivable claims in order to defeat federal jurisdiction and to buy time to find another plaintiff.

---

[1]For simplicity's sake, GM refers to "plaintiff" in the singular throughout this motion, both because the only Complaint pending in Massachusetts Superior Court for Essex County is the February 11 Complaint and the additional plaintiff, John Burns, makes the exact allegations as Natale, except that Burns does not allege ownership of a particular GM model, stating only that he "purchased and owns a GM vehicle." *See* Amended Complaint, ¶ 5.

After GM filed its Motion to Dismiss, Burns served a c. 93A demand letter on GM (received by GM on June 28, 2005). However, neither the February 11 Complaint nor the Amended Complaint contain a c. 93A claim, and none of the facts alleged in that demand letter appear in any complaint.

[2]Plaintiff does not dispute that GM complied with all procedural requirements for effecting removal on June 3, 2005. Instead, plaintiff contends that CAFA does not apply because the February 11 Complaint means that the case was commenced pre-CAFA. As illustrated in GM's Motion to Dismiss filed on June 10, 2005, however, the February 11 Complaint is subject to mandatory dismissal because it was not served on GM within the time prescribed by Massachusetts Rule of Civil Procedure 4(j).

- 2 -

As outlined in GM's motion to dismiss and its recently filed motion for discovery, it appears that is precisely what happened here. If allowed to pursue limited discovery, GM believes that it will be able to establish that Natale (i) purchased a used vehicle as opposed to a new vehicle from an authorized GM dealership and at the time of purchase it was not subject to any express warranty; (ii) the vehicle, a 1994 Chevy Blazer was not factory-equipped with Dex-Cool since GM did not start using Dex-Cool until 1995; and (iii) if Natale's car was a 1994 model, the owner's manual and the labels or stickers in the engine compartment never mentioned Dex-Cool, all of which call into question the veracity of the fundamental allegations in the February 11 Complaint. Thus, if this case were truly about Natale, there would be no basis for any complaint. The Court should not consider plaintiff's remand motion unless GM is authorized to take limited discovery on the issues related to Natale's GM vehicle.

Plaintiff's remand motion should also be denied because even if plaintiff Anthony Natale can avoid CAFA jurisdiction by filing a sham complaint on February 11, John Burns cannot. Any action pursued by Burns or any further amendment by any other plaintiffs is subject to CAFA. If the Court determines the Amended Complaint was served to add Burns as a named plaintiff, or the Complaint is later amended to add a different plaintiff, the Court will have original jurisdiction over the added plaintiffs' action and supplemental jurisdiction over Natale's claims.

Finally, a conditional transfer order already has been issued, transferring this case to the Southern District of Illinois and consolidating it with the related multi-district litigation ("MDL") pending before Judge Murphy. To avoid inconsistent pretrial rulings and in the face of a likely transfer of this action to the Southern District of Illinois, this Court should either postpone decision on plaintiff's remand motion pending the Panel's final transfer order or, at minimum, apply the law of the Seventh Circuit to the motion whereby federal diversity jurisdiction exists in this case even in the absence of CAFA.

## II.     ARGUMENT

### A.     THE CLASS ACTION FAIRNESS ACT APPLIES TO THIS ACTION AND REQUIRES FEDERAL JURISDICTION.

CAFA bestows original jurisdiction upon this Court because (i) the plaintiff and the purported class members are citizens of Massachusetts; (ii) GM is not a citizen of Massachusetts; and (iii) the matter in controversy exceeds $5 million.  CAFA provides:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

28 U.S.C. § 1332 (as amended Feb. 18, 2005).[3]  As alleged in both the February 11 Complaint and in the Amended Complaint, plaintiff purports to represent a class of Massachusetts residents.  February 11 Complaint, ¶ 1; Amended Complaint, ¶ 1.  GM is a Delaware corporation with its principal place of business in Michigan.  *Id.* ¶ 5; Amended Complaint, ¶ 6.  The relief sought, on behalf of "thousands" of GM vehicle owners, includes such injunctive relief as "an order requiring GM to cease and desist" all allegedly unlawful practices, as well as compensatory damages, treble damages, attorneys' fees and costs, and restitution or rescission.  *Id.* ¶ 2, Request for Relief; Amended Complaint, ¶ 2, Request for Relief.  This relief clearly exceeds the sum of $5 million, and plaintiff in his motion to remand does not argue otherwise.

### 1.     CAFA APPLIES TO THIS ACTION BECAUSE THE FEBRUARY 11 COMPLAINT IS SUBJECT TO MANDATORY DISMISSAL UNDER MASS. R. CIV. P. 4(J) AND THUS NO ACTION WAS PROPERLY COMMENCED BEFORE THE ENACTMENT OF CAFA.

CAFA section 9 provides:  "The amendments made by this Act shall apply to any civil action commenced on or after the date of the enactment of this Act."  28 U.S.C. § 1332 Note.  Although plaintiff filed a Complaint on February 11, one week before the effective date of

---

[3]Section 5 of CAFA creates 28 U.S.C. § 1453, which allows for removal of affected actions to the federal courts pursuant to 28 U.S.C. § 1446.  GM properly followed those procedures here.

CAFA, the February 11 Complaint was never served upon GM and, thus, was subject to <u>mandatory</u> dismissal pursuant to Mass. R. Civ. P. 4(j). As set forth more fully in GM's Motion to Dismiss filed with the Court on June 10, 2005, because the February 11 Complaint is subject to mandatory dismissal, no action was properly commenced by plaintiff before CAFA's effective date.

Under Federal Rule of Civil Procedure 12(b)(5), a federal court must apply state procedural law regarding service of process that occurred prior to removal. *See* Fed. R. Civ. P. 12(b)(5); *Osborne v. Sandoz Nutrition Corp.*, 1995 U.S. App. LEXIS 28008 (1st Cir. 1995) (unpublished). Massachusetts Rule of Civil Procedure 4(j) sets forth the applicable procedural requirements for service of process. *See* Mass. R. Civ. P. 4(j). Rule 4(j) requires service of summons and Complaint upon a defendant within 90 days of filing of the Complaint. *Id.*. Absent "good cause why such service was not made within that period" Rule 4(j) provides for <u>mandatory</u> dismissal. *Id.* (emphasis added); *Shuman v. The Stanley Works*, 30 Mass. App. Ct. 951, 952 (1991). The Massachusetts courts have defined good cause as a "diligent albeit unsuccessful effort to complete service within the period prescribed by the rule." *Hull v. Attleboro Sav. Bank*, 33 Mass. App. Ct. 18, 26 (1998).

Pursuant to Rule 4(j), plaintiff had until May 12 to serve the February 11 Complaint upon GM. Plaintiff does not dispute that the February 11 Complaint was never served upon GM. Instead, on May 6, plaintiff served upon GM a summons and an incomplete copy of the Amended Complaint, which is essentially identical to the February 11 Complaint, except for adding John Burns as a named plaintiff.[4] The Amended Complaint was never actually filed with the Massachusetts Superior Court.

---

[4]GM contends that Burns was added as a named plaintiff to try to cure the fact that Natale is not a proper plaintiff, and any case brought on his behalf is subject to dismissal. On April 20, 2005, in another case brought by the same counsel against GM, *Ann DiTondo v. General Motors Corp.*, Civ. Action No. 01-3578, Middlesex Superior Court, summary judgment was entered in favor of GM, in part, because of

(Continued…)

LITDOCS/612393.3

Plaintiff's motion to remand does not offer any explanation for these two procedural errors, nor does it refute CAFA's applicability to this action in light of them.[5]  First, the remand motion does not provide any reason or explanation for why the February 11 Complaint was not served upon GM within the time requirements under Rule 4(j).  It also does not even attempt to assert that Natale undertook a diligent, albeit unsuccessful, effort to complete service within the 90-day time limit.  Thus, to the extent that plaintiff contends that this purported class action was "commenced" with the filing of the February 11 Complaint, it is subject to mandatory dismissal under governing Massachusetts law.  *See* GM's Memorandum in Support of Motion to Dismiss at 8-10.

Further, to the extent that plaintiff relies upon the Amended Complaint, any action based upon the service of the Amended Complaint was commenced, at the earliest, on May 6, 2005 (well after CAFA's enactment) when it was served upon GM.  *See Finkel v. Natale Rota, Inc.*, 19 Mass. App. Ct. 55, 58 (1984) (while complaint need not be filed before service, when it is not filed before service, the date of service is deemed to be the date the action is commenced).  *See* GM's Memorandum in Support of Motion to Dismiss at 8-10 & n.8.  *See also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 355-56 (1999) (plaintiff cannot "dodge" service requirements to "trap" defendants into keeping suits in state court).

The cases cited in plaintiff's motion to remand in support of the argument that CAFA does not apply are wholly unrelated to the circumstances presented here.  Plaintiff relies on a line

---

issues related to the identity and status of the named plaintiffs.  Burns, of course, first appeared on the May 6, 2005 Amended Complaint, just over two weeks after the *DiTondo* ruling.

[5]Plaintiff's passing comment - that service of an Amended Complaint that "evidently was not received by the Essex Superior Court" somehow corrects the defect in service - ignores the strict requirement under Mass. R. Civ. P. 4(j) that service of the Complaint must be made within 90 days of filing.  *See Commissioner of Revenue v. Carrigan*, 45 Mass. App. Ct. 309, 312 (1998); *Hull v. Attleboro Sav. Bank*, 33 Mass. App. Ct. 18, 26 (1992).

LITDOCS/612393.3

of federal court cases, beginning with *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232 (10th Cir. 2005).  Pl. Mem. at 6-7.  None of these cases, however, is on point.

In *Pritchett v. Office Depot, Inc.*, for example, the plaintiffs commenced their class action in a Colorado state court on April 2, 2003, alleging violation of Colorado law in requiring class members to work unpaid overtime.  The class was certified, discovery was completed, and the action was set for trial in the state court on March 14, 2005.  *See id.* at 1233.  Following passage of CAFA, and just two weeks before commencement of trial, the defendant removed on March 1, 2005.  *See id.*  The defendant argued that, for purposes of CAFA, "commencement" of an action should be the date upon which it is removed, not the date upon which the Complaint is filed. The district court rejected that argument and remanded, and the Tenth Circuit affirmed.  *See id.* at 1238.  That holding has no bearing on a case in which the time limit for service of the Complaint lapsed, under governing state law the Complaint is subject to mandatory dismissal, and a new Complaint was not served until well after February 11, 2005.  Thus, no case was properly commenced, even under the *Pritchett* reasoning, until after CAFA was enacted.  The remaining cases cited by plaintiff are in accord.  *See Knudsen v. Liberty Mutual Ins. Co.*, No. 05-8010, 2005 U.S. App. LEXIS 10440, at \*\*2-3 (7th Cir. June 7, 2005) (action pending since March 2000, removed in February 2005, and no argument that case was not properly filed and served before CAFA's enactment); *Sneddon v. Hotwire Inc.*, Nos. 05-0951, 05-0952, 05-0953, 2005 U.S. Dist. LEXIS 13257, at \*\*6-7 (N.D. Cal. June 29, 2005) (no question that each of the three cases at issue was properly filed and not otherwise subject to dismissal before the enactment of the CAFA); *Bush v. Cheaptickets,* No. CV 05-2285, 2005 U.S. Dist. LEXIS 14583, at \*5 (C.D. Cal. May 9, 2005) (same).

2.    **PLAINTIFF CANNOT AVOID CAFA JURISDICTION BY FILING A PATENTLY DEFICIENT COMPLAINT PRE-CAFA IN ORDER TO BUY TIME TO FIND A PROPER PLAINTIFF.**

As explained in GM's Notice of Removal, GM's Motion to Dismiss and again herein, the February 11 Complaint did not effectively "commence" this purported class action because

Natale was a sham plaintiff named to effectuate a pre-CAFA filing.  While plaintiff wants to brush off the fact that the February 11 Complaint was not served on GM and that the Amended Complaint was never filed with the Massachusetts Superior Court, it appears that this was anything but an oversight.  Faced with the imminent enactment of CAFA, if counsel wanted another opportunity to file a Dex-Cool class action, they had to do so quickly.[6]  Undoubtedly recognizing that the issues associated with his vehicle meant that Natale was not a proper plaintiff,[7] counsel apparently decided not to serve GM until it could find a new plaintiff.[8]

---

[6] As noted above and in GM's Motion to Dismiss, in the fall of 2003, plaintiff's counsel brought a nearly identical Complaint in Middlesex County Superior Court on behalf of Erin Corkery:  *Corkery v. General Motors Corp.*  After the case was remanded to State Court (pre-CAFA, of course) GM moved to dismiss all counts.  After briefing and oral argument, the Massachusetts Superior Court granted GM's motion and dismissed all counts.  While obviously not satisfied with the ruling on the merits of the various Dex-Cool claims, instead of pursuing an appeal to the Massachusetts Appeals Court or the Supreme Judicial Court, plaintiff's counsel decided to file a second case, but this time in a different superior court (even though Natale appears to be a resident of Middlesex County, counsel filed the February 11 Complaint in Essex County Superior Court).  The February 11, 2005 filing, of course, was the day after the United States Senate passed the CAFA bill that would eventually become law.  As reported in the press, passage appeared certain because the Republican majority in the House had pledged to pass it, and President Bush had promised to sign it.

[7] Counsel certainly cannot blame the lack of service on inadvertence since the existence of the February 11 Complaint and the fact that it had not been served was noted in a March 3, 2005 submission to the Middlesex Superior Court in the matter of *DiTondo v. General Motors Corp*., Civ. Action No. 01-3578, another putative class action brought by the same firm.  Further, GM has an agent for service in Massachusetts.  *See* Buonomo Aff. ¶ 2, filed in support of GM's Motion to Dismiss.  Not serving GM with the February 11 Complaint, thus, appears to have been a conscious strategic decision on behalf of plaintiff's counsel.

[8] Recent federal court decisions have recognized that, in some situations, the date of the amended pleading (not the pre-CAFA complaint) is the date the action "commenced" for purposes of CAFA.  *See Adams v. Federal Materials Co.*, No. 5:05 CV-90-R, 2005 U.S. Dist. Lexis 15324 (W.D. Ky. July 28, 2005).  In *Knudsen v. Liberty Mutual Ins. Co.*, 411 F.3d 805, 807 (7th Cir. 2005), the Seventh Circuit allowed that some changes in litigation may render litigation new for removal purposes under CAFA:

> As we have already hinted, however, a new claim for relief (a new 'cause of action' in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes. . . .  We imagine, though we need not hold, that a similar approach will apply under the 2005 Act, perhaps modeled on Fed. R. Civ. P. 15(c), which specifies when a claim relates back to the original complaint (and hence is treated as part of the original

(Continued…)

- 8 -

Indeed, as explained in GM's Motion for Leave to Conduct Discovery, it appears that any complaint with Natale as the named plaintiff would not support the essential allegations concerning, among other things, the existence of GM vehicles with factory-equipped Dex-Cool and owner's manuals with statements concerning Dex-Cool.

In order to provide the Court with an appropriate factual record to determine whether this Dex-Cool class action was actually "commenced" by a proper plaintiff pre-CAFA and was not simply a sham to avoid federal jurisdiction, GM first sought a stipulation from plaintiff's counsel to several essential facts concerning Natale's ownership of a GM vehicle factory-equipped with Dex-Cool. Specifically, GM requested that Natale stipulate to the following:

1.   Natale was the sole named plaintiff when the complaint in above-captioned lawsuit was filed in Massachusetts State Court on February 11, 2005.

2.   The GM vehicle alleged in paragraph 4 of the Complaint to be owned by Natale and to contain factory equipped Dex-Cool, is a 1994 Chevy Blazer, VIN# 1GNDT13W4R0140457.

3.   Natale purchased the vehicle as a used car as opposed to a new vehicle from an authorized GM dealership.

4.   The 1994 Chevy Blazer referenced in the Complaint was not factory-equipped with Dex-Cool engine coolant.

5.   When Natale purchased the 1994 Chevy Blazer, it was not subject to any express GM warranty.

6.   The Owner's Manual for Natale's 1994 Chevy Blazer does not make any statements concerning Dex-Cool engine coolant.

---

suit) and when it is sufficiently independent of the original contentions that it must be treated as fresh litigation.

*Id. See also Natale v. Pfizer Inc.*, No. 05-10591-WGY, 2005 U.S. Dist. Lexis 15350, at *24 (D. Mass. 2005) ("This language in *Knudsen* is being interpreted by attorneys as 'strongly suggesting that there is a category of cases which, although filed in state court before February 18, 2005, may nonetheless become removable under [the Act] based on post-February 18th pleading amendments that add new defendants or new causes of action.'") (citation omitted). GM contends that, consistent with this precedent, the filing of patently deficient complaint as a sham to avoid federal jurisdiction, followed by service of an amended complaint, must be included in any category of removable actions under CAFA.

- 9 -

7.    The 1994 Chevy Blazer purchased by Natale did not contain any stickers or other labeling that referenced Dex-Cool engine coolant.

8.    Natale has never used Dex-Cool engine coolant or caused Dex-Cool engine coolant to be used in the 1994 Chevy Blazer.

The refusal to stipulate to these facts and the refusal to allow extremely limited discovery speaks volumes about Natale and the basis for the February 11 Complaint.

First, GM did not even use Dex-Cool engine coolant in its 1994 models.  Thus, if in fact Natale's vehicle is a 1994 vehicle then there was no basis for the fundamental allegation that Natale's vehicle was factory-equipped with Dex-Cool (a fact, of course, easily verifiable by counsel).  This also means that there could be no statements in Natale's owner's manual or on any stickers or labels affixed in the engine compartment which even mentioned Dex-Cool, another fundamental allegation of the February 11 Complaint.

Second, if Natale's vehicle was purchased as a used vehicle with more than the mileage limitation applicable to GM's express warranty (and here, GM believes that by the time Natale purchased his Chevy Blazer the GM express warranty had long since expired), there would be no express GM warranty.  As such, there would be no basis for Natale to make any Dex-Cool related claims against GM on behalf of himself or any alleged class member.  If Natale does, in fact, own a 1994 Chevy Blazer which was not factory equipped with Dex-Cool and which he purchased as a used vehicle without an express warranty and without any owner's manual or labels containing statements about Dex-Cool, he could not serve as a proper plaintiff, and there could be no good faith factual or legal basis for the filing of the February 11 Complaint.  This also means, of course, that the Amended Complaint which adds plaintiff John Burns and which was not served upon GM until well after CAFA, in effect commenced a new action subject to this Court's jurisdiction under CAFA.

Given the serious questions concerning the veracity of the allegations in the February 11 Complaint and whether there was a good faith factual or legal basis for the filing of that complaint with Natale as the named plaintiff, the Court should not rule on the remand motion without a full factual record.  Because GM has already litigated and prevailed on a Dex-Cool

- 10 -

class action filed by Gilman and Pastor, and the case filed on behalf of Natale represents a second bite at the apple, the Court should develop a full factual record concerning the Natale Complaint.

### 3.  THE COURT CAN AUTHORIZE DISCOVERY TO DETERMINE CAFA JURISDICTION ISSUES.

In order for the Court to determine the jurisdiction question and thus whether the class action now represented by John Burns is subject to CAFA, GM should be authorized to take discovery related to the validity of Natale as a named plaintiff and the circumstances surrounding service of the Amended Complaint.  Although discovery for purposes of allowing a motion to remand may be rare, it is well within the Court's broad discretionary powers to allow such discovery.  *See* Fed. R. Civ. P. 43(e) ("When a motion is based on facts not appearing in the record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition.").  *See also Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001) (district court determining a factual challenge to subject matter jurisdiction "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction").  *Cf.* Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery on any matter relevant to subject matter involved in the action.").  Indeed, recently one federal district court, when faced with a question of whether remand was warranted under CAFA, *ordered* a plaintiff to amend his interrogatories so that they were tailored to lead to discovery of information necessary to resolve a jurisdictional question under CAFA -- and the motion to remand.  *Schwartz v. Comcast Corp.*, No. 05-2340, 2005 U.S. Dist. Lexis 15396, at *26 (E.D. Penn. July 28, 2005).  Of note, the federal district court recognized that because the information was in control of the defendant, limited discovery was warranted.  *Id.*  Here, the need for limited discovery is the same; the only difference is that information is in the sole control of the plaintiff.

4.    <u>GM IS NOT RAISING A NEW BASIS OF JURISDICTION.</u>

Contrary to plaintiff's assertion, GM is not raising a new basis of jurisdiction.  GM has always asserted CAFA as a basis for federal jurisdiction and that the plaintiff sought to evade its requirements.  *Cf., e.g., Lupo v. Human Affairs Inter., Inc.*, 28 F.3d 269, 273-74 (2d Cir. 1994) (where defendant raised only federal question jurisdiction in their notice of removal, they could not later argue diversity jurisdiction); *Whittaker v. Aramark Uniform and Career Apparel*, Inc., 2004 U.S. Dist. Lexis 13730, at *3 (D. Conn. 2004) (same).  *See also* 28 U.S.C. § 1446(a) (defendant's notice of removal must set forth "a short and plain statement of the grounds for removal").  Further, and particularly relevant here, there is little question that a court may look beyond the Complaint and "examine the entire record to determine <u>if the real nature of the claim is federal</u>, notwithstanding plaintiff's characterization to the contrary, when the plaintiff has, by 'artful pleading,' attempted to defeat defendant's right to a federal forum." *Britton v. Rolls Royce Engine Serv*. No. C. 05-01057 S1, 2005 U.S. Dist. Lexis 13259, at *5 (N.D. Cal. 2005), *citing Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (emphasis added).  *Cf. Dean v. Compass Receivables Mgmt. Corp.*, 148 F. Supp. 2d 116, 118 (D. Mass. 2001) ("The Supreme Court has held, however, that plaintiffs cannot use 'artful pleading' to close off a defendant's right to a federal forum.").  Here, given plaintiff's refusal to stipulate to the basic "facts" concerning Natale's ownership of his GM vehicle and to consent to a very limited deposition to provide the Court with a factual record to decide CAFA's applicability, there should be little question that plaintiff has done more than "artful pleading" in an attempt to dodge the requirements of CAFA.

5.    <u>GM'S REQUEST FOR DISCOVERY IS NOT TO DELAY AN ADJUDICATION OF THE JURISDICTIONAL ISSUES.</u>

In opposing GM's Motion for Leave to Conduct Discovery, Natale incredibly claims that GM's discovery request is for the purpose of causing delay.  That is ridiculous.  Consistent with the Local Rule 7.1 motion conference requirements, GM requested that Natale stipulate to certain limited facts in order to provide the Court with the necessary factual record.  Counsel

refused.  GM then offered to depose Natale on August 17, 18 or 19 so that it could still file its opposition by the August 22, 2005 deadline.  Plaintiff again refused, forcing GM to file a motion seeking leave to take discovery.

GM's discovery request is not about delay:  It is about developing a factual record for the Court to determine whether the February 11 Complaint filed on behalf of a single named plaintiff (i) who did not own a GM vehicle factory equipped with Dex-Cool; (ii) who purchased the vehicle used as opposed to new; (iii) whose vehicle at the time of purchase was not subject to any GM express warranty; (iv) whose vehicle, because it was a 1994 model, could not have an owner's manual or other labels or stickers which even mentioned Dex-Cool, was sufficient to "commence" a case pre-CAFA when that complaint was never served upon GM, and was later amended (post-CAFA) to add a presumably viable plaintiff.  The discovery sought by GM is properly aimed at assisting the Court determining whether there is federal jurisdiction.[9]

**B.     CAFA APPLIES TO PLAINTIFF JOHN BURNS, AND THE COURT THUS MAY ASSUME SUPPLEMENTAL JURISDICTION OVER THE ENTIRE ACTION.**

Even if Natale can circumvent the requirements of Mass. R. Civ. P. 4(j), and his action is considered to be commenced on February 11, the Court should nonetheless assume CAFA jurisdiction over this purported class action.  Plaintiff John Burns was not a party to the complaint filed on February 11 and, in fact, had no part in this case until an incomplete copy of his complaint was served upon GM on May 6, 2005.  Service of this incomplete amended complaint is, in fact, what triggered GM's removal rights.  *See* 28 U.S.C. § 1446(b).  Of course, he has yet to file the Amended Complaint in any court.  Because Burns' action is governed by

---

[9] In contrast, and as outlined more fully below, it is plaintiff's counsel who wants to delay rulings on the motion to dismiss the motion for discovery and the conditional transfer order, in the hope that the Court will summarily remand the matter to state court.

LITDOCS/612393.3

CAFA and subject to original federal jurisdiction, the Court, therefore, may exercise supplemental jurisdiction over Natale's claims.

Section 1367, 28 U.S.C., provides in part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).[10] Natale's claims clearly "form part of the same case or controversy" as Burns's claims; as of this time, it appears that they have attempted to join the same Complaint.[11] *See* 28 U.S.C. § 1367(a) ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.").

## C.    EVEN WITHOUT CAFA, FEDERAL DIVERSITY JURISDICTION EXISTS.

Even if the Court determines that CAFA does not apply, the pre-CAFA requirements for federal diversity jurisdiction are met. Pursuant to 28 U.S.C. § 1332, a federal court has jurisdiction over an action if complete diversity of citizenship exits and the amount in controversy exceeds the sum or value of $75,000. There is no dispute that there is complete diversity here. Pl. Mem. 10-11. Plaintiff argues instead that GM cannot show "that the claim of ***one of the named plaintiffs*** exceeds $75,000." *Id.* at 11 (emphasis in original). *But see* 15 U.S.C. § 2310(d) (Magnuson-Moss jurisdictional amount is $50,000). Plaintiff's argument ignores the fact that this action is bound for transfer to a jurisdiction that allows the total cost of complying with undifferentiated injunctive relief to be counted toward determining the $75,000 jurisdictional minimum in a purported class action.

---

[10]The exceptions to this rule are found in 28 U.S.C. § 1367(b)-(c); none applies here.

[11]Notably, even the Plaintiff(s) appears to be confused regarding who has been properly named in this action. Plaintiff's motion to remand only includes Anthony Natale's name in the caption, however, it is written on behalf of Natale and Burns: "Plaintiffs, Anthony Natale, Jr. and John Burns, submit this memorandum in support of their Motion to Remand this case to the Superior Court for Essex County, Massachusetts…" *See* Pl. Mot. 1; Pl. Mem. 1.

LITDOCS/612393.3

On June 6, 2005, GM filed a 28 U.S.C. § 1407(a) Notice of Tag-Along action with the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") in order to consolidate this action with the already existing multidistrict litigation, *In re General Motors Corp. Dex-Cool Products Liability Litigation*, pending in the Southern District of Illinois. *See* Notice of Tag-Along Action, Ex. E hereto. On June 21, 2005 the Panel issued a conditional transfer order stating "the action on this conditional transfer order involves questions of fact which are common to the actions previously transferred to the Southern District of Illinois and assigned to Judge Murphy." *See* J.P.M.L. Cond. Transfer Order, June 21, 2005, attached hereto as Ex. F. Although plaintiff has objected to the transfer order, it will likely be upheld.

This case and the already pending MDL contain nearly identical allegations: That GM warranted Dex-Cool coolant is designed to remain in GM vehicles equipped with Dex-Cool the earlier of five years or 150,00 miles (100,000 miles for 1996 model year vehicles), and that GM breached the alleged warranty because Dex-Cool equipped vehicles can experience problems that require removal or replacement of the coolant before that time. *Compare* February 11 Complaint, Ex. A hereto, ¶¶ 3, 15, 18-22, 30-38 *with* Nov. 14, 2003 MDL Transfer Order, attached hereto as Ex. G ("Common factual questions arises because these actions focus on allegations that the Dex-Cool engine coolant in certain GM vehicles caused significant damage to the vehicles and/or did not perform as warranted.").

Given these similarities, the Southern District of Illinois is likely to affirm transfer of this matter, and the law of the Seventh Circuit will apply to plaintiff's remand motion.[12] While plaintiff acknowledges that the Seventh Circuit allows valuation of the amount in controversy

---

[12]*See, e.g.*, *In re Bridgestone/Firestone, Inc.*, 129 F. Supp. 2d 1202, 1205 & n.2 (S.D. Ind. 2001) ("The law of the circuit where the transferee court sits governs questions of federal law in MDL proceedings."); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. MDL-991, 1996 U.S. Dist. LEXIS 6769, at **2-3 (E.D. La. May 16, 1996) (applying the law of the circuit of the transferee court to the procedural questions of remand and removal in a diversity case).

from the defendant's viewpoint, Pl. Mem. 12-13, plaintiff suggests that it is inappropriate for the Court to consider Seventh Circuit law in its analysis of the merits of his motion to remand. As recognized by the J.P.M.L., however, there are several compelling reasons for the Court to consider the likelihood of eventual transfer.

First, Section 1407 transfer and consolidation was established, in part, to avoid the potential for inconsistent pretrial rulings in virtually identical cases. *See e.g.*, *In re Advanced Inv. Mgmt., L.P., Pension Fund Mgmt. Litig.*, 254 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003) (prevention of inconsistent pretrial rulings considered as a factor in determining that transfer and centralization of multidistrict litigation actions was necessary). In this vein, in its notice to this Court of the conditional transfer order issued in this action, the J.P.M.L. noted that "if you have a motion pending – such as a motion to remand, you are free to rule on the motion . . . or wait until the Panel has decided the transfer issue. ***The latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization.***" (*See* Letter to Judge Lindsey Attached to Cond. Trans. Or., July 6, 2005, attached hereto as Ex. H (emphasis added)). Indeed, when faced with a motion to remand a case that may be transferred to the MDL Panel, numerous federal courts have determined that staying the matter to allow the MDL Court to determine jurisdictional issues was the proper course of action. *See, e.g., Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1046-47 (E.D.Wisc. 2001) (staying consideration of existence of federal question pending decision on transfer by MDL Panel); *Aikins v. Microsoft Corp.*, No. Civ.A.00-0242, 2000 WL 310391, at *1 (E.D.La. March 24, 2000) (declining to decide motion to remand pending MDL Panel transfer decision because "the same jurisdictional questions raised here will likely be raised in many of the other cases pending against Microsoft.

- 16 -

Consistency and economy are both served by resolution of these issues by a single court after transfer… .").[13]

Second, the questions raised in Natale's Motion to Remand have been and likely will continue to be raised in similar cases addressed by this MDL. As such, Judge Murphy is best suited to address jurisdictional questions related to the applicability of CAFA and diversity questions in the context of the Dex-Cool cases. Thus, in the interest of uniformity, and to avoid inconsistent rulings on virtually identical issues, this Court should postpone decision on Plaintiff's remand motion until the Panel has affirmed its Conditional Transfer Order.

Third, plaintiff's actions so far in this case appear to be judicial gamesmanship. Indeed, plaintiff sought extensions from GM with respect to the briefing of its opposition to the Conditional Transfer Order as well as GM's pending Motion to Dismiss, while at the same time ultimately refusing to give GM similar extensions with respect to the motion to remand.[14] Undoubtedly recognizing that transfer is inevitable, plaintiff is hoping to get an immediate ruling on the remand motion without the Court considering the issues raised in the motion to dismiss.

---

[13]*See also Weinke v. Microsoft Corp*., 84 F.Supp. 2d 989, 990 (E.D. Wis. 2000) (declining to rule on motion to remand and concluding that "in light of the pending MDL Panel ruling on transfer, this action should be stayed in the interest of judicial economy and to avoid inconsistent results"); *Gonzalez v. American Home Products Corp*., 223 F. Supp. 2d 803, 806 (S.D. Tex. 2002) (granting stay of proceedings to await the ruling of the MDL Panel and denying remand motion without prejudice); *Board of Trustees of the Teachers' Ret. Sys. of Ill. v. Worldcom, Inc*., 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002) (staying action and deferring to MDL Panel to resolve the jurisdictional dispute where the pending motion to remand raised "thorny questions of law"); *Medical Soc'y of N.Y. v. Connecticut Gen. Corp*., 187 F. Supp. 2d 89, 92 (S.D.N.Y. 2001) (allowing motion to stay and deferring to MDL's resolution of remand motion in light of "significant economies in having a single court decide a jurisdictional question which has arisen and presumably will continue to arise in cases around the nation").

[14]Plaintiff's counsel actually agreed to give GM an extension to respond to the motion to remand, but one day later the extension was withdrawn. Plaintiff's counsel indicated: "If you would like an extension on your deadline to respond to our motion to vacate the JPML's conditional transfer order, we would be happy to provide one." *See* E-mail from Douglas Hoffman to John Skelton, 8/2/05, attached hereto as Ex. I.

Such tactics are frowned upon by the federal courts[15] and should not and cannot be used to defeat the proper transfer and consolidation of this action:   "Clever pleading, of course, is neither unethical nor illegal -- it is, in fact, good lawyering.  But good lawyering should not defeat good judging, which requires a court to call things as it sees them."  *Linnin v. Michielsens*, No. 2:05-cv-108, 2005 U.S. Dist. LEXIS 11335, at **34-37 (N.D. Va. June 1, 2005) (denying remand where the plaintiffs named a non-diverse defendant in order to defeat jurisdiction).

Further, the rule in the Seventh Circuit, which should be applied here, is that if complying with injunctive or declaratory relief—even if it were ordered as to only one of the plaintiffs— would cost the defendant more than $75,000, the jurisdictional minimum is met.  This was set forth in *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609-10 (7th Cir. 1997), as has been repeated in case after case since then.[16]  Thus, under this Seventh Circuit precedent, even the pre-CAFA requirements for federal diversity jurisdiction are met.  Plaintiff seeks at least two undifferentiated forms of relief.  First, plaintiff challenges the terms of the

---

[15]*See, e.g.*, *Williamson v. Fleetwood Homes of Miss., Inc.*, 346 F. Supp. 2d 851, 853 (N.D. Miss. 2004) ("It may well be that plaintiffs were attempting to play a clever jurisdictional game in this case, but the court has little patience for such games . . . ."); *Hollenbeck v. Outboard Marine Corp.*, 201 F. Supp. 2d 990, 993 (E.D. Mo. 2001) ("[I]t is essential to bear in mind that when dealing with federal jurisdiction, courts are not persuaded by evasion, artful pleading, or jurisdictional shell games."); *Bolling v. Union Nat. Life Ins. Co.*, 900 F. Supp. 400, 405 (M.D. Ala. 1995) ("[T]he important issue of whether a federal court has jurisdiction over a lawsuit on the basis of the amount in controversy should be decided on the basis of substance, not gamesmanship.").

[16]*See, e.g.*, *Tropp v. Western-Southern Life Ins. Co.*, No. 02 C 8341, 2003 U.S. Dist. LEXIS 12565, at *3 n.3 (N.D. Ill. July 18, 2003) (in a class action, citing *Brand Name Drugs* for the proposition that "the amount in controversy for diversity jurisdiction has been met if complying with injunctive relief would cost Defendant more than $75,000"); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 256 F. Supp. 2d 884, 895 (S.D. Ind. 2003) (denying remand where the requested injunction to "prohibit the defendants' 'manufacturing, distributing, advertising and marketing [of] ATX, ATX II and Wilderness tires as currently manufactured and designed' would cost Firestone and Ford the same (or nearly the same) whether the injunction runs in favor of Lawrence Kaufman or in favor of the entire class of California purchasers he seeks to represent"); *Smith v. Sprint Communications Co.*, No. 99 C 3844, 2003 U.S. Dist. LEXIS 897, at *12 (N.D. Ill. Jan. 17, 2003) (in a class action, citing *Uhl* and *Brand Name Drugs* for the proposition that "[t]he jurisdictional minimum is satisfied in a case in which a plaintiff seeks injunctive relief, when compliance with an injunction would cost a defendant more than $75,000").

limited warranties issued in connection with the sale of all GM vehicles, at least with respect to the Dex-Cool coolant implicated in this action. February 11 Complaint, ¶¶ 31-47 ("Plaintiff requests that this Court issue a mandatory injunction pursuant to its equitable powers requiring Defendant to reform the warranty or warranties in a manner deemed to be appropriate by the Court, and to notify all Class members that such warranty or warranties has been reformed and further directing the Defendant to recalculate its warranty liabilities to any Class members who previously resolved warranty claims with Defendant in accordance with the reformed warranty or warranties."). A declaratory verdict on these claims, as to one plaintiff or all, could affect warranty limitations on millions of GM vehicles, costing GM millions of dollars. Second, plaintiff requests an order requiring GM to cease and desist "all unlawful practices described herein." This request could cause GM to be forced to re-engineer the cooling system in nearly all of its vehicles. *Id.* Prayer for Relief. The cost of such a change would far exceed the jurisdictional amount-in-controversy.

### III.   CONCLUSION

Plaintiff's filing of the February 11 Complaint does not avoid mandatory federal jurisdiction conferred by CAFA. By not serving the February 11 Complaint within the time required under the applicable Massachusetts Rules, it is subject to mandatory dismissal, and any Complaint, amended or otherwise, filed or served after February 18, 2005 is subject to CAFA. Moreover, this case is already well on its way to being transferred to the MDL proceedings in the Southern District of Illinois. Pursuant to applicable Seventh Circuit precedent, federal diversity jurisdiction exists even in the absence of CAFA. Accordingly, plaintiff's request for remand should be denied.

- 19 -

Dated:  August 22, 2005

Respectfully submitted,

 /s/  Carol E. Head

_____
John R. Skelton BBO #552606
Carol E. Head BBO #652170
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
617-951-8789 Telephone
617-345-5041 Facsimile

Robert B. Ellis, P.C.
Scott F. Hessell
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 Telephone
(312) 861-2200 Facsimile

Of Counsel:
Lawrence S. Buonomo
Office of the General Counsel
General Motors Corporation
400 Renaissance Center
P.O. Box 400, MC  482-026-601
Detroit, MI  48265-4000

Attorneys for Defendant General Motors
Corporation

- 20 -

MAY-20-2005(FRI) 09:40    Beacon Hill Research, Inc.    (FAX)6179734565    P.005/022
Rx Date/Time    MAY-20-2005(FRI) 08:51    978 687 7869    P.004
05/20/05  10:11 FAX 978 687 7869    LAWRENCE SUP COURT    ☑004

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

SUPERIOR COURT
DEPARTMENT OF THE TRIAL
COURT

5 0245    **C**

---

ANTHONY NATALE, JR. on behalf of
himself and all others similarly situated,

Plaintiff,

v.

GENERAL MOTORS CORPORATION,

Defendant.

---

Civil Action No.

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, by his undersigned counsel, upon personal knowledge with respect to his own

acts, and upon information and belief with respect to all other matters, avers as follows:

## INTRODUCTION

1.    This is a class action on behalf of the following persons:

All persons who are residents of the Commonwealth of Massachusetts who purchased for
non-commercial and/or personal use General Motors vehicles, model years 1994 through
2003, that were factory equipped with DEX-COOL engine coolant.

2.    The Class consists of thousands of persons who are residents of the

Commonwealth of Massachusetts. Excluded from the Class are (i) any person, firm, trust,

corporation, or other entity related to or affiliated with General Motors Corporation ("GM" or the

"Defendant"); (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or

commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new

GM vehicles; and (iii) any person who has an action for damages for personal injury or death

against Defendant in connection with their purchase, use or ownership of the GM vehicles.

00004163.WPD ; 1

MAY-20-2005(FRI) 09:40   Beacon Hill Research, Inc.        (FAX)6179734565          P.006/022
Rx Date/Time      MAY-20-2005(FRI) 09:51          978 687 7889                    P.005
05/20/05  10:11 FAX 978 687 7889        LAWRENCE SUP COURT                        @005

3.    As alleged below, Defendant manufactured and sold tens of thousands of GM vehicles factory equipped with GM's extended life coolant known as "DEX-COOL." Defendant gave a written warranty that the DEX-COOL coolant is maintenance free and protects engines and engine cooling systems for 5 years or 150,000 miles (or 100,000), whichever came first. The written warranty, *inter alia*, guaranteed that DEX-COOL coolant would "protect against rust and corrosion." Defendant breached its warranty to Plaintiff and the Class because DEX-COOL is not maintenance free and has not protected the engines and engine cooling systems of Plaintiff's and Class members' vehicles from rust and corrosion as warranted. Plaintiff alleges that, as a result of DEX-COOL, the value of the GM vehicles when the vehicles were purchased is substantially less than what members of the Class actually paid for those vehicles.

## PARTIES

4.    Plaintiff Anthony Natale, Jr. is a resident of the Commonwealth of Massachusetts. Plaintiff Natale purchased and owns a GM vehicle, a Chevy Blazer, with factory equipped DEX-COOL coolant. Plaintiff Natale has suffered diminution in the value of his GM vehicle as a result of GM's conduct as alleged herein, including but not limited to, requiring the use of DEX-COOL coolant in his vehicle and the breach of GM's express and implied warranties concerning DEX-COOL coolant.

5.    Defendant General Motors Corporation is a Delaware Corporation registered to do business in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the parties because they reside or transact business within this Commonwealth.

7.    Venue is proper in Essex County because at all material times, the Defendant directly and/or indirectly, has transacted business in Essex County, Massachusetts. The Defendant sold and distributed vehicles equipped with DEX-COOL to and from this Commonwealth to Plaintiff and Class members. The Defendant has, at all times material to this

00004163.WPD ; 1                                    2

MAY-20-2005(FRI) 09:40   Beacon Hill Research, Inc.      (FAX)6179734565        P. 007/022
Rx Date/Time        MAY-20-2005(FRI) 08:51      978 687 7869                   P. 006
  05/20/05  10:11 FAX 978 687 7869        LAWRENCE SUP COURT                   @006

Complaint, conducted business in this Commonwealth related to the events and omissions giving rise to the claims asserted in this Complaint and is registered to do business in the Commonwealth of Massachusetts. The Defendant has received substantial compensation and profits from the sale of DEX-COOL and the sales of vehicles equipped with DEX-COOL in the Commonwealth of Massachusetts.

## CLASS ACTION ALLEGATIONS

8.    This action is brought as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all members of the following class:

> all persons who are residents of the Commonwealth of Massachusetts who purchased for non-commercial and/or personal use General Motors vehicles, model years 1994 through 2003, that were factory equipped with DEX-COOL engine coolant.

9.    Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with Defendant; (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury, mental anguish or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

10.    This action is properly maintainable as a class action, as it meets the class certification requirements of Rule 23 of the Massachusetts Rules of Civil Procedure.

11.    The unlawful conduct on the part of the Defendant alleged herein has caused similar injury to numerous other persons similarly situated to the named Plaintiff, and the named Plaintiff is bringing this action on behalf of herself and such other similarly injured and situated persons.

12.    *Numerosity.* The Class is comprised of thousands of persons who are residents of the Commonwealth of Massachusetts and who purchased GM vehicles with DEX-COOL extended life coolant. Joinder of such persons in one action is impracticable, and the disposition

00004163.WPD : 1

3

of their claims in a class action will provide substantial benefits to both the parties and the Court.

13. *Typicality*. Plaintiff's claims are typical of Class members' claims because, like the Class members, Plaintiff purchased a GM vehicle factory equipped with DEX-COOL engine coolant.

14. *Adequacy*. Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has no interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained attorneys competent and experienced in class action, consumer protection and defective products law. No conflicts exist between Plaintiff and Class members because (a) the claims of the named Plaintiff are typical of absent members' claims, (b) virtually all of the questions of law and fact at the liability stage are common to the Class and overwhelmingly predominate over any individual issues, such that by prevailing on her own claims, Plaintiff necessarily will establish Defendant's liability to all Class members, (c) without the use of the class action device there is a strong likelihood of multifarious and duplicative litigation which will create undue burdens on the court system and the parties, (d) Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and (e) Plaintiff is aware of her fiduciary duties to the Class members and is determined to diligently discharge those duties.

15. *Common Questions of Law and Fact*. Virtually all of the issues of law and fact in this class action are common to the Class. The common questions include, *inter alia*, the following:

   a. whether Defendant's written representations about the performance of DEX-COOL, including its written representations about the performance of DEX-COOL in the owner's manuals and labels affixed to GM's vehicles, constitute a written warranty or warranties;

   b. whether Defendant failed to comply with any obligations under its written warranty or warranties;

00904163.WPD ; 1                    4

MAY-20-2005(FRI) 09:41    Beacon Hill Research, Inc.    (FAX)6179734565    P. 009/022
Rx Date/Time    MAY-20-2005(FRI) 08:51    978 887 7889    P. 008
05/20/05  10:13 FAX 978 887 7889    LAWRENCE SUP COURT    @008

    c.    whether Plaintiff and Class members suffered damages because of Defendant's failure to comply with any obligations under its written warranty or warranties;

    d.    whether Defendant breached the implied warranty of merchantability in connection with the manufacture and sale of vehicles equipped with DEX-COOL;

    e.    whether Defendant has been unjustly enriched at the expense of Plaintiff and the Class;

    f.    whether Plaintiff and Class members are entitled to legal or equitable relief, including but not limited to an injunction, a declaration or rights, restitution or rescission; and

    g.    whether Defendant concealed from Plaintiff and Class members critical information about the existence, nature and affects of DEX-COOL.

These common questions of law and fact predominate over any individual issues. The only individual issue is each Class members's damages, which does not preclude class certification. There are no material variations in the representations made by the Defendant or their agents to the individual Class members and thus all Class members can be uniformly treated.

    16.    *Superiority*. A class action is superior to any other available method for the fair and efficient adjudication of this controversy, given that

    (a) Common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a classwide basis instead of a repetitive individual basis;

MAY-20-2005(FRI) 09:41    Beacon Hill Research, Inc.    (FAX)6179734565    P. 010/022
Rx Date/Time    MAY-20-2005(FRI) 08:51    978 887 7889    P. 009
05/20/05   10:12 FAX 978 887 7889    LAWRENCE SUP COURT    @009

(b) A statewide class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of the class is impracticable;

(c) Even if some Class members could afford individual litigation, the court system could not. Individual litigation magnifies the delay and expense to all parties. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court;

(d) Concentrating this litigation in one forum would promote judicial economy and efficiency and promote parity among the claims of individual Class members as well as judicial consistency;

(e) Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members; and

(f) No unusual difficulties are likely to be encountered in the management of this class action.

17.    This action can also be certified because:

(a)    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications, thus establishing incompatible standards of conduct for Defendant;

(b)    The prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests; and

(c)    This action can also be certified because Defendant has acted or refused to act on grounds generally applicable to the Class.

00004163.WPD ; 1                                     6

MAY-20-2005(FRI) 09:41    Beacon Hill Research, Inc.    (FAX)6179734565    P.011/022
  Rx Date/Time    MAY-20-2005(FRI) 08:51    978 687 7869    P.010
  05/20/05  10:12 FAX 978 687 7869    LAWRENCE SUP COURT    ☎010

## STATEMENT OF FACTS

18.    When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in the vehicles' owner's manual provided with the vehicles and on at least one label affixed to the vehicles. A GM owner's manual represents DEX-COOL as follows:

The cooling system in your engine is filled with DEX-COOL engine coolant. This coolant is designed to *remain* in your vehicle for 5 years or 150,000 miles (240,000 km), whichever comes first, if you add only DEX-COOL extended life coolant . . . A 50/50 mixture of clean, drinkable water and DEX-COOL coolant will:

- Give freezing protection down to - 34F (-37C).
- Give boiling protection up to 265 F (129 C).
- Protect against rust and corrosion.
- Help keep the proper engine temperature
- Let the warning lights and gaps work as they should.

Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system. Specifically, the GM owner's manual states: "Damage caused by the use of coolant other than DEX-COOL is not covered by your new vehicle warranty."

19.    While GM represents and warrants that DEX-COOL is "designed" to "remain" in the vehicle "for 5 years or 150,000 miles . . .," the GM owner's manual warns that use of coolant other than DEX-COOL could cause premature corrosion and would therefore need to be replaced sooner than would DEX-COOL. Specifically, the GM owner's manual provides: "If coolant other than DEX-COOL is added to the system, premature engine, heater core or radiator corrosion may result. In addition, the engine coolant will require change sooner – at 30,000 miles . . . or 24 months, whichever occurs first."

00004163.WPD ; 1

7

20.     The above-referenced statements contained in GM's owner's manual as set forth in paragraph 19 constitute an express written warranty or warranties by the Defendant. Defendant's written express warranty regarding the performance of DEX-COOL was given to Plaintiff and Class members at the time of sale, and became part of the basis of the bargain.

21.     Defendant breached its written warranties regarding the performance of DEX-COOL with respect to Plaintiff's and Class members' vehicles. DEX-COOL failed to protect GM engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members paying for such replacements, repairs, or inspections. Moreover, Plaintiff has suffered diminution in value with respect to their GM vehicle with factory installed DEX-COOL.

22.     In 1999, Defendant issued technical bulletin (#99-06-02-012D), to its service personnel, admitting that vehicles equipped with DEX-COOL may be susceptible to the formation of a rust-like material in the cooling system. However, Defendant intentionally withheld from the consumers and the public the defective nature of DEX-COOL and misrepresented that improper owner maintenance - maintaining low coolant levels for extended periods of time - was the cause of cooling system corrosion.

## EQUITABLE TOLLING OF STATUTE OF LIMITATIONS

23.     The Defendant has refused to make full disclosure to the public, in a manner reasonably calculated to reach all vehicle owners such as the Plaintiff and Class members, of the full extent of the attendant damages of having DEX-COOL in their vehicles.

24.     The inherent defects of DEX-COOL are latent and self-concealing. Even in the exercise of reasonable care, the Plaintiff and Class members simply cannot discover that such

00004163.WPD ; 1

8

MAY-20-2005(FRI) 09:42    Beacon Hill Research, Inc.    (FAX)6179734565         P. 013/022
Rx Date/Time    MAY-20-2005(FRI) 08:51              978 687 7869              P. 012
05/20/05  10:13 FAX 978 687 7869        LAWRENCE SUP COURT                    ☐012

inherent defects exist. By suppressing the dissemination of information regarding the attendant risks of having DEX-COOL in their vehicles, the Defendant has intentionally foreclosed Plaintiff and Class members from learning of DEX-COOL's latent defects.

25.     It is critical that a detailed court-approved notice be sent to all Class members in a manner calculated to reach and notify them of the full extent of the attendant damages of having DEX-COOL equipped in their vehicles. All Class members should be given an opportunity to inspect and remove DEX-COOL from their vehicles. A classwide notice is necessary to accomplish the aforementioned goals and to allow all Class members to take appropriate steps to protect their legal rights.

26.     Any applicable statutes of limitations have been tolled by the Defendant's acts of fraudulent concealment and denial of the facts as alleged above. Such acts of fraudulent concealment include: intentionally covering up and refusing to disclose internal documents; failing to disclose that DEX-COOL is inherently defective; misrepresenting the character, quality and nature of DEX-COOL in order to deceive consumers, including releasing reports which purport to conclude that DEX-COOL is reliable and maintenance free. Through such acts of fraudulent concealment, the Defendant has been able to conceal from the public the truth about DEX-COOL's defects, thereby tolling the running of any applicable statutes of limitations. The Plaintiff and the members of the Class could not reasonably have discovered the true facts of DEX-COOL's defective nature, the truth having been fraudulently and knowingly concealed by Defendant from at least 1996 through the present date.

27.     Furthermore, the Defendant is estopped from relying on any statutes of limitations because of its fraudulent concealment of the true character, quality and nature of DEX-COOL. The Defendant was under a duty to disclose the true character, quality and nature of DEX-COOL because this is non-public information over which the Defendant has exclusive control, and because the Defendant knew that this information was not available to the Plaintiff or to Class

00004163.WPD ; 1

9

MAY-20-2005(FRI) 09:42   Beacon Hill Research, Inc.         (FAX)6179734565              P. 014/022
    Rx Date/Time     MAY-20-2005(FRI) 08:51        978 887 7869                              P. 013
   05/20/05  10:13 FAX 978 887 7869          LAWRENCE SUP COURT                            @013

members. In addition, the Defendant is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

28.     Until a date within the applicable statute of limitations, the Plaintiff and Class had no knowledge that the Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent and active concealment of the wrongdoing by the Defendant, the Plaintiff and Class members could not reasonably have discovered the wrongdoing at any time prior to this time.

29.     Because of the self-concealing nature of the Defendant's actions and its intentional concealment of its wrongdoing, Plaintiff asserts the tolling of any applicable statute of limitations affecting the claims by Plaintiff and the members of the Class.

## FIRST CAUSE OF ACTION

### (Breach of Express Warranty)

30.     Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

31.     Between calendar years 1994 and 2003 (the "relevant period"), Defendant manufactured and/or sold vehicles factory equipped with DEX-COOL engine coolant.

32.     Defendant provided a written warranty to Plaintiff and Class members that related to the future performance of its vehicles and various operative essential components, including its vehicles' coolant systems and the future performance of DEX-COOL engine coolant.

33.     Defendant expressly warranted that DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles whichever comes first. Further, Defendant represented and warranted that DEX-COOL coolant protects against rust and corrosion and will not damage aluminum parts.

34.     DEX-COOL coolant is defective, is not properly designed to remain in vehicles 5 years or 150,000 (or 100,000) miles (whichever comes first), and does lead to premature engine, heater core or radiator corrosion.

00004163.WPD ; 1                          10

35.   Defendant knew, or should have known, that DEX-COOL was defective and not properly designed when placed into the marketplace and that Defendant's express representations concerning DEX-COOL were false, incomplete, and/or misleading at the time they were made to Plaintiff and Class members.

36.   As a direct and proximate result of the foregoing, Plaintiff and other members of the Class have suffered damages in that they own vehicles equipped with DEX-COOL coolant.

37.   Defendant's attempts to exclude or modify its express warranties, or limit the remedies of the Plaintiff and the Class members by, *inter alia*, requiring Plaintiff and Class members to check their DEX-COOL engine coolant levels at every fuel fill are overly onerous and void and unenforceable.

38.   Because Defendant's warranty fails of its essential purpose and is otherwise unconscionable as set forth above, Plaintiff and Class members are entitled to all damages available under M.G.L. Ch. 106, including the necessary labor to replace DEX-COOL engine coolant from their vehicles, and all consequential damages incurred as a result of the failures of DEX-COOL.

## SECOND CAUSE OF ACTION

### (Breach of Implied Warranties)

39.   Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

40.   Defendant has breached its implied warranty of merchantability in that DEX-COOL is defective, not properly designed and not fit for the ordinary purposes for which it is used; that is, to provide safe, long-lasting protection of vehicle engines and cooling systems.

41.   The Defendant's attempt to exclude or modify the implied warranties of fitness and merchantability, or to limit the remedies of the Plaintiff and Class members under the implied warranty of fitness and merchantability are void and unenforceable under the provisions

00004161.WPD ; 1                           11

MAY-20-2005(FRI) 09:43   Beacon Hill Research, Inc.      (FAX)6179734565         P. 016/022
Rx Date/Time      MAY-20-2005(FRI) 08:51        978 687 7869              P. 015
05/20/05  19:14 FAX 978 687 7869        LAWRENCE SUP COURT               @015

of M.G.L. Ch. 106, §2-316A.

42.    As a direct and proximate result of the foregoing, Plaintiff and the other members of the Class have suffered actual damages in that they purchased vehicles factory equipped with DEX-COOL coolant.

### THIRD CAUSE OF ACTION

### (Reformation of Warranty Pursuant to M.G.L. Ch. 106, §2-302)

43.    Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

44.    Defendant issued a standard form warranty or warranties with its vehicles to Plaintiff and Class members purporting to limit the liability of Defendant.

45.    The limitations on the remedy allowed the Class under Defendant's warranty or warranties is impermissibly one-sided, substantively unfair and unreasonably favorable to the Defendant.

46.    Plaintiff requests that the Court enforce the warranty or warranties according to its or their remaining terms, except that in view of the reformation of the warranty or warranties, Plaintiff requests that this Court issue a mandatory injunction pursuant to its equitable powers requiring Defendant to reform the warranty or warranties in a manner deemed to be appropriate by the Court, and to notify all Class members that such warranty or warranties has been reformed and further directing the Defendant to recalculate its warranty liabilities to any Class members who previously resolved warranty claims with Defendant in accordance with the reformed warranty or warranties.

00004163.WPD : 1

12

MAY-20-2005(FRI) 09:43  Beacon Hill Research, Inc.    (FAX)6179734565    P.017/022
Rx Date/Time    MAY-20-2005(FRI) 08:51    978 687 7869    P.016
05/20/05  10:14 FAX 978 687 7869    LAWRENCE SUP COURT    ☒016

## FOURTH CAUSE OF ACTION

### (Breach of Written Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.)

47. Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

48. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

49. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(4)-(5).

50. The vehicles at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(1).

51. When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in each vehicle's owner's manual provided with the vehicles and on at least one label affixed to the vehicles, stating, among other things, that the GM-provided DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles, whichever comes first. Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system.

52. DEX-COOL fails to protect Defendant's engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken place or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members

00004163.WPD ; 1

13

MAY-20-2005(FRI) 09:43   Beacon Hill Research, Inc.   (FAX)6179734565    P.018/022
Rx Date/Time    MAY-20-2005(FRI) 08:51   LAWRENCE SUP COURT    P.017
05/20/05  10:14 FAX 978 887 7869    @017

paying for such replacements, repairs, or inspections. Moreover, Plaintiff and the Class have suffered diminution in value with respect to their vehicles with factory installed DEX-COOL.

53. Defendant affirmed the fact, promised and/or described in writing that the DEX-COOL in Plaintiff's and Class members vehicles would meet a specified level of performance over a specified period of time, namely, that DEX-COOL would perform maintenance free for 5 years or 150,000 (or 100,000) miles, whichever came first. Defendant's written affirmation of fact, promises or descriptions relate to the nature of the DEX-COOL in Plaintiff's and Class members' vehicles and became part of the basis of the bargain between Defendant and Plaintiff and Class members. Defendant's written affirmations of fact, promises and/or descriptions, as alleged herein, are each a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

54. Defendant breached its written warranties when Plaintiff's and Class members vehicles did not perform as represented by Defendant and thereby caused damages to Plaintiff and other members of the Class.

55. Resort to any informal dispute settlement procedure and/or affording Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is unnecessary and/or futile. At the time of sale to Plaintiff, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations concerning the inability of DEX-COOL to perform as warranted by nevertheless failed to rectify the situation and/or disclose it to Plaintiff. Moreover, the remedies available by resort to any informal dispute settlement procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the Magnuson-Moss Act or otherwise that Plaintiff resorts to any informal dispute settlement procedure and/or afford Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is excused and, thereby, deemed satisfied.

MAY-20-2005(FRI) 09:43    Beacon Hill Research, Inc.    (FAX)6179734565    P. 019/022
Rx Date/Time    MAY-20-2005(FRI) 08:51    978 687 7889    P. 018
05/20/05   10:14 FAX 978 687 7889    LAWRENCE SUP COURT    @018

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

56.    Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference and realleges each of the proceeding allegations of this Complaint as though fully set forth herein, and further alleges, in the alternative, as follows:

57.    As a result of GM's unlawful conduct, as alleged herein, Plaintiff and the other members of the Class were deceived concerning the true nature and value of their vehicles equipped with DEX-COOL coolant. In reality, due to the defective nature of DEX-COOL, the value of the Plaintiff's and the Class members' vehicles was less than they paid for them, and GM accordingly derived and obtained a benefit in the form of a higher sales price at the expense of Plaintiff and the Class members. GM has been unjustly enriched by its receipt and retention of this benefit.

58.    GM has been enriched at the expense of unwitting consumers and it would be inequitable for GM to retain this ill-gotten benefit.

59.    Plaintiff and other members of the Class are entitled to damages as a result of the unjust enrichment of GM.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class, requests judgment and relief of all causes of action as follows:

A.    An order certifying that this action is properly brought and may be maintained as a nationwide class action under Rule 23 of the Massachusetts Rules of Civil Procedure;

B.    An order declaring and confirming that GM's conduct is unlawful under the causes of action alleged herein;

C.    An order requiring GM to cease and desist all unlawful practices described herein;

D.    Compensatory damages in an amount to be proven at trial, including all damages

00004163.WPD ; 1    15

MAY-20-2005(FRI) 09:44   Beacon Hill Research, Inc.   (FAX)6179734565   P.020/022
FAX Date/Time   MAY-20-2005(FRI) 08:51   978 687 7869   P.019
05/20/05  10:18 FAX 978 687 7869   LAWRENCE SUP COURT   Ø019

provided for by statute and all consequential and incidental damages, including damages for

diminution in value of Class members' vehicles, and costs suffered by Plaintiff and the other

Class members due to GM's unlawful conduct;

E.   Treble damages (if and where appropriate);

F.   An award of reasonable attorneys' fees and costs of this suit, including fees of

experts;

G.   Restitution and/or rescission;

H.   An award of pre- and post-judgment interest; and

I.   Such other and further relief as the Court may deem necessary or appropriate.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues which may be so tried.

February 11, 2005                    Respectfully,

David Pastor (BBO #391000)
Kenneth G. Gilman (BBO #192760)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906
Telephone: (781) 231-7850

00004163.WPD ; 1                    16

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* - TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No.    0245

ANTHONY NATALE, JR., et als., on behalf of themselves and all others similarly situated

.............................................................., Plaintiff(s)

v.

GENERAL MOTORS CORPORATION

.............................................., Defendant(s)

### SUMMONS

To the above named Defendant: CT Corporation System, 101 Federal Street, Boston MA 02110, resident agent for General Motors Corporation

You are hereby summoned and required to serve upon _____ Kenneth Gilman _____,

plaintiff's attorney, whose address is 60 State Street, Boston, MA 02109 _____, an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

_____ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**Barbara J. Rouse**

WITNESS, ~~_____~~ Esquire, at Salem, the

day of _____, in the year of our Lord two thousand

A TRUE ATTEST COPY

BY *Barbara L. Bedugnis*
Constable of Boston

5-6-05

*Thomas H. Driscoll Jr.*
Clerk

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

## 03-3881

ERIN CORKERY and CARL MARTLAND
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

Civil Action No.

GENERAL MOTORS CORPORATION,

        Defendant.

**JURY TRIAL DEMANDED**

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE

SEP 19 2003

CLERK

## CLASS ACTION COMPLAINT

Plaintiffs, by their undersigned counsel, upon personal knowledge with respect to their

own acts, and upon information and belief with respect to all other matters, aver as follows:

### INTRODUCTION

1.     This is a class action on behalf of the following persons:

All persons who are residents of the Commonwealth of Massachusetts who purchased for
non-commercial and/or personal use General Motors vehicles, model years 1996 through
2003, that were factory equipped with DEX-COOL engine coolant.

2.     The Class consists of thousands of persons who are residents of the

Commonwealth of Massachusetts. Excluded from the Class are (i) any person, firm, trust,

corporation, or other entity related to or affiliated with General Motors Corporation ("GM" or the

"Defendant"); (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or

commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new

GM vehicles; and (iii) any person who has an action for damages for personal injury or death

against Defendant in connection with their purchase, use or ownership of the GM vehicles.

09/19/03 15:54:00000 8956 CLERK E
CIVIL        240.
SURCHARGE     15.
SUMMONS        5.
SECC          20.
033881 #
SUBTTL       280.
TOTAL 280.00

3.     As alleged below, Defendant manufactured and sold tens of thousands of GM vehicles factory equipped with GM's extended life coolant known as "DEX-COOL." Defendant gave a written warranty that the DEX-COOL coolant is maintenance free and protect engines and engine cooling systems for 5 years or 150,000 miles (or 100,000), whichever came first. Defendant breached its warranty to Plaintiffs and the Class because DEX-COOL is not maintenance free and has not protected the engines and engine cooling systems of Plaintiffs' and Class members' vehicles as warranted. Plaintiffs allege that, as a result of DEX-COOL, the value of the GM vehicles when the vehicles were purchased is substantially less than what members of the Class actually paid for those vehicles.

## PARTIES

4.     Plaintiff Erin Corkery is a resident of Everett, Middlesex County, Commonwealth of Massachusetts. Plaintiff Corkery purchased and owns a 2001 Chevrolet Malibu with factory equipped DEX-COOL coolant.

5.     Plaintiff Carl Martland is a resident of Roslindale, Commonwealth of Massachusetts. Plaintiff Martland purchased and owns a 2003 Saturn with factory equipped DEX-COOL coolant.

6.     Defendant General Motors Corporation is a Delaware Corporation registered to do business in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the parties because they reside or transact business within this Commonwealth.

8.     Venue is appropriate in this Court because Plaintiff Corkery is a resident of Middlesex County. The Defendant sold and distributed vehicles equipped with DEX-COOL to and from this Commonwealth to Plaintiffs and Class members. The Defendant has, at all times material to this Complaint, conducted business in this Commonwealth related to the events and omissions giving rise to the claims asserted in this Complaint and is registered to do business in

2

the Commonwealth of Massachusetts. The Defendant has received substantial compensation and profits from sales of vehicles equipped with DEX-COOL in the Commonwealth of Massachusetts.

9.      Neither the Plaintiffs nor any member of the Class has damages exceeding $75,000 each. Attorneys' fees on a pro-rata basis will not exceed $75,000 for each class member.

## CLASS ACTION ALLEGATIONS

10.     This action is brought as a class action pursuant to Mass. R. Civ. P. 23. The Class consists of all persons who are residents of the Commonwealth of Massachusetts who purchased for non-commercial and/or personal use General Motors vehicles, model years 1996 through 2003, that were factory equipped with DEX-COOL engine coolant.

11.     Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with Defendant; (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury, mental anguish or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

12.     This action is properly maintainable as a class action, as it meets the class certification requirements of Mass. R. Civ. P. 23.

13.     The unlawful conduct on the part of the Defendant alleged herein has caused similar injury to numerous other persons similarly situated to the named Plaintiffs, and the named Plaintiffs are bringing this action on behalf of themselves and such other similarly injured and situated persons.

14.     *Numerosity.* The Class is comprised of tens of thousands of persons who are residents of the Commonwealth of Massachusetts and who purchased GM vehicles with DEX-COOL extended life coolant. Moreover, joinder of such persons in one action is impracticable,

and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court.

15.     *Typicality*.  Plaintiffs' claims are typical of Class members' claims because Plaintiffs are owners of GM vehicles factory equipped with DEX-COOL engine coolant.

16.     *Adequacy*.  Plaintiffs can and will fairly and adequately represent and protect the interests of the Class and have no interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiffs have retained attorneys competent and experienced in class action, consumer protection and defective products and law.  No conflicts exist between Plaintiffs and Class members because (a) the claims of the named Plaintiffs are typical of absent members' claims, (b) virtually all of the questions of law and fact at the liability stage are common to the Class and overwhelmingly predominate over any individual issues, such that by prevailing on their own claims, Plaintiffs necessarily will establish Defendant's liability to all class members, (c) without the use of the class action device there are is a strong likelihood of multifarious and duplicative litigation which will create undue burdens on the court system and the parties, (d) Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and (e) Plaintiffs are aware of their fiduciary duties to the Class members and are determined to diligently discharge those duties.

17.     *Common Questions of Law and Fact*.  Virtually all of the issues of law and facts in this class action are common to the Class. The common questions include, *inter alia*, the following:

> a.     whether Defendant's written representations about the performance of DEX-COOL, including its written representations about the performance of DEX-COOL in the owner's manuals and labels affixed to GM's vehicles, constitute a written warranty or warranties;
>
> b.     whether Defendant failed to comply with any obligations under its written warranty or warranties;

c.    whether Plaintiffs and Class members suffered damages because of
       Defendant's failure to comply with any obligations under its written
       warranty or warranties;

d.    whether Defendant breached the implied warranty of merchantability in
       connection with the manufacture and sale of vehicles equipped with DEX-
       COOL;

e.    whether Plaintiffs and Class members are entitled to legal or equitable
       relief, including but not limited to an injunction, a declaration or rights,
       restitution or rescission; and

f.     whether Defendant concealed from Plaintiffs and Class members critical
       information about the existence, nature and affects of DEX-COOL.

These common questions of law and fact predominate over any individual issues. The
only individual issue is each Class members's damages, which does not preclude class
certification. There are no material variations in the representations made by the Defendant or
their agents to the individual class members and thus all Class members can be uniformly treated.

18.    *Superiority*.  A class action is superior to any other available method for the fair
and efficient adjudication of this controversy, given that

(a) Common questions of law and fact overwhelmingly predominate over any
individual questions that may arise, such that there would be enormous economies to the courts
and the parties in litigating the common issues on a classwide basis instead of a repetitive
individual basis;

(b) A statewide class action is superior to other available methods for the fair and
efficient adjudication of this litigation, since individual joinder of all members of the class is
impracticable;

(c) Even if some Class members could afford individual litigation, the court
system could not. Individual litigation magnifies the delay and expense to all parties. By

contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economics of scale, and comprehensive supervision by a single court;

(d)  Concentrating this litigation in one forum would promote judicial economy and efficiency and promote parity among the claims of individual Class members as well as judicial consistency;

(e)  Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members; and

(f)  No unusual difficulties are likely to be encountered in the management of this class action.

19.    This action can also be certified because:

(a)     The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications, thus establishing incompatible standards of conduct for Defendant;

(b)     The prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would, as a practicable matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests; and

(c)     This action can also be certified because Defendant has acted or refused to act on grounds generally applicable to the Class.

## STATEMENT OF FACTS

20.    When Plaintiffs and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in the

vehicles' owner's manual provided with the vehicles and on at least one label affixed to the vehicles. A GM owner's manual represents DEX-COOL as follows:

The cooling system in your engine is filled with DEX-COOL engine coolant. This coolant is designed to remain in your vehicle for 5 years or 150,000 miles (240,000 km), whichever comes first, if you add only DEX-COOL extended life coolant . . . A 50/50 mixture of clean, drinkable water and DEX-COOL coolant will:

- Give freezing protection down to - 34F (-37C).

- Give boiling protection up to 265 F (129 C).

- Protect against rust and corrosion.

- Help keep the proper engine temperature

- Let the warning lights and gaps work as they should.

Defendant purports to void these warranties if anything other than DEX-COOL was added to the cooling system.

21.     Defendant's written warranty regarding the performance of DEX-COOL was given to Plaintiffs and Class members at the time of sale, and became part of the basis of the bargain.

22.     Defendant breached its written warranties regarding the performance of DEX-COOL with respect to Plaintiffs' and Class members' vehicles. DEX-COOL failed to protect GM engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members paying for such replacements, repairs, or inspections. Moreover, Plaintiffs have suffered diminution in value with respect to their GM vehicle with factory installed DEX-COOL.

00000573.WPD ; 1                                     7

23.     In 1999, Defendant issued technical bulletin (#99-06-02-012D), to its service
personnel, admitting that vehicles equipped with DEX-COOL may be susceptible to the
formation of a rust-like material in the cooling system.  However, Defendant intentionally
withheld the defective nature of DEX-COOL and misrepresented that improper owner
maintenance - maintaining low coolant levels for extended periods of time - was the cause of
cooling system corrosion.

## EQUITABLE TOLLING OF STATUTE OF LIMITATIONS

24.     The Defendant has refused to make full disclosure to the public, in a manner
reasonably calculated to reach all vehicle owners such as the Plaintiffs and Class members, of the
full extent of the attendant damages of having DEX-COOL equipped in their vehicles.

25.     The inherent defects of DEX-COOL are latent and self-concealing.  Even in the
exercise of reasonable care, the Plaintiffs and Class members simply cannot discover that such
inherent defects exist.  By suppressing the dissemination of information regarding the attendant
risks of having DEX-COOL in their vehicles, the Defendant has intentionally foreclosed
Plaintiffs and Class members from learning of DEX-COOL's latent defects.

26.     It is critical that a detailed court-approved notice be sent to all vehicle owners
such as the Plaintiffs and Class members in a manner calculated to reach and notify them of the
full extent of the attendant damages of having DEX-COOL equipped in their vehicles.  All Class
members should be given an opportunity to inspect and remove DEX-COOL from their vehicles.
A classwide notice is necessary to  accomplish the aforementioned goals and to allow all Class
members to take appropriate steps to protect their legal rights.

27.     Any applicable statutes of limitations have been tolled by the Defendant's acts of
fraudulent concealment and denial of the facts as alleged above.  Such acts of fraudulent
concealment include:  intentionally covering up and refusing to disclose internal documents;
failing to disclose that DEX-COOL is inherently defective; misrepresenting the character, quality
and nature of DEX-COOL in order to deceive consumers, including releasing reports which

purport to conclude that DEX-COOL is reliable and maintenance free. Through such acts of fraudulent concealment, the Defendant have been able to conceal from the public the truth about DEX-COOL's defects, thereby tolling the running of any applicable statutes of limitations. The Plaintiffs and the members of the Class could not reasonably have discovered the true facts of DEX-COOL's defective nature, the truth having been fraudulently and knowingly concealed by Defendants from at least 1996 through the present date.

28.     Furthermore, the Defendant is estopped from relying on any statutes of limitations because of its fraudulent concealment of the true character, quality and nature of DEX-COOL. The Defendant was under a duty to disclose the true character, quality and nature of DEX-COOL because this is non-public information over which the Defendant has exclusive control, and because the Defendant knew that this information was not available to the Plaintiffs or to Class members. In addition, the Defendant is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

29.     Until a date within the applicable statute of limitations, the Plaintiffs and Class had no knowledge that the Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent and active concealment of the wrongdoing by the Defendant, the Plaintiffs and Class members could not reasonably have discovered the wrongdoing at any time prior to this time.

30.     Because of the self-concealing nature of the Defendant's actions and its intentional concealment of its wrongdoing, Plaintiffs assert the tolling of any applicable statute of limitations affecting the claims by Plaintiff and the members of the Class.

## FIRST CAUSE OF ACTION

### (Breach of Express Warranty)

31.     Plaintiffs, on behalf of themselves and all others similarly situated, hereby incorporate by reference each of the preceding allegations as though fully set forth herein and further allege as follows:

32. Between calendar years 1995 and 2003 (the "relevant period"), Defendant manufactured and/or sold vehicles factory equipped with DEX-COOL engine coolant.

33. Defendant provided a written warranty to Plaintiffs and Class members that related to the future performance of its vehicles and various components, including the future performance of DEX-COOL engine coolant.

34. Defendant expressly warranted that DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles whichever comes first. Further, Defendant represented that DEX-COOL coolant protects against rust and corrosion and will not damage aluminum parts.

35. DEX-COOL coolant is defective and does lead to premature engine, heater core or radiator corrosion.

36. Defendant knew, or should have known that DEX-COOL was defective when placed into the marketplace and that Defendant's express representations were false, incomplete, and/or misleading at the time they were made to Plaintiffs and Class members.

37. As a direct and proximate result of the foregoing, Plaintiffs and other members of the Class have suffered damages in that they own vehicles equipped with DEX-COOL coolant.

38. Because Defendant's warranty fails of its essential purpose and is otherwise unconscionable as set forth above, Plaintiffs and Class members are entitled to all damages available under M.G.L. Ch. 106, including the necessary labor to replace DEX-COOL engine coolant from their vehicles, and all consequential damages incurred as a result of the failures of DEX-COOL.

## SECOND CAUSE OF ACTION

### (Breach of Implied Warranties)

39. Plaintiffs, on behalf of themselves and all others similarly situated, hereby incorporate by reference each of the preceding allegations as though fully set forth herein and further allege as follows:

40.    Defendant has breached its implied warranty of merchantability in that DEX-COOL is defective and not fit for the ordinary purposes for which it is used; that is, to provide safe, long-lasting protection of vehicle engines and cooling systems.

41.    The Defendant's attempt to exclude or modify the implied warranties of fitness and merchantability, or to limit the remedies of the Plaintiffs and Class members under the implied warranty of fitness and merchantability are void and unenforceable under the provisions of M.G.L. Ch. 106, §2-316A.

42.    As a direct and proximate result of the foregoing, Plaintiffs and the other members of the Class have suffered actual damages in that they purchased vehicles factory equipped with DEX-COOL coolant.

**THIRD CAUSE OF ACTION**

**(Reformation of Warranty Pursuant to M.G.L. Ch. 106, §2-302)**

43.    Plaintiffs, on behalf of themselves and all others similarly situated, hereby incorporate by reference each of the preceding allegations as though fully set forth herein and further allege as follows:

44.    Defendant issued a standard form warranty with its vehicles to Plaintiffs and Class members purporting to limit the liability of Defendant.

45.    The limitations on the remedy allowed the Class under Defendant's warranty is impermissibly one-sided, substantively unfair and unreasonably favorable to the Defendant.

46.    Plaintiffs request the Court to enforce the warranty according to its remaining terms, except that in view of the reformation of the warranty, Plaintiffs request that this Court issue a mandatory injunction pursuant to its equitable powers requiring Defendant to reform the warranty in a manner deemed to appropriate by the Court, and to notify all Class members that such warranty has been reformed and further directing the Defendant to recalculate its warranty liabilities to any Class members who previously resolved warranty claims with Defendant in accordance with the reformed warranty.

00000573.WPD ; 1

11

## FOURTH CAUSE OF ACTION

### (Breach of Written Warranty Under
### Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.)

47.     Plaintiffs, on behalf of themselves and all others similarly situated, hereby incorporate by reference each of the preceding allegations as though fully set forth herein and further allege as follows:

48.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

49.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(4)-(5).

50.     The vehicles at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(1).

51.     When Plaintiffs and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in the vehicles' owner's manual provided with the vehicles and on at least one label affixed to the vehicles, stating, among other things, that the GM-provided DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles whichever comes first. Defendant purports to void these warranties if anything other than DEX-COOL was added to the cooling system.

52.     DEX-COOL fails to protect Defendant's engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members

12

paying for such replacements, repairs, or inspections. Moreover, Plaintiffs have suffered
diminution in value with respect to their vehicle with factory installed DEX-COOL.

53.     Defendant affirmed the fact, promised and/or described in writing that the DEX-
COOL in Plaintiffs' and Class members vehicles would meet a specified level of performance
over a specified period of time, namely, that DEX-COOL would perform maintenance free for 5
years or 150,000 (or 100,000) miles, whichever came first. Defendant's written affirmation of
fact, promises or descriptions relate to the nature of the DEX-COOL in Plaintiffs' and Class
members vehicles and became part of the basis of the bargain between Defendant and Plaintiffs
and Class members. Defendant's written affirmations of fact, promises and/or descriptions, as
alleged herein, are each a "written warranty" within the meaning of the Magnuson-Moss Act, 15
U.S.C. § 2301(6).

54.     Defendant breached its written warranties when Plaintiffs' and Class members
vehicles did not perform as represented by Defendant and thereby caused damages to Plaintiff
and other members of the Class.

55.     Resort to any informal dispute settlement procedure and/or affording Defendant a
reasonable opportunity to cure its breach of written warranties to Plaintiffs is unnecessary and/or
futile. At the time of sale to Plaintiffs, Defendant knew, should have known, or was reckless in
not knowing of its misrepresentations concerning the inability of DEX-COOL to perform as
warranted by nevertheless failed to rectify the situation and/or disclose it to Plaintiffs. Moreover,
the remedies available by resort to any informal dispute settlement procedure would be wholly
inadequate under the circumstances. Accordingly, any requirement under the Magnuson-Moss
Act or otherwise that Plaintiffs resort to any informal dispute settlement procedure and/or afford
Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiffs is
excused and, thereby, deemed satisfied.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, requests judgment and relief of all causes of action as follows:

A.    An order certifying that this action is properly brought and may be maintained as a nationwide class action under Rule 23 of the Massachusetts Rules of Civil Procedure;

B.    An order declaring and confirming that GM's conduct is unlawful under the cause of action alleged herein;

C.    An order requiring GM to cease and desist all unlawful practices described herein;

D.    Compensatory damages in an amount to be proven at trial, including all damages provided for by statute and all consequential and incidental damages, including damages for diminution in value of Class members' vehicles, and costs suffered by Plaintiffs and the other Class members due to GM's unlawful conduct;

E.    Punitive and exemplary damages (if and where appropriate);

F.    An award of reasonable attorneys' fees and costs of this suit, including fees of experts;

G.    Restitution and/or rescission;

H.    An award of pre- and post-judgment interest; and

I.    Such other and further relief as the Court may deem necessary or appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues which may be so tried.

Respectfully,

David Pastor (BBO #391000)
Kenneth G. Gilman (BBO #192760)
Edward Manchur (BBO # 316910)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906
Telephone: (781) 231-7850

# COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT
CIVIL ACTION
NO. 03-3881**

## ERIN CORKERY[1]

### vs.

## GENERAL MOTORS CORPORATION

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

This putative class action suit was brought by Erin Corkery (the "plaintiff") on behalf of

Massachusetts residents owning General Motors ("GM") vehicles equipped with DEX-COOL

coolant.  The complaint seeks monetary damages for the decreased economic value of their

vehicles caused by the alleged failure of the DEX-COOL coolant to perform as warranted by

GM, and equitable relief in the form of an injunction to reform certain unfair provisions of the

warranty.  Specifically, the complaint seeks damages for breaches of an express warranty (Count

I) and the implied warranty of merchantability (Count II), violation of the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301(6)(A) (Count IV), unjust enrichment (Count V), and violation of

G.L. c. 93A, § 9 (Count VI), as well as an injunction to reform certain provisions of the written

---

[1] on behalf of herself and all others similarly situated

warranties (Count III).  The defendant now moves pursuant to Mass. R. Civ. P. 12(b)(6) to

dismiss the complaint for failure to state a claim upon which relief can be granted.   For the

reasons to follow, the defendant's motion is **ALLOWED**.


## BACKGROUND

For purposes of this motion, the Court accepts as true the factual allegations in the

complaint and makes all reasonable inferences from those facts in the plaintiff's favor.  *Fairneny*

*v. Savrogan Co.*, 422 Mass. 469, 470 (1996).  Because the class has not been certified, the

allegations in the complaint will be considered only insofar as they relate to the named plaintiff,

Erin Corkery.  The Complaint, read accordingly, sets forth the following allegations:

GM equipped various vehicles manufactured between 1996 and 2003 with a coolant

named DEX-COOL.  The plaintiff purchased, and still owns, a 2001 Chevrolet Malibu which

was equipped with DEX-COOL.  The owner's manual (the "Manual"), which was given to the

plaintiff at the time of sale, and a label affixed to the vehicle included statements about DEX-

COOL.  Specifically the Manual states:

> The cooling system in your engine is filled with DEX-COOL engine coolant.  This
> coolant is designed to remain in your vehicle for 5 years or 150,000 miles
> (240,000km), whichever comes first, if you add only DEX-COOL extended life
> coolant ... A 50/50 mixture of clean, drinkable water and DEX-COOL coolant will:
> - Give freezing protection down to -34F
> - Give boiling protection up to 265F
> - Protect against rust and corrosion
> - Help keep the proper engine temperature
> - Let the warning lights and gaps work as they should

The Manual also states that "[i]f coolant other than DEX-COOL is added to the system,

premature engine, heater core or radiator corrosion may result.  In addition, the engine coolant

will require change sooner – at 30,000 miles or 24 months, whichever occurs first." It also

cautions that: "Damage caused by the use of coolant other than DEX-COOL is not covered by

your new vehicle warranty." The manual states that owners should check the DEX-COOL

coolant level at every fuel fill.

   The plaintiff alleges that if left in the vehicle for five years or 150,000 miles DEX-COOL

may cause rusty sludge to form in the cooling system, corroding and/or clogging the cooling

system, damaging other parts of the engine and requiring either or both flushing of the cooling

system and replacement of damaged parts. As a result, she alleges that the vehicle's value is

diminished. The plaintiff does not, however, allege that the DEX-COOL in her vehicle has not

performed as the manual states or that it has caused any of the aforementioned damage.

   The plaintiff further alleges that when she bought the vehicle, GM knew or should have

known of the defective DEX-COOL and that the representations in the Manual were false and/or

misleading. Thus, the plaintiff alleges that she was deceived as to the true nature of DEX-COOL

and, further, the actual value of her vehicle.[2] In 1999, GM issued a technical bulletin to its

service personnel admitting that vehicles equipped with DEX-COOL were susceptible to the

above-noted problems. However, GM intentionally withheld the defective nature of DEX-COOL

and misrepresented that the actual cause of these problems was improper owner

maintenance–specifically, the owners' failure to maintain the DEX-COOL fluid level properly

over extended periods of time. GM refused to make full disclosure to the public of the full extent

of the potential damages of having DEX-COOL in the cooling system.

   On September 18, 2003, the plaintiff served a 93A demand letter upon the defendant.

---

[2] There are no claims for fraud, misrepresentation, or breach of contract.

The defendant did not make an offer of relief in response.

## DISCUSSION

*1. Standard*

Under Mass. R. Civ. P. 12(b)(6), a motion to dismiss will be allowed only if the plaintiff

has failed to state a claim upon which relief can be granted. Mass. R. Civ. P. 12(b)(6). A "

'complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Nader v.*

*Citron*, 372 Mass. 96, 98 (1977), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "[A]

complaint is not subject to dismissal if it would support relief on any theory of law," *Whitinsville*

*Plaza, Inc. v. Kotseas*, 378 Mass. 85, 89 (1979), "even though the particular relief [which the

plaintiff] has demanded and the theory on which he seems to rely may not be appropriate."

*Nader*, 372 Mass. at 104 (citations omitted). When evaluating the sufficiency of a complaint

pursuant to Mass. R. Civ. P. 12(b)(6), the court will accept as true the well pleaded factual

allegations of the complaint as well as any inference which can be drawn therefrom in the

plaintiff's favor. *Fairneny*, 422 Mass at 470.

*2. Express Warranty Claim & Magnuson-Moss Warranty Act- Counts I & IV*

GM argues that these claims must be dismissed because the complaint fails to allege any

legally cognizable injury–*i.e.*, the complaint seeks compensation for damages the plaintiff *might*

*possibly* suffer in the future. The plaintiff, on the other hand, argues that the legally cognizable

injury is the vehicle's *present* diminution in value resulting from the defective coolant. Thus, the

4

question before the court is whether the plaintiff states a legally cognizable breach of express

warranty claim by alleging that the vehicle came equipped with functional coolant that has not

malfunctioned, has not caused physical damage or personal injury, does not pose a risk of bodily

or personal injury, but decreases the value of the vehicle because it may cause damage to the

vehicle in the future.  For the reasons to follow, this court answers that question in the negative.

The express warranty claims must be dismissed, because the plaintiff does not allege that

the DEX-COOL in *her vehicle* is defective or has malfunctioned.  A manufacturer's liability

under an express warranty is predicated on an actual product defect that manifests itself–as

opposed to a defect which might theoretically or potentially arise.  Courts have phrased this issue

differently. some considering it a failure to plead injury or damages, see, e.g., *Briehl v. General

Motors Corp.*, 172 F.3d 623, 627-28 (8th Cir. 1999) ("courts have been particularly vigilant in

requiring allegations of injury or damages") (and cases cited), and others considering it a failure

to allege that the product is actually defective, see, e.g., *Khan v. Shiley Inc.*, 217 Cal.App.3d 848,

855 (1990) ("where a plaintiff alleges a product is defective, proof that the product has

malfunctioned is essential to establish liability for an injury caused by the defect").  In any event,

most courts require that a plaintiff allege that his or her product is defective or has malfunctioned

in order to recover for breach of warranty.  *Briehl*, 172 F.3d at 627-28 (and cases cited); *Jarman

v. Untied Indus. Corp.*, 98 F.Supp. 2d 757, 767-68 (S.D. Miss. 2000) ("unless there is actually a

failure in product performance, there is no basis at all for claiming that the plaintiff has been

damaged in any way. Mere suspicion of a lost bargain . . . will not support an award of

damages"); *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657-58 (D.N.J. 1986) ("The basic

problem in this case is that plaintiff Yost has not alleged that he has suffered any damages. He

5

has not stated that the engine in his vehicle is defective in any way. All he is able to allege is that

the potential leak is 'likely' to cause damage and 'may' create potential safety hazards"); *Verb v.*

*Motorola, Inc.*, 672 N.E.2d 1287, 1297 (Ill. App.3d 1996) ("plaintiffs' . . . claims constitute

conjecture and speculation. Plaintiffs failed to plead specific facts that . . . the telephones are

defective; rather, their warranty claims, like their other claims, are based upon the possibility that

the telephones *may* be defective because of the 'unproven' safety of those telephones"); *Khan*,

217 Cal.App.3d at 857 ("A cause of action does not presently exist under [warranty] theory

premised on the *risk* the [product] *may* malfunction in the future").

       This Court agrees with the rule adopted in those cases and will apply it in this case. Put

simply, a manufacturer does not breach a warranty if the product performs as warranted and does

not exhibit the alleged defect.  If, and when, the plaintiff's vehicle is actually damaged by DEX-

COOL, the alleged warranty can then, be invoked to remedy the alleged defect and resulting

damages. There are good reasons for courts to adhere to the well established rule unless there is

good and sufficient to deviate from it.

       Allowing compensation before the alleged defect manifests itself would present

substantial difficulties of proof as to damages.  Specifically, in order to arrive at a figure which

represents the actual 'diminished value' of the vehicle, a jury would need to determine the risk of

the defect actually occurring as well as the cost of remedying the defect at that time.  Where the

plaintiff alleges a myriad of possible damage to her vehicle requiring varying remedies–ranging

from radiator replacement to a mere coolant flush–such a calculation is inherently speculative

and conjectural.  On the other hand, precluding warranty claims until the alleged defect manifests

itself creates the potential for arriving at a damages award properly tailored to the actual damage

occasioned by the product malfunction.

In addition, requiring GM to pay damages before the alleged defect manifests itself would lead to simultaneous over and under compensation. The measure of damages would presumably be calculated according to the differential in value between the price as warranted and the price as defective (as measured in terms of risk). See G.L. c. 106, § 2-714(2); *In re Bridgestone/Firestone*, 288 F.3d at n.1. If the plaintiff's vehicle does not ultimately suffer any deterioration caused by DEX-COOL, however, she would be unjustly compensated. On the other hand, if her vehicle at some point in the future requires extensive repairs she would likely be under compensated.[3] In short, because the plaintiff's claim is premature, it would be difficult for a jury to arrive at an amount of damages that fairly compensates the plaintiff for the defendant's alleged breach of warranty without resorting to conjecture or surmise.

In addition, such a rule would invite a flood of class action product liability litigation. Nearly every product which could be shown to contain *some* defect or to underperform as warranted could become the subject of a massive class action suit. As GM argues in its brief:

> if a consumer whose product had experienced no malfunction was nevertheless able to state a claim against a manufacturer because some *other* similar product had, at some *other* time under *other* circumstances, allegedly experienced a failure, virtually any consumer could file a lawsuit against any manufacturer of any consumer product the moment that product was purchased. By consistently requiring an allegation that the particular product at issue has malfunctioned, courts ... have effected a reasonable balance between protecting consumers who have actually suffered some legally cognizable injury and insuring that commerce does not grind to a halt to accommodate a spate of groundless lawsuits.

Defendant's Reply to Plaintiff's Opp. to Defendan't Mot. to Dismiss, p.4.

---

[3] This assumes that the plaintiff could not later sue again if the defect actually manifested itself at a later date.

7

Finally, there are substantial issues concerning the ripeness of the issue. Because no defect has manifested itself in the plaintiff's vehicle, GM has not been given the opportunity to honor its obligations under the warranty. It may be that if the defect manifests itself in the plaintiff's vehicle, GM will cure the defect under the warranty without the plaintiff needing to resort to the courts for relief. In short, GM cannot "breach" a warranty until it has first been given the opportunity to honor it.

It bears noting that this case must be distinguished from a situation where an allegedly defective product poses a substantial risk of injury or death or is otherwise unmerchantable. See *Holtzman v. General Motors Corp.*, Civil No. 02-1368 (Middlesex Superior Ct., July 2, 2002) (Billings, J.) (and cases cited). In *Holtzman*, the plaintiffs alleged that tire jacks supplied with their vehicles were prone to failing, violated industry standards, and placed users in "great danger of being injured or killed" during their use. As such, the tire jacks were not fit for their ordinary use. While none of the plaintiffs alleged that they had used the tire jack, the Court refused to dismiss their claims. The Court reasoned that because the jacks were unusable, the harm had materialized *at the time of the complaint*: the necessary costs of replacing the jack.

This case is distinguishable for two reasons. First, as noted above, the plaintiff does not allege that DEX-COOL is unreasonably dangerous or otherwise unfit for use as a coolant. In *Holtzman*, as well as all of the cases cited by Judge Billings, the products at issue were either functionally unusable or unreasonably dangerous for their intended use. As such, *at the time of the complaint*, the plaintiffs in those cases had suffered a legally compensable injury under the Uniform Commercial Code and were entitled to the cost of replacement of the unmerchantable product. In this case, however, the plaintiff's claim has not ripened to the point where she has

8

suffered a legally cognizable injury entitling her to compensation.

Second, the nature of the risk in using the product is clearly distinguishable. Where a product poses a risk of bodily injury or even death in violation of an express or implied warranty, additional policy considerations support shifting the risk of those injuries to manufacturers. See *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 866 (1986) ("public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market"). The alleged defect with DEX-COOL does not implicate those additional policy considerations. The potential damage caused by DEX-COOL–rust, corrosion, and diminished resale value–can be sufficiently compensated by money damages *if and when* those symptoms manifest themselves.[4]

Accordingly, GM's Motion to Dismiss Counts I & IV of the complaint will be **ALLOWED**.


3. *Implied Warranty of Merchantability - Count II*

In Massachusetts, a warranty that goods are merchantable is implied in every sale of goods. G.L. c. 106, § 2-314. To state a claim for a breach of an implied warranty of merchantability, a plaintiff must allege that the product, as sold, is not "fit for the ordinary purposes for which such [products] are used." *Id.*; *Hannon v. Original Gunite Aquatech Pools, Inc.*, 385 Mass 813, 822 (1982). "The implied warranty of merchantability, [however,] like that of fitness, is primarily directed at the operative essentials of a product. . . . It is not intended to

---

[4] Because this Court rules that the Plaintiff's claim is premature, it need not decide whether, as a matter of law, the statements in the owner's manual constitute an express warranty. This Court does not decide that issue and nothing in this opinion should be construed as expressing an opinion either way.

guarantee high quality or perfection of detail. *Tracy* v. *Vinton Motors, Inc.,* 130 Vt. 512, 516

(1972). There is no implied warranty that the goods shall be of the best or even a very high

quality." *Hannon*, 385 Mass. at 822, citing H. Alperin & R. Chase, Consumer Rights and

Remedies §§ 68, at 158 (1979).

In *Skelton v. General Motors Corp.,* 500 F. Supp. 1181, 1191-92 (N.D.Ill. 1980), *reversed*

*on other grounds,* 660 F.2d 311 (7th Cir. 1981), the plaintiffs alleged that General Motors

breached the warranty of merchantability by installing an inferior model transmission to the one

that was advertised in the vehicle's literature. The plaintiffs alleged that the inferior transmission

was " 'more expensive to maintain' and 'less desirable to the purchasing public than [the

advertised] Transmissions.'" *Id.* at 1192, quoting the Second Amended Complaint. In

dismissing the plaintiffs' implied warranty claims, the court stated:

> The implied warranty of merchantability does not impose a general requirement that
> goods precisely fulfill the expectations of the buyer. Instead, it provides for a
> minimum level of quality —— that the goods 'are fit for the ordinary purposes for
> which such goods are used.' U.C.C. §§ 2-314(2)(c). Automobiles are designed for
> driving, and therefore the question in this case is whether the GM vehicles at issue
> were fit for that purpose.

*Id.*

The same reasoning applies here. The plaintiff's complaint does not allege that DEX-

COOL is unfit for use as a coolant, that the coolant falls below a minimally acceptable standard

of quality, that the vehicle is unfit for driving, or that the car is unreasonably dangerous with the

defective coolant. The gravamen of the complaint is that DEX-COOL fails to achieve the

enhanced levels of performance described in the Manual–much like the argument of the plaintiffs

in *Skelton* that the transmission did not perform as well as described in the literature. As such,

10

the plaintiff in this case fails to state a claim for a breach of the implied warranty of merchantability. *Id.*; *Hannon*, 385 Mass. at 822. GM's motion to dismiss Count II of the first amended complaint will be **ALLOWED**.


### 4. *Reformation - Count III*

Pursuant to G.L. c. 106, § 2-302, Count III seeks reformation of the alleged written warranty insofar as certain provisions unfairly limit GM's liability thereunder.[5] Because the plaintiff's claims under the alleged written warranty are premature, it is unnecessary to decide whether these provisions are an unconscionable limitation of liability (if they are a limitation at all). Therefore, the Motion to Dismiss Count III will be **ALLOWED**.


### 5. *Unjust Enrichment - Count V*

The essence of the plaintiff's unjust enrichment claim is that she overpaid for her vehicle and it would be unjust for GM to retain the benefits of that sale. A claim that a party has been unjustly enriched seeks the equitable remedy of restitution. *Keller v. O'Brien*, 425 Mass. 774, 778 & n. 8 (1997). Restitution is appropriate when the circumstances of receipt or retention of a benefit "are such that, as between the two persons, it is unjust for [one] to retain it." *Id.*, 425 Mass. at 778, quoting *Nat'l Shawmut Bank v. Fidelity Mut. Life Ins. Co.*, 318 Mass. 142, 146 (1945). The paradigmatic claim for unjust enrichment arises in the absence of an express contract when a party confers valuable services upon another and the receiving party accepts those benefits under circumstances where the law imposes a duty to pay for the value of the work. See, e.g., *Salamon v. Terra*, 394 Mass. 857, 859 (1985). This is not such a case.

---

[5] The complaint does not identify the allegedly unfair limitations or the substance of the unfair provisions. At the hearing and on the papers, it is apparent that the plaintiff is referring to the statement in the owner's manual that the coolant level should be checked at every fuel fill. While this Court will dismiss that Count on other grounds, it should be noted that the Count III of the complaint is insufficiently definite for GM to reasonably be expected to respond insofar as it does not identify the particular provision, or the substance thereof, that is purportedly unconscionable. See Mass. R. Civ. P. 12(e).

Moreover, a claim in equity alleging unjust enrichment is not available to a plaintiff when the relationship between the parties is governed by a contract or a purported warranty. See *Fay, Spofford & Thorndike, Inc. v. Mass. Port Auth.*, 7 Mass. App. Ct. 336, 341 (1979) (where the parties' relationship is governed by a contract, claims between them are "for damages on the contract, not on a fair value basis without regard to the contract"); *Cargill v. Gilmore*, Civil Action No. 0485G (Suffolk Superior Ct., August 18, 1993) (Garsh, J.) (no equitable claim for unjust enrichment lies where there are remedies at law); *Commonwealth v. Pace*, 616 F.Supp. 815, 822 (D.Mass. 1985) (same). Because the relationship between the parties is governed by the contract for the sale of the vehicle and any related warranties, the plaintiff may not maintain an off-the-contract action in equity for unjust enrichment.

Additionally, plaintiff's claim that it would be unjust for GM to retain the alleged overpayment is premature where, as discussed above, GM has not had the opportunity to honor the purported warranty. It is premature to say that GM has been unjustly enriched from the sale of the vehicle, because the alleged defect may never manifest itself or, if it does, GM might make any necessary repairs at that time. Accordingly the motion to dismiss Count V will be **ALLOWED**.

## 6. G.L c. 93A - Count VI

For substantially the same reasons as Counts I & IV, Count VI must also be dismissed. Put simply, the plaintiff's claim is premature. Specifically, the plaintiff's claim is premised on GM's alleged failure to honor its written warranty and related conduct. However, as noted above, the plaintiff does not allege that the DEX-COOL in the plaintiff's vehicle is defective or caused damage to the vehicle, or that GM has unfairly or deceptively evaded it obligations under the purported warranties. Accordingly, the Motion to Dismiss Count VI will also be **ALLOWED**.

## ORDER

For the reasons stated above, it is hereby **ORDERED** that the defendant's Motion to Dismiss the complaint be **ALLOWED** and the complaint be **DISMISSED**.

Wendie I. Gershengorn

DATED: August 2, 2004                    Justice of the Superior Court

13

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

SUPERIOR COURT
DEPARTMENT OF THE TRIAL
COURT

ANTHONY NATALE, JR. and JOHN BURNS
on behalf of himself and all others
similarly situated,

                Plaintiff,

      v.

GENERAL MOTORS CORPORATION,

                Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.  ESCV-2005-00245-C

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, by his undersigned counsel, upon personal knowledge with respect to his own acts, and upon information and belief with respect to all other matters, avers as follows:

## INTRODUCTION

1.     This is a class action on behalf of the following persons:

All persons who are residents of the Commonwealth of Massachusetts who purchased for non-commercial and/or personal use General Motors vehicles, model years 1994 through 2003, that were factory equipped with DEX-COOL engine coolant.

2.     The Class consists of thousands of persons who are residents of the Commonwealth of Massachusetts. Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with General Motors Corporation ("GM" or the "Defendant"); (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

3.     As alleged below, Defendant manufactured and sold tens of thousands of GM vehicles factory equipped with GM's extended life coolant known as "DEX-COOL." Defendant gave a written warranty that the DEX-COOL coolant is maintenance free and protects engines and engine cooling systems for 5 years or 150,000 miles (or 100,000), whichever came first. The written warranty, *inter alia*, guaranteed that DEX-COOL coolant would "protect against rust and corrosion." Defendant breached its warranty to Plaintiff and the Class because DEX-COOL is not maintenance free and has not protected the engines and engine cooling systems of Plaintiff's and Class members' vehicles from rust and corrosion as warranted. Plaintiff alleges that, as a result of DEX-COOL, the value of the GM vehicles when the vehicles were purchased is substantially less than what members of the Class actually paid for those vehicles.

## PARTIES

4.     Plaintiff Anthony Natale, Jr. is a resident of the Commonwealth of Massachusetts. Plaintiff Natale purchased and owns a GM vehicle, a Chevy Blazer, with factory equipped DEX-COOL coolant. Plaintiff Natale has suffered diminution in the value of his GM vehicle as a result of GM's conduct as alleged herein, including but not limited to, requiring the use of DEX-COOL coolant in his vehicle and the breach of GM's express and implied warranties concerning DEX-COOL coolant.

5.     Plaintiff John Burns is a resident of Holliston, Middlesex County, Commonwealth of Massachusetts. Plaintiff purchased and owns a GM vehicle with factory equipped DEX-COOL coolant. Plaintiff Burns has suffered diminution in the value of his GM vehicle as a result of GM's conduct as alleged herein, including but not limited to, requiring the use of DEX-COOL coolant in his vehicle and the breach of GM's express and implied warranties concerning DEX-COOL coolant.

6.     Defendant General Motors Corporation is a Delaware Corporation registered to do business in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the parties because they reside or transact business within this Commonwealth.

8.    Venue is proper in Essex County because at all material times, the Defendant directly and/or indirectly, has transacted business in Essex County, Massachusetts. The Defendant sold and distributed vehicles equipped with DEX-COOL to and from this Commonwealth to Plaintiff and Class members. The Defendant has, at all times material to this Complaint, conducted business in this Commonwealth related to the events and omissions giving rise to the claims asserted in this Complaint and is registered to do business in the Commonwealth of Massachusetts. The Defendant has received substantial compensation and profits from the sale of DEX-COOL and the sales of vehicles equipped with DEX-COOL in the Commonwealth of Massachusetts.

## CLASS ACTION ALLEGATIONS

9.    This action is brought as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all members of the following class:

> all persons who are residents of the Commonwealth of
> Massachusetts who purchased for non-commercial and/or personal
> use General Motors vehicles, model years 1994 through 2003, that
> were factory equipped with DEX-COOL engine coolant.

10.    Excluded from the Class are (i) any person, firm, trust, corporation, or other entity related to or affiliated with Defendant; (ii) any person, firm, trust, corporation, or other entity that purchased, for resale or commercial purposes, from Defendant, or any entity related to or affiliated with Defendant, new GM vehicles; and (iii) any person who has an action for damages for personal injury, mental anguish or death against Defendant in connection with their purchase, use or ownership of the GM vehicles.

11.    This action is properly maintainable as a class action, as it meets the class certification requirements of Rule 23 of the Massachusetts Rules of Civil Procedure.

12.     The unlawful conduct on the part of the Defendant alleged herein has caused similar injury to numerous other persons similarly situated to the named Plaintiff, and the named Plaintiff is bringing this action on behalf of herself and such other similarly injured and situated persons.

13.     *Numerosity*. The Class is comprised of thousands of persons who are residents of the Commonwealth of Massachusetts and who purchased GM vehicles with DEX-COOL extended life coolant. Joinder of such persons in one action is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court.

14.     *Typicality*. Plaintiff's claims are typical of Class members' claims because, like the Class members, Plaintiff purchased a GM vehicle factory equipped with DEX-COOL engine coolant.

15.     *Adequacy*. Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has no interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained attorneys competent and experienced in class action, consumer protection and defective products law. No conflicts exist between Plaintiff and Class members because (a) the claims of the named Plaintiff are typical of absent members' claims, (b) virtually all of the questions of law and fact at the liability stage are common to the Class and overwhelmingly predominate over any individual issues, such that by prevailing on her own claims, Plaintiff necessarily will establish Defendant's liability to all Class members, (c) without the use of the class action device there is a strong likelihood of multifarious and duplicative litigation which will create undue burdens on the court system and the parties, (d) Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and (e) Plaintiff is aware of her fiduciary duties to the Class members and is determined to diligently discharge those duties.

16.     *Common Questions of Law and Fact*. Virtually all of the issues of law and fact in

this class action are common to the Class. The common questions include, *inter alia*, the following:

    a.    whether Defendant's written representations about the performance of DEX-COOL, including its written representations about the performance of DEX-COOL in the owner's manuals and labels affixed to GM's vehicles, constitute a written warranty or warranties;

    b.    whether Defendant failed to comply with any obligations under its written warranty or warranties;

    c.    whether Plaintiff and Class members suffered damages because of Defendant's failure to comply with any obligations under its written warranty or warranties;

    d.    whether Defendant breached the implied warranty of merchantability in connection with the manufacture and sale of vehicles equipped with DEX-COOL;

    e.    whether Defendant has been unjustly enriched at the expense of Plaintiff and the Class;

    f.    whether Plaintiff and Class members are entitled to legal or equitable relief, including but not limited to an injunction, a declaration or rights, restitution or rescission; and

    g.    whether Defendant concealed from Plaintiff and Class members critical information about the existence, nature and affects of DEX-COOL.

These common questions of law and fact predominate over any individual issues. The only individual issue is each Class members's damages, which does not preclude class certification. There are no material variations in the representations made by the Defendant or their agents to the individual Class members and thus all Class members can be uniformly treated.

17.    *Superiority*.  A class action is superior to any other available method for the fair
and efficient adjudication of this controversy, given that

(a) Common questions of law and fact overwhelmingly predominate over any
individual questions that may arise, such that there would be enormous economies to the courts
and the parties in litigating the common issues on a classwide basis instead of a repetitive
individual basis;

(b) A statewide class action is superior to other available methods for the fair and
efficient adjudication of this litigation, since individual joinder of all members of the class is
impracticable;

(c) Even if some Class members could afford individual litigation, the court
system could not.  Individual litigation magnifies the delay and expense to all parties.  By
contrast, the class action device presents far fewer management difficulties and provides the
benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single
court;

(d) Concentrating this litigation in one forum would promote judicial economy
and efficiency and promote parity among the claims of individual Class members as well as
judicial consistency;

(e) Class treatment is required for optimal deterrence and compensation and for
limiting the court-awarded reasonable legal expenses incurred by Class members; and

(f) No unusual difficulties are likely to be encountered in the management of this
class action.

18.    This action can also be certified because:

(a)      The prosecution of separate actions by the individual Class members
would create a risk of inconsistent or varying adjudications, thus establishing incompatible
standards of conduct for Defendant;

00004688.WPD ; 1                        6

(b)    The prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests; and

(c)    This action can also be certified because Defendant has acted or refused to act on grounds generally applicable to the Class.

## STATEMENT OF FACTS

19.    When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in the vehicles' owner's manual provided with the vehicles and on at least one label affixed to the vehicles. A GM owner's manual represents DEX-COOL as follows:

The cooling system in your engine is filled with DEX-COOL engine coolant. This coolant is designed to *remain* in your vehicle for 5 years or 150,000 miles (240,000 km), whichever comes first, if you add only DEX-COOL extended life coolant . . . A 50/50 mixture of clean, drinkable water and DEX-COOL coolant will:

- Give freezing protection down to - 34F (-37C).

- Give boiling protection up to 265 F (129 C).

- Protect against rust and corrosion.

- Help keep the proper engine temperature

- Let the warning lights and gaps work as they should.

Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system. Specifically, the GM owner's manual states: "Damage caused by the use of coolant other than DEX-COOL is not covered by your new vehicle warranty."

00004688.WPD ; 1                                    7

20.     While GM represents and warrants that DEX-COOL is "designed" to "remain" in the vehicle "for 5 years or 150,000 miles . . .," the GM owner's manual warns that use of coolant other than DEX-COOL could cause premature corrosion and would therefore need to be replaced sooner than would DEX-COOL. Specifically, the GM owner's manual provides: "If coolant other than DEX-COOL is added to the system, premature engine, heater core or radiator corrosion may result. In addition, the engine coolant will require change sooner – at 30,000 miles . . . or 24 months, whichever occurs first."

21.     The above-referenced statements contained in GM's owner's manual as set forth in paragraph 19 constitute an express written warranty or warranties by the Defendant. Defendant's written express warranty regarding the performance of DEX-COOL was given to Plaintiff and Class members at the time of sale, and became part of the basis of the bargain.

22.     Defendant breached its written warranties regarding the performance of DEX-COOL with respect to Plaintiff's and Class members' vehicles. DEX-COOL failed to protect GM engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members paying for such replacements, repairs, or inspections. Moreover, Plaintiff has suffered diminution in value with respect to their GM vehicle with factory installed DEX-COOL.

23.     In 1999, Defendant issued technical bulletin (#99-06-02-012D), to its service personnel, admitting that vehicles equipped with DEX-COOL may be susceptible to the formation of a rust-like material in the cooling system. However, Defendant intentionally withheld from the consumers and the public the defective nature of DEX-COOL and

00004688.WPD ; 1

8

misrepresented that improper owner maintenance - maintaining low coolant levels for extended periods of time - was the cause of cooling system corrosion.

## EQUITABLE TOLLING OF STATUTE OF LIMITATIONS

24.    The Defendant has refused to make full disclosure to the public, in a manner reasonably calculated to reach all vehicle owners such as the Plaintiff and Class members, of the full extent of the attendant damages of having DEX-COOL in their vehicles.

25.    The inherent defects of DEX-COOL are latent and self-concealing. Even in the exercise of reasonable care, the Plaintiff and Class members simply cannot discover that such inherent defects exist. By suppressing the dissemination of information regarding the attendant risks of having DEX-COOL in their vehicles, the Defendant has intentionally foreclosed Plaintiff and Class members from learning of DEX-COOL's latent defects.

26.    It is critical that a detailed court-approved notice be sent to all Class members in a manner calculated to reach and notify them of the full extent of the attendant damages of having DEX-COOL equipped in their vehicles. All Class members should be given an opportunity to inspect and remove DEX-COOL from their vehicles. A classwide notice is necessary to accomplish the aforementioned goals and to allow all Class members to take appropriate steps to protect their legal rights.

27.    Any applicable statutes of limitations have been tolled by the Defendant's acts of fraudulent concealment and denial of the facts as alleged above. Such acts of fraudulent concealment include: intentionally covering up and refusing to disclose internal documents; failing to disclose that DEX-COOL is inherently defective; misrepresenting the character, quality and nature of DEX-COOL in order to deceive consumers, including releasing reports which purport to conclude that DEX-COOL is reliable and maintenance free. Through such acts of fraudulent concealment, the Defendant has been able to conceal from the public the truth about DEX-COOL's defects, thereby tolling the running of any applicable statutes of limitations. The Plaintiff and the members of the Class could not reasonably have discovered the true facts of

00004688.WPD ; 1

9

DEX-COOL's defective nature, the truth having been fraudulently and knowingly concealed by Defendant from at least 1996 through the present date.

28.    Furthermore, the Defendant is estopped from relying on any statutes of limitations because of its fraudulent concealment of the true character, quality and nature of DEX-COOL. The Defendant was under a duty to disclose the true character, quality and nature of DEX-COOL because this is non-public information over which the Defendant has exclusive control, and because the Defendant knew that this information was not available to the Plaintiff or to Class members. In addition, the Defendant is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

29.    Until a date within the applicable statute of limitations, the Plaintiff and Class had no knowledge that the Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent and active concealment of the wrongdoing by the Defendant, the Plaintiff and Class members could not reasonably have discovered the wrongdoing at any time prior to this time.

30.    Because of the self-concealing nature of the Defendant's actions and its intentional concealment of its wrongdoing, Plaintiff asserts the tolling of any applicable statute of limitations affecting the claims by Plaintiff and the members of the Class.

## FIRST CAUSE OF ACTION

### (Breach of Express Warranty)

31.    Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

32.    Between calendar years 1994 and 2003 (the "relevant period"), Defendant manufactured and/or sold vehicles factory equipped with DEX-COOL engine coolant.

33.    Defendant provided a written warranty to Plaintiff and Class members that related to the future performance of its vehicles and various operative essential components, including its vehicles' coolant systems and the future performance of DEX-COOL engine coolant.

34.    Defendant expressly warranted that DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles whichever comes first.  Further, Defendant represented and warranted that DEX-COOL coolant protects against rust and corrosion and will not damage aluminum parts.

35.    DEX-COOL coolant is defective, is not properly designed to remain in vehicles 5 years or 150,000 (or 100,000) miles (whichever comes first),  and does lead to premature engine, heater core or radiator corrosion.

36.    Defendant knew, or should have known, that DEX-COOL was defective and not properly designed when placed into the marketplace and that Defendant's express representations concerning DEX-COOL  were false, incomplete, and/or misleading at the time they were made to Plaintiff and Class members.

37.    As a direct and proximate result of the foregoing, Plaintiff and other members of the Class have suffered damages in that they own vehicles equipped with DEX-COOL coolant.

38.    Defendant's attempts to exclude or modify its express warranties, or limit the remedies of the Plaintiff and the Class members by, *inter alia*, requiring Plaintiff and Class members to check their DEX-COOL engine coolant levels at every fuel fill are overly onerous and void and unenforceable.

39.    Because Defendant's warranty fails of its essential purpose and is otherwise unconscionable as set forth above, Plaintiff and Class members are entitled to all damages available under M.G.L. Ch. 106, including the necessary labor to replace DEX-COOL engine coolant from their vehicles, and all consequential damages incurred as a result of the failures of DEX-COOL.

or their remaining terms, except that in view of the reformation of the warranty or warranties, Plaintiff requests that this Court issue a mandatory injunction pursuant to its equitable powers requiring Defendant to reform the warranty or warranties in a manner deemed to be appropriate by the Court, and to notify all Class members that such warranty or warranties has been reformed and further directing the Defendant to recalculate its warranty liabilities to any Class members who previously resolved warranty claims with Defendant in accordance with the reformed warranty or warranties.

## FOURTH CAUSE OF ACTION

### (Breach of Written Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.)

48.    Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference each of the preceding allegations as though fully set forth herein and further alleges as follows:

49.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

50.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(4)-(5).

51.    The vehicles at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(1).

52.    When Plaintiff and Class members purchased their respective vehicles, the vehicles were covered by the manufacturer's warranties, which included statements about DEX-COOL engine coolant. The statements about DEX-COOL engine coolant appeared in each vehicle's owner's manual provided with the vehicles and on at least one label affixed to the vehicles, stating, among other things, that the GM-provided DEX-COOL engine coolant was designed to remain in the vehicles for 5 years or 150,000 (or 100,000) miles, whichever comes

first. Defendant purports to void these warranties if anything other than DEX-COOL is added to the cooling system.

53.     DEX-COOL fails to protect Defendant's engines against corrosion, which, among other things, can and has caused rusty sludge to form in the cooling system, clogged the radiator and heater core and hoses, required the replacement of the radiator, heater core, gaskets, hoses, seals, water pumps and other parts, and required the flushing of the engine and heating systems. Replacements, repairs, and inspections have taken place or should take place within the warranty period, yet they are not fully covered or paid for by Defendant, resulting in Class members paying for such replacements, repairs, or inspections. Moreover, Plaintiff and the Class have suffered diminution in value with respect to their vehicles with factory installed DEX-COOL.

54.     Defendant affirmed the fact, promised and/or described in writing that the DEX-COOL in Plaintiff's and Class members vehicles would meet a specified level of performance over a specified period of time, namely, that DEX-COOL would perform maintenance free for 5 years or 150,000 (or 100,000) miles, whichever came first. Defendant's written affirmation of fact, promises or descriptions relate to the nature of the DEX-COOL in Plaintiff's and Class members' vehicles and became part of the basis of the bargain between Defendant and Plaintiff and Class members. Defendant's written affirmations of fact, promises and/or descriptions, as alleged herein, are each a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

55.     Defendant breached its written warranties when Plaintiff's and Class members vehicles did not perform as represented by Defendant and thereby caused damages to Plaintiff and other members of the Class.

56.     Resort to any informal dispute settlement procedure and/or affording Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is unnecessary and/or futile. At the time of sale to Plaintiff, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations concerning the inability of DEX-COOL to perform as

00004688.WPD ; 1                              14

warranted by nevertheless failed to rectify the situation and/or disclose it to Plaintiff. Moreover, the remedies available by resort to any informal dispute settlement procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the Magnuson-Moss Act or otherwise that Plaintiff resorts to any informal dispute settlement procedure and/or afford Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiff is excused and, thereby, deemed satisfied.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

57.    Plaintiff, on behalf of himself and all others similarly situated, hereby incorporates by reference and realleges each of the proceeding allegations of this Complaint as though fully set forth herein, and further alleges, in the alternative, as follows:

58.    As a result of GM's unlawful conduct, as alleged herein, Plaintiff and the other members of the Class were deceived concerning the true nature and value of their vehicles equipped with DEX-COOL coolant. In reality, due to the defective nature of DEX-COOL, the value of the Plaintiff's and the Class members' vehicles was less than they paid for them, and GM accordingly derived and obtained a benefit in the form of a higher sales price at the expense of Plaintiff and the Class members. GM has been unjustly enriched by its receipt and retention of this benefit.

59.    GM has been enriched at the expense of unwitting consumers and it would be inequitable for GM to retain this ill-gotten benefit.

60.    Plaintiff and other members of the Class are entitled to damages as a result of the unjust enrichment of GM.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class, requests judgment and relief of all causes of action as follows:

A.    An order certifying that this action is properly brought and may be maintained as a

00004688.WPD ; 1                                  15

nationwide class action under Rule 23 of the Massachusetts Rules of Civil Procedure;

      B.      An order declaring and confirming that GM's conduct is unlawful under the causes of action alleged herein;

      C.      An order requiring GM to cease and desist all unlawful practices described herein;

      D.      Compensatory damages in an amount to be proven at trial, including all damages provided for by statute and all consequential and incidental damages, including damages for diminution in value of Class members' vehicles, and costs suffered by Plaintiff and the other Class members due to GM's unlawful conduct;

      E.      Treble damages (if and where appropriate);

      F.      An award of reasonable attorneys' fees and costs of this suit, including fees of experts;

      G.      Restitution and/or rescission;

      H.      An award of pre- and post-judgment interest; and

      I.      Such other and further relief as the Court may deem necessary or appropriate.

## JURY TRIAL DEMANDED

    Plaintiff demands a trial by jury on all issues which may be so tried.

May 6, 2005

Respectfully,

David Pastor (BBO #391000)
Kenneth G. Gilman (BBO #192760)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

00004688.WPD ; 1

16

# Commonwealth of Massachusetts
## County of Essex
### The Superior Court

CIVIL DOCKET# **ESCV2005-00245-C**

RE:    **Natale Jr v General Motors Corporation**

TO:David Pastor, Esquire
Gilman & Pastor
999 Broadway
Stone Hill Corp Ctr Suite 500
Saugus, MA 01906

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
| --- | --- |
| Service of process made and return filed with the Court | 05/12/2005 |
| Response to the complaint filed (also see MRCP 12) | 07/11/2005 |
| All motions under MRCP 12, 19, and 20 filed | 07/11/2005 |
| All motions under MRCP 15 filed | 07/11/2005 |
| All discovery requests and depositions completed | 12/08/2005 |
| All motions under MRCP 56 served and heard | 01/07/2006 |
| Final pre-trial conference held and firm trial date set | 02/06/2006 |
| Case disposed | 04/07/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**.  You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session C sitting in CtRm 1 (Lawrence) at Essex Superior Court.

Dated: 02/14/2005

Thomas H. Driscoll Jr.
Clerk of the Courts

BY: Kevin Jones
Assistant Clerk

Location: CtRm 1 (Lawrence)
Telephone: (978) 687-7463

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtracf_2.wpd 526335 inidoc01 exarhose

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|                                                                          |   |                          |
|--------------------------------------------------------------------------|---|--------------------------|
| **IN RE:**                                                               | ) |                          |
|                                                                          | ) |                          |
| **GENERAL MOTORS CORP. DEX-COOL**<br>**PRODUCTS LIABILITY LITIGATION**   | ) | **MDL DOCKET NO. 1562**  |
|                                                                          | ) |                          |

## NOTICE OF RELATED TAG-ALONG ACTION

Pursuant to Rules 7.2(i) and 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, defendant in these actions hereby notifies the Clerk of the Panel of a related "tag-along" action (listed on the attached "Schedule A of Related Action") and states as follows:

1.      On June 30, 2003, defendant General Motors Corporation filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") for the transfer, coordination, and consolidation pursuant to 28 U.S.C. § 1407 ("Motion") of related pending cases in MDL No. 1562, In re General Motors Corp. Dex-Cool Products Liability Litigation.

2.      On September 19 and September 30, defendant General Motors Corporation notified the JPML of related tag-along actions that were then pending in federal district courts around the country.

3.     On November 14, 2003, the JPML granted General Motors' Motion, centralizing this litigation in the Southern District of Illinois for coordinated and consolidated pretrial proceedings.

4.     An additional related class action is now pending in the District of Massachusetts:

- *Anthony Natale, Jr., et al., v. General Motors Corp.*, Case. No 05-11152-RCL (D. Mass.) (Exhibit B).

5.     This related "tag-along" class action involves "common questions of fact with actions" included by defendant in the Motion. *See* JPML Rule 1.1.  Indeed, this related action alleges breach of warranties, and is predicated on virtually identical facts as the cases included in the Motion.  This case will require the same pretrial proceedings and determinations as the cases included in the Motion, including the propriety of class certification.  Given the identical nature of the allegations involved, the Panel should consider this action in its decision whether consolidation and transfer of the related cases "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the actions" as required by 28 U.S.C. § 1407 and in analyzing what district consolidation and transfer should proceed.

WHEREFORE, defendant General Motors notifies the Panel of the foregoing related "tag-along" case and respectfully requests that it be considered along with the actions included in defendant's original Motion (and subsequent tag-along notices).

Date:  June 6, 2005

Respectfully submitted,

_____

Robert B. Ellis, P.C. (IL ARDC # 6206846)
Scott F. Hessell (IL ARDC # 6275119)
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, IL 60601
(312) 861-2000

*Of Counsel*
Lawrence S. Buonomo
Office of the General Counsel
General Motors Corporation
400 Renaissance Center
P.O. Box 400, MC  482-026-601
Detroit, MI  48265-4000

ATTORNEYS FOR DEFENDANT
**GENERAL MOTORS CORPORATION**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2005 a copy of General Motor's *Notice of Related*

*Tag-Along Actions* was served upon the following via federal express:

Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Bldg.
One Columbus Circle, N.E., Room G-225
Washington, D.C. 20002
Fax: (202) 502-2888

and upon the following via first class mail:

Richard M. Paul
John P. Brady
Daniel D. Owen
Jarrett A. Johnson
SHUGART THOMPSON & KILROY, P.C.
120 West 12th Street, Suite 1800
Kansas City, MO 64105
Telephone: (816) 421-3355
Facsimile: (816) 374-0509

Eric H. Gibbs
Dylan Hughes
GIRARD GIBBS & DeBARTOLOMEO LLP
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

John M. Parisi
Aaron M. Kroll
SHAMBERT JOHNSON & BERMAN CHTD.
2500 Grand Blvd., Suite 550
Kansas City, MO 64108
Telephone: (816) 474-0004
Facsimile: (816) 474-0003

Matthew Armstrong
Michael Marker
MARKER ARMSTRONG LLC
One Metropolitan Square, Suite 2970
St. Louis, MO 63102
Telephone: (314) 446-0990
Facsimile: (314) 446-0991

David R. Smith
DAVID R. SMITH P.C.
315 Nichols Road, Suite 242
Kansas City, MO 64112
Telephone: (816) 679-3958
Facsimile: (816) 235-1830

Norman E. Siegel
STEVE HELDER SIEGEL LLP
330 West 47th Street, Suite 250
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

Joe Whatley
Peter Burke
WHATLEY DRAKE LLC
2323 2nd Avenue North
P.O. Box 10647
Birmingham, AL 35202
Telephone: (205) 328-9576
Facsimile: (205) 328-9669

Richard J. Doherty
HORWITZ, HORWITZ &
ASSOCIATES, LTD.
25 E. Washington, Suite 900
Chicago, IL 60602
Telephone: (312) 372-8822
Facsimile: (312) 372-1673

Ernest Cory
CORY WATSON CROWEDER &
DEGARIS PC
2131 Magnolia Avenue
Birmingham, AL  35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896

David Pastor
Kenneth G. Gilman
Edward Manchur
GILMAN AND PASTOR, LLP
60 State Street, 37th Floor
Boston, MA  02109
Telephone: (781) 231-7850

JUDICIAL PANEL ON
MULTIDISTRICT_LITIGATION

JUN 2 1 2005

FILED
CLERK'S OFFICE

*DOCKET NO. 1562*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## *IN RE GENERAL MOTORS CORP. DEX-COOL PRODUCTS LIABILITY LITIGATION*

*Anthony Natale, Jr. v. General Motors Corp.*, D. Massachusetts, C.A. No. 1:05-11152

### *CONDITIONAL TRANSFER ORDER (CTO-3)*

On November 14, 2003, the Panel transferred one civil action to the United States District Court for the Southern District of Illinois for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, four additional actions have been transferred to the Southern District of Illinois. With the consent of that court, all such actions have been assigned to the Honorable G. Patrick Murphy.

It appears that the action on this conditional transfer order involves questions of fact which are common to the actions previously transferred to the Southern District of Illinois and assigned to Judge Murphy.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), this action is transferred under 28 U.S.C. § 1407 to the Southern District of Illinois for the reasons stated in the order of November 14, 2003, 293 F.Supp.2d 1381 (J.P.M.L. 2003), and, with the consent of that court, assigned to the Honorable G. Patrick Murphy.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of Illinois. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

*RELEASED FOR PUBLICATION*

*DOCKET NO. 1562*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE GENERAL MOTORS CORP. DEX-COOL PRODUCTS LIABILITY LITIGATION*

*Kim Dockwat, et al. v. General Motors Corp.,* S.D. Illinois, C.A. No. 3;03-410
*Michael Gutzler, et al. v. General Motors Corp,* W.D. Missouri, C.A. No. 4;03-408

*BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, BRUCE M. SELYA, JULIA SMITH GIBBONS, D. LOWELL JENSEN, J. FREDERICK MOTZ AND ROBERT L. MILLER, JR., JUDGES OF THE PANEL*

*TRANSFER ORDER*

This litigation presently consists of two actions: one action each in the Southern District of Illinois and the Western District of Missouri.[1] Before the Panel is a motion, pursuant to 28 U.S.C. § 1407, by defendant General Motors Corp. (GM) to centralize the actions in this litigation in the Southern District of Illinois for coordinated or consolidated pretrial proceedings. The Illinois and Missouri plaintiffs agree that centralization is appropriate there.

On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact and that centralization under Section 1407 in the Southern District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Common factual questions arise because these actions focus on allegations that the Dex-Cool engine coolant in certain GM vehicles[2] caused significant damage to the vehicles and/or did not perform as warranted. Centralization under Section 1407 is thus necessary in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings (such as those regarding class certification), and conserve the resources of the parties, their counsel and the judiciary.

---

[1] The Panel has been notified that six related actions have been filed as follows: two actions in the Southern District of Illinois, and one action each in the District of Massachusetts, the District of New Jersey, the Northern District of New York, and the Southern District of Texas. These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

[2] While the complaints do not delineate which GM vehicles have Dex-Cool coolant, it has apparently been used since 1996 as the factory-fill coolant in various Pontiac, Buick, GMC, Oldsmobile, Chevrolet and Cadillac cars, trucks, minivans and sport utility vehicles.

- 2 -

We agree with all parties to these actions that the Southern District of Illinois is an appropriate transferee district for this litigation. This district is centrally located in relation to the parties, anticipated documents and witnesses, and the actions included in the motion as well as potential tag-along actions. Also, three of the eight presently pending actions are already there.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the action pending outside the Southern District of Illinois is transferred to that district and, with the consent of that court, assigned to the Honorable G. Patrick Murphy for coordinated or consolidated pretrial proceedings with the action pending there.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Robert A. Cahn
Executive Attorney

DIRECT REPLY TO:

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:        [202] 502-2888

http://www.jpml.uscourts.gov

July 6, 2005

Honorable Reginald C. Lindsay
U.S. District Judge
5130 John Joseph Moakley
U.S. Courthouse
One Courthouse Way
Boston, MA 02210

Re: MDL-1562 -- In re General Motors Corp. Dex-Cool Products Liability Litigation

*Anthony Natale, Jr. v. General Motors Corp.*, D. Massachusetts, C.A. No. 1:05-11152

Dear Judge Lindsay:

Presently before the Panel pursuant to 28 U.S.C. § 1407 is a notice of opposition to the Panel's conditional transfer order in the above matter pending before you. The parties will have an opportunity to fully brief the question of transfer and the matter will be considered at a bimonthly Panel hearing session. In the meantime, your jurisdiction continues until any transfer ruling becomes effective.

If you have a motion pending – such as a motion to remand to state court (if the action was removed to your court) – you are free to rule on the motion, of course, or wait until the Panel has decided the transfer issue. The latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization.

Please feel free to contact our staff in Washington with any questions.

Kindest regards,

Wm. Terrell Hodges
Chairman



"Douglas Hoffman"
<dhoffman@gilmanpastor.co
m>

08/02/2005 09:49 AM

To    "'Skelton, John R.'" <john.skelton@bingham.com>, "'Scott
Hessell'" <scott_hessell@chicago.kirkland.com>

cc

Subject   Natale v. General Motors (Dex-Cool)

I have spoken with Ken Gilman, who spoke with you yesterday afternoon regarding an extension of your
time to respond to our motion to remand.  After having reviewed the relevant time constraints, in particular
the posture of the transfer proceedings before the JPML, which you initiated, and what we consider to be a
complete lack of federal jurisdiction over this matter, we are not in a position to give you an extension past
August 18, 2005 for your opposition to our motion to remand.

If you would like an extension on your deadline to respond to our motion to vacate the JPML's conditional
transfer order, we would be happy to provide one.

Douglas J. Hoffman
Gilman and Pastor, LLP
60 State St., 37th Floor
Boston, MA 02109
Tel:  (617) 742-9700
Fax:  (617) 742-9701

This message is intended only for the use of the individual or entity to which it is addressed and may contain
information that is privileged.  If the reader of this message is not the intended recipient, or the employee or agent
responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited.  If you have received this communication in
error, please notify us immediately by telephone and return the original message to us.  Thank you